## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTERACTIVE GAMES LLC | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) C.A. No. _____ |
| DRAFTKINGS, INC., | ) |
| | ) **JURY TRIAL DEMANDED** |
| Defendant. | ) |
| | ) |
| | ) |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Interactive Games LLC ("Interactive Games") hereby brings this Complaint for patent infringement against Defendant DraftKings, Inc. ("Defendant" or "DraftKings"), and alleges as follows:

## NATURE OF THE ACTION

1.      This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 271 *et seq.*, by Interactive Games against Defendant for infringement of U.S. Patent Nos. 8,956,231; 8,974,302; 8,616,967; and 9,430,901 (collectively the "Patents-in-Suit").

## PARTIES

2.      Interactive Games is a limited liability company incorporated in Nevada with its principal place of business at 110 East 59th Street, New York, New York, 10022.

3.      On information and belief, DraftKings is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 225 Franklin Street, 26th Floor, Boston, Massachusetts, 02110.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this patent infringement action under 28 U.S.C. §§ 1331 and 1338(a).

5.      DraftKings is subject to personal jurisdiction in this District because, based on information and belief, it is deemed to reside in this judicial district by virtue of being incorporated in the State of Delaware.  Accordingly, this Court may properly exercise personal jurisdiction over DraftKings.

6.      Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Delaware Long Arm Statute, due at least to Defendant's substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and/or (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in the State of Delaware and in this District.

7.      On information and belief, Defendant has operated and continues to operate an interactive website (www.draftkings.com) and mobile applications that are accessible to all residents of the State of Delaware, including in this District, through which Defendant advertises and makes available for use certain services and electronic daily fantasy sports contests that are herein accused of infringement.  *See, e.g.*, *Lobby*, DRAFTKINGS, https://www.draftkings.com.

8.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c), and/or 1400(b), at least because DraftKings is deemed to reside in this judicial district by virtue of being incorporated in the State of Delaware.

## THE PATENTS-IN-SUIT

9.      U.S. Patent No. 8,956,231 ("the '231 patent"), titled "Multi-Process Communication Regarding Gaming Information," was duly and legally issued by the United

ME1 30678135v.1

States Patent and Trademark Office ("USPTO") on February 17, 2015, to the listed inventors Lee Amaitis, Paul Williams, and Sunny Tara.  Interactive Games is the assignee and sole owner of the '231 patent, with all substantive rights in and to that patent, including the sole and exclusive right to bring this action, enforce the '231 patent against infringers, and collect damages for all relevant times.  A certified copy of the '231 patent is attached as **Exhibit A**.

10.     U.S. Patent No. 8,974,302 ("the '302 patent"), titled "Multi-Process Communication Regarding Gaming Information," was duly and legally issued by the USPTO on March 10, 2015, to the listed inventors Lee Amaitis, Paul Williams, Sunny Tara, and Matthew Morrissette.  Interactive Games is the assignee and sole owner of the '302 patent, with all substantive rights in and to that patent, including the sole and exclusive right to bring this action and enforce the '302 patent against infringers, and to collect damages for all relevant times.  A certified copy of the '302 patent is attached as **Exhibit B.**

11.     U.S. Patent No. 9,430,901 ("the '901 patent"), titled "System and Method for Wireless Gaming with Location Determination," was duly and legally issued by the USPTO on August 30, 2016, to the listed inventors Lee M. Amaitis, Joseph M. Asher, Robert F. Bahrampour, Darrin M. Mylet, Alan B. Wilkins, and Howard W. Lutnick.  Interactive Games is the assignee and sole owner of the '901 patent, with all substantive rights in and to that patent, including the sole and exclusive right to bring this action and enforce the '901 patent against infringers, and to collect damages for all relevant times.  A certified copy of the '901 patent is attached as **Exhibit C**.

12.     U.S. Patent No. 8,616,967 ("the '967 patent"), titled "System and Method for Convenience Gaming," was duly and legally issued by the USPTO on December 31, 2013, to the listed inventors Lee M. Amaitis, Joseph M. Asher, Howard W. Lutnick, Darrin M. Mylet, and

Alan B. Wilkins.  Interactive Games is the assignee and sole owner of the '967 patent, with all substantive rights in and to that patent, including the sole and exclusive right to bring this action and enforce the '967 patent against infringers, and to collect damages for all relevant times.  A certified copy of the '967 patent is attached as **Exhibit D.**

<u>**GENERAL ALLEGATIONS**</u>

13.     DraftKings' daily fantasy sports and sports betting businesses use innovative technology owned by Plaintiff.  Like traditional fantasy sports, players draft a team of real-world athletes who then score fantasy points according to set scoring rules.  Daily fantasy sports, however, offer contests on an accelerated timeline, such as one day, rather than an entire season. Accordingly, daily fantasy sports are quicker, more numbers-driven, and provide more "action" for the daily fantasy sports entrants.  As daily fantasy sports has become more popular, the industry has faced greater scrutiny with respect to its legal characterization and potentially circumventing gambling laws and other regulations.  Because the legality of daily fantasy sports is determined on a state-by-state basis, DraftKings' daily fantasy sports gaming platform is subject to various different regulations depending on the geographic location of the user accessing the platform.  *See, e.g.*, *Legality*, DRAFTKINGS, https://www.draftkings.com/legality. Similarly, sports betting is regulated according to each state's gambling regulations.  *See, e.g.*, *FAQ: Where can I make a bet?*, DRAFTKINGS, https://www.draftkings.com/sportsbook ("You can only make a bet in a state where DraftKings is licensed for regulated online sports betting."). Accordingly, DraftKings implemented various innovative technologies developed and owned by Interactive Games and its affiliates to ensure its platforms comply with each state's regulations.

14.     On information and belief, and based on its own admissions, DraftKings is one of the largest on-line sites to offer daily fantasy sports contests.  *See, e.g.*, *DraftKings CEO compares fantasy sports to chess, stock investing*, CDC GAMING REPORT,

4

http://cdcgamingreports.com/draftkings-ceo-compares-fantasy-sports-to-chess-stock-investing; *see also* Gouker, Dustin, *New Official Data: Daily Fantasy Sports Generated $335 Million In Revenue In A Year*, LEGAL SPORTS REPORT, https://www.legalsportsreport.com/21627/ny-dfs/ (June 27, 2018).  DraftKings also offers online sports betting through its DraftKings Sportsbook platform.   *See, e.g.*,   DraftKings   Sportsbook,   DRAFTKINGS, https://www.draftkings.com/sportsbook.   DraftKings accesses and provides access to its daily fantasy sports gaming platform and its sports betting gaming platform through its web-based interface and/or mobile applications running on computing devices, such as laptops, tablets, or mobile phones.  The DraftKings mobile applications are available on any iOS or Android device, including any iPhone, iPad, iPod touch, Android phone or Android tablet.  *DraftKings Mobile Apps*, DRAFTKINGS, https://www.draftkings.com/mobileapps.  The DraftKings gaming platforms are available through a web browser running on a personal computer, laptop, or other computing device.   *Sign Me Up*, DRAFTKINGS, https://www.draftkings.com/; *Log In*, DRAFTKINGS SPORTSBOOK, https://sportsbook.draftkings.com.

15.     DraftKings offers various types of daily fantasy sports contests that authorize users to "pay to play" on its daily fantasy sports platform.  Its gaming platform also allows users to create their own contests where users may specify the amount of money for entry into a contest and the contest parameters before DraftKings offers the contest to other users for acceptance.  In this and other ways, users are then matched in contests to compete against one another for the entry-fee dollar amounts according to each contest's payout rules (or against one another in a head-to-head contest).  Similarly, DraftKings offers various types of sports betting wagers to its users, including straight bets, parlay bets, and round robins on its sports betting platform.     *Bet Types, Frequently Asked Questions*,   DRAFTKINGS   SPORTSBOOK,

5

https://sportsbook.draftkings.com.   DraftKings' gaming platforms determine whether the user's device is authorized to connect to its servers and verifies the location of the user's gaming device before permitting the user to play its daily fantasy sports contests or place sports betting wagers. DraftKings' gaming platforms also determine whether a user is authorized to play its contests by verifying the user's identity and age.  Once authorized, DraftKings verifies the user's location at multiple points in time during gameplay to comply with various jurisdictional regulations.

16.     DraftKings' gaming platforms determine the location of each user device connecting to its servers before authorizing gameplay.  The DraftKings gaming platforms receive wireless signals from each user's device and compare data points within the received signals to those of known locations within a geographic area.  When the user device is determined to be in an authorized geographic location for specific types of gaming activity, such as entering paid contests or placing sports bets, DraftKings enables that gaming activity.  During gameplay, DraftKings monitors the user's gaming session and disconnects users in response to detected periods of non-use.  In some instances, DraftKings increments a counter calculating an amount of time the user has engaged in wagering activity and prevents exceeding a threshold amount of time.  DraftKings additionally determines if the user's device has moved to a geographic location where specific types of gaming activity is unauthorized.   Based on this determination, DraftKings stops incrementing the counter and does not permit the user to engage in the unauthorized gaming activity.

17.     Upon information and belief, DraftKings uses and tests its products on various computing devices, including portable and mobile devices such as mobile phones, tablets, and laptops.  For example, DraftKings uses and tests its products on portable and mobile devices to develop  training  and  video  tutorials  showing  how  to  use  DraftKings  products  and  other

6

promotional materials. *See, e.g.*, *DK My Contests Walkthrough*, YOUTUBE, https://youtu.be/ykiiUuvkufU; *CFB Announcement*, YOUTUBE, https://youtu.be/G5A3zSWFTVg; *How To Play*, DRAFTKINGS, https://www.draftkings.com/how-to-play; *DraftKings - The App!*, YOUTUBE, https://youtu.be/xAQPboDT4mQ; *NBA Quick Hits - February 3rd*, YOUTUBE, https://www.youtube.com/watch?v=vtsvD9TbmaQ; *DraftKings Fantasy Football TV Commercial*, 'Welcome to the Big Time', YOUTUBE, https://youtu.be/AlGap9cvu34; *DraftKings Commercial*, YOUTUBE, https://youtu.be/xo8N-fcH08g; *DraftKings Sportsbook TV Commercial, 'Golf's Biggest Weekend'*, ISPOT.TV, https://www.ispot.tv/ad/IhHV/draftkings-sportsbook-golfs-biggest-weekend; *DraftKings $750,000 Fantasy NASCAR Contest TV Commercial, 'NASCAR Returns'*, ISPOT.TV, https://www.ispot.tv/ad/IlA7/draftkings-750000-fantasy-nascar-contest-nascar-returns. As another example, DraftKings uses and tests its products in conjunction with making those products available through and/or on Apple and Android devices. *See, e.g.*, *Run your app on a device*, XCODE, https://help.apple.com/xcode/mac/current/#/dev60b6fbbc7; *Run Apps on a Hardware Device*, ANDROID STUDIO USER GUIDE, https://developer.android.com/studio/run/device.html. ("[w]hen building an Android app, it's important that you always test your application on a real device before releasing it to users."). As another example, DraftKings uses and tests its products on various computing devices, including portable and mobile devices such as mobile phones, tablets, and laptops, to ensure its products comply with various State laws and regulations. Some states, such as Nevada and Iowa, prohibit DraftKings from permitting users to deposit funds or enter contests that require entry fees while users are within their borders. *See, e.g.*, *Notice to Licensees: Legality Of Offering Daily Fantasy Sports in Nevada*, Nevada Gaming Control Board,

http://gaming.nv.gov/modules/showdocument.aspx?documentid=10481; Gouker, D., *No Joy In Iowa For Daily Fantasy Sports, As Bill Is Not Likely To Pass*, LEGAL SPORTS REPORT, https://www.legalsportsreport.com/13741/iowa-fantasy-sports/ (Apr. 17, 2017).   Additionally, DraftKings employs personnel for developing their games, which includes using and testing the DraftKings products on physical devices, including software engineers, mobile designers, and game analysts.

18.     DraftKings' infringing products include its daily fantasy sports and sports betting platforms.  DraftKings' daily fantasy sports and sports betting platforms are accessible to end users via the DraftKings Daily Fantasy Sports mobile application and the DraftKings Sportsbook mobile application, available on iOS devices (e.g., iPhone, iPad, iPod touch), Android devices, and through web applications running on a computing device through a web browser (*see, e.g.*, *Download DraftKings Apps*, DRAFTKINGS, https://www.draftkings.com/mobileapps; *Sign Up*, DRAFTKINGS, https://www.draftkings.com/; *Log In*, DRAFTKINGS SPORTSBOOK, https://sportsbook.draftkings.com.

## THE PATENTED TECHNOLOGY

## U.S. PATENT NOS. 8,956,231 AND 8,974,302

19.     Interactive Games is a technology company for a leading designer, developer, and manufacturer of innovative technology and risk management solutions for interactive gaming industries worldwide.  The industry of interactive gaming involving wagering is heavily regulated, and gaming operators and developers must comply with strict regulations prescribed by different regulatory agencies and administrative bodies.  Remote wagering, in particular, presents unique technical problems for gaming operators and developers to ensure that it remains legal, secure, and practical.  Indeed, Interactive Games , along with affiliated companies,

pioneered the development of remote, interactive betting in the United States in the mid-2000s and invested heavily into researching and designing secure platforms and devices for mobile gambling.  Working with Nevada's government and gaming commission, they formed the first laws permitting safe and verifiable remote gambling in the state.  As a result of research and investment into the mobile gambling industry, Interactive Games sought and obtained patents protecting its propriety technology and transformative hand-held devices.

20.   The '231 and '302 patents relate to novel systems and apparatuses that enable secure remote wagering using mobile devices while simultaneously complying with the high standards set by regulators and providing an improved customer experience.  The claimed systems and apparatuses embody an inventive concept that is patent-eligible, providing significant improvements over the prior art and enabling non-conventional combinations of features not present in the prior art.  For example, the claimed apparatus uses a multisystem secure authentication protocol to facilitate compliance with regulatory requirements.  The authentication protocol verifies that the user and the user's computing device are eligible for interactive gaming before authorizing gameplay.  Additionally, the claimed apparatus verifies that the user's device is within a location that permits gaming and includes novel location determination features that ensure the user complies with jurisdictional gaming regulations.  One embodiment of the claimed apparatus uses the authentication and validation process shown in the figure below.



('302 patent, Fig. 3).

21.     The claimed apparatuses of the '231 and '302 patents are directed to subject matter that is rooted in technology and disclose solutions to technological problems in the fields of user and device verification and authorization for remote gambling systems.  These problems did not exist without the advent of remote, network-based gaming using physical gaming devices communicating with a gaming apparatus.

22.     For example, a principal object and advantage of the claimed inventions addresses the technical problem of enabling remote wagering that complies with strict regulations for ensuring security and authenticity of the user's computing device.  One way the claimed apparatuses solve this technical problem is by determining whether the user's computing device is authorized for interactive gaming.  For example, the authentication protocol uses a device

authenticator service (DAS) or confirms that a unique identifier for the device is associated with an authorized account or list of authorized devices.   As another example, the authentication protocol determines whether the device is running an approved operating system based on the operating system version.   The claimed apparatus reads memory locations and compares files to ensure that the device has not been "rooted" or modified improperly.   The claimed apparatus verifies the authentication of the gaming application running on the device by using a multistage hashing protocol to send application and operating system signatures to the device authenticator service.   As another example, the authentication protocol verifies proper authentication or sign up of the device by comparing checksums MD5 hashes of files.

23.     Another principal object and advantage of the claimed inventions addresses the technical problem of enabling remote wagering that complies with strict regulations for ensuring the authenticity of the user.   One way the claimed apparatuses solve this technical problem is by determining whether the user is authorized for interactive gaming.   For example, in some embodiments, the claimed apparatus verifies the user's ability to wager by requesting information such as age and residency information.   The claimed apparatus authenticates the user by verifying the user's information and generating user credentials for an approved account.

24.     Another principal object and advantage of the claimed inventions solves the technical problems associated with ensuring that the mobile device is controlled by the authorized user.   One way the claimed apparatuses solve this technical problem is by linking the authorized user with the authorized mobile device and using an application security handshake and/or continuous validation to ensure that the authorized user associated with the account is still using the authorized mobile device.   In some embodiments, the claimed apparatus only permits

11

gaming from an authorized user utilizing the authorized device or one of a number of linked authorized devices.

25.     Another principal object and advantage of the claimed inventions addresses the technical problem of complying with strict regulations relating to jurisdictional controls of wagering.  One way the claimed apparatuses solve this technical problem is by ensuring a user's current location permits wagering by accurately determining the user's location using the mobile device as a proxy.  For example, the claimed apparatuses use geofencing techniques to create a virtual perimeter of a geographic area to ensure users are within approved boundaries and enable or disable wagering functionalities based on the location and the laws and regulations of that particular jurisdiction.  Another way the claimed apparatuses solve this technical problem is by using GPS coordinates or triangulation through communication devices within a communications network to accurately track the user's location.  Another way the claimed apparatuses solve this technical problem is by checking the user's location continuously or periodically to ensure compliance throughout a gaming session.

26.     Another principal object and advantage of the claimed inventions is to improve the efficiency and performance of the computer system itself.  One way the claimed apparatuses improve the efficiency and performance of the computer system itself is by minimizing location determinations.  For example, the claimed apparatuses determine when to make a location determination based on a distance of the user's device from a boundary, as well as the speed and direction of the device with respect to the boundary.  The claimed apparatuses vary the time between periodic location checks based on these parameters.  For example, the claimed apparatuses may increase the amount of time between location checks when the device is closer to an edge of an approved area or moving towards it at a certain speed.  In some embodiments, a

network of concentric geofences is utilized to determine the required parameters, as shown in the figure below.



('302 patent, Fig. 5).

27.     Another principal object and advantage of the claimed inventions addresses the technical problem of ensuring that users do not circumvent regulations and jurisdictional controls.  One way the claimed apparatuses solve this technical problem is by ensuring that the mobile device does not include software enabling remote access.  In some embodiments, this is

13

achieved by validating, on a polled interval, that some external communication interfaces to the device are disabled before allowing access.  In some embodiments, the claimed apparatuses utilize application handshake security and continuous validation to ensure the software is unaltered and does not include undesired programs such as malware or remote access technologies.

28.     Another principal object and advantage of the claimed inventions is to improve the user interface and functionality of the gaming system while complying with regulations.  One way the claimed apparatuses solve this technical problem is by permitting some features of the gaming application while disabling others based on the user's determined location.  For example, the user interface may be modified to allow gaming-related services when wagering is disabled due to jurisdictional regulations.  The claimed apparatuses involve tangible components and complex data processing operations that are necessarily rooted in computer technology.

29.     The novelty of the claimed apparatuses was confirmed during prosecution of the patents.  As evidenced by the file wrapper for the '231 patent and the file wrapper for the '302 patent, the USPTO conducted separate thorough searches of the prior art and rejected initial recitations of the claims based on combinations of several pieces of prior art.  On information and belief, it is the practice of the USPTO not to cite excessive cumulative art and to discuss the most representative and pertinent art in the office actions.  The USPTO confirmed the patentability of the '231 patent on November 19, 2014, and separately confirmed the patentability of the '302 patent on December 9, 2014, because the claims of each patent recited a novel combination of elements not disclosed or suggested in the prior art.

ME1 30678135v.1

30.     The inventions are directed to patent-eligible subject matter representing new, novel, and useful improvements over the existing and/or patentably distinct means and methods of the prior art.

### U.S. PATENT NOS. 9,430,901 AND 8,616,967

31.     Traditional casino gaming requires a user's physical presence to ensure compliance with the particular jurisdiction's laws and regulations.  As discussed above, remote wagering presents unique technical problems for gaming operators and developers to ensure that it remains legal, secure, and practical, particularly as regulations vary depending on jurisdiction. The '901 patent and the '967 patent relate to novel systems and methods for remote gaming using location determination technology and enhanced security protocols.  The claimed system embodies an inventive concept that is patent-eligible, providing significant improvements over the prior art and enabling non-conventional combinations of features not present in the prior art. For example, the claimed system provides jurisdictional controls and a reliable, accurate, and secure mobile gaming system architecture that complies with regulatory requirements for identification and location verification of the user.

32.     The claimed systems of the '901 and the '967 patents are directed to subject matter that is rooted in technology and discloses technological solutions to a technological problem in the field of user and device verification and authorization for remote gambling systems.  These problems did not exist without the advent of remote, network-based gaming using physical gaming devices communicating with a gaming apparatus.  For example, a principal object and advantage of the claimed inventions address the technical problem of enabling remote wagering that complies with jurisdictional regulations.  One way the claimed systems solve this technical problem is by ensuring that wagers originate and terminate within

15

boundaries of a gaming jurisdiction and not outside of them.  For example, the system architectures accurately detect a device's location using GPS technology, triangulation technology based on signal strengths received from the wireless device, and/or geofencing for selective geographic control.  The systems have a location determination and verification feature that permits or disallows gaming from a remote location depending on whether the determined location meets specific criteria.  Additionally, the systems periodically update the location determination information to ensure constant compliance with jurisdictional regulations.

33.     Another way the claimed networked system of the '901 patent solves the technical problem of accurately detecting the location of a device covered by a communications network is by calculating signal characteristics describing signals between a calibration device and signal detection devices and determining the location of the mobile device by comparing the calculated signal characteristics with those received from the mobile device.  In some embodiments, the signal characteristics represent a reference set of signal strengths received by the signal detection devices.  In some embodiments, the signal characteristics represent a Time Difference of Arrival (TDOA) for the signals.

34.     Another principal object and advantage of the claimed inventions address the technical problem of enabling remote wagering that complies with strict regulations for ensuring the authenticity of the user and the user device.  One way the claimed systems solve this problem is by providing multi-layered authentication protocols.  For example, one layer authenticates the user of the mobile device while another layer authenticates the mobile device itself.  Another way the claimed systems solve this problem is by disabling activity on the mobile device based on a period of allotted time.  The claimed systems involve tangible components and complex data processing operations that are necessarily rooted in computer technology.

35.     The novelty of the claimed system of the '901 patent was confirmed during prosecution of the patent, which occurred well after the U.S. Supreme Court's decision in *Alice*[1] and the USPTO's subsequent examination guidelines to patent examiners on patent subject matter eligibility.  As evidenced by the file wrapper for the '901 patent, the USPTO conducted a thorough search of the prior art and rejected initial recitations of the claims based on combinations of several pieces of prior art.  On information and belief, it is the practice of the USPTO not to cite excessive cumulative art and to discuss the most representative and pertinent art in the office actions.  On April 15, 2016, the USPTO confirmed the patentability of the '901 patent because the claims recited a novel combination of elements not disclosed or suggested in the prior art.

36.     Similarly, the novelty of the claimed system of the '967 patent was confirmed during prosecution of the patent.  As evidenced by the file wrapper for the '967 patent, the USPTO conducted a thorough search of the prior art and rejected initial recitations of the claims based on combinations of several pieces of prior art.  On information and belief, it is the practice of the USPTO not to cite excessive cumulative art and to discuss the most representative and pertinent art in the office actions.   On September 10, 2013, the USPTO confirmed the patentability of the '967 patent because the claims recited a novel combination of elements not disclosed or suggested in the prior art

37.     The subject matter of the '901 and the '967 patents is directed to patent-eligible subject matter representing new, novel, and useful improvements over the existing and/or patentably distinct means and methods of the prior art.

---

[1] *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (INFRINGEMENT OF U.S. PATENT NO. 8,956,231)

38.     Plaintiff incorporates by reference paragraphs 1-37 as if fully set forth herein.

39.     DraftKings, directly or through its agents, customers, and/or intermediaries, has made, used, tested, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems that infringe (either directly or under the doctrine of equivalents) one or more claims of the '231 patent.  For instance, on information and belief, DraftKings' accused products and/or systems have certain features that determine whether a device is authorized to use a gaming service based on one or more characteristics of the device other than location.  The system determines that a user of the device is authorized to use the gaming service and that the device is associated with a first location in which gaming activity is allowed.  Here, the system allows gaming activity based on the determination that the device is authorized, the determination that the user is authorized, and the determination that the device is associated with the first location.  After allowing the gaming activity, the system determines a period of time relative to the determination of the first location for redetermining a location of the device, where the period of time is determined based on a distance of the first location from a boundary of an area.  In response to determining that the period of time has passed, the system then determines whether the device is associated with a second location in which gaming activity is allowed.  This is done in a manner that infringes claims 1-23 of the '231 patent.

40.     DraftKings does not have a license or permission to use the '231 patent.

41.     By way of example only and for purposes of this Complaint, DraftKings tests, uses, and/or provides its daily fantasy sports platform in a manner that infringes each limitation

18

of at least one asserted claim of the '231 patent, consistent with the information set forth in the following paragraphs.[2]

42.     On information and belief, DraftKings infringes all elements of claim 1, which recites as follows:

> 1. An apparatus comprising:
> a machine readable medium having stored thereon a set of instructions
>     that are configured to cause a processor to:
>     determine that a device is authorized to use a gaming service
>         based on one or more characteristics of the device other
>         than location;
>     determine that a user of the device is authorized to use the
>         gaming service;
>     determine that the device is associated with a first location in
>         which gaming activity is allowed;
>     allow gaming activity based on the determination that the device
>         is authorized, the determination that the user is
>         authorized, and the determination that the device is
>         associated with the first location;
>     determine a period of time relative to the determination of the
>         first location after which a location redetermination of the
>         device should be made, in which the period of time is
>         determined based on a distance of the first location from
>         a boundary of an area;
>     determine that the period of time has passed; and
>     in response to determining that the period of time has passed,
>         determine whether the device is associated with a second
>         location in which gaming activity is allowed.

43.     On information and belief, DraftKings infringes all elements of claim 1, by testing, using, and/or providing its daily fantasy sports platform that is accessed by a computing device, where the daily fantasy sports platform includes "[a]n apparatus comprising: a machine

---

[2] Plaintiff relies on the DraftKings daily fantasy sports mobile application available through iTunes for the iPhone mobile device as a representative product of the accused products, including the DraftKings mobile application running on other iOS devices, the DraftKings mobile application available for Android devices, and the DraftKings web application running on a computing device through a web browser. *See, e.g.*, *DraftKings*, ITUNES, https://itunes.apple.com/us/app/draftkings/id710535379?mt=8 ("Compatible with iPhone, iPad, and iPod touch"). Upon information and belief, all of the accused products share the same, or substantially the same, infringing qualities with the representative product, and infringe the asserted patents in the same manner as set forth in the Complaint.

readable medium having stored thereon a set of instructions that are configured to cause a processor to" perform steps.   '231 patent, col. 76, ll. 2-4.   On information and belief, the DraftKings platform is hosted on a server that includes a processor and memory, corresponding to a computer system.   For example, a computing device accesses the DraftKings gaming platform hosted on a server.



(Image retrieved 4/19/2019 at https://www.draftkings.com).

44.     DraftKings' fantasy sports platform includes "determin[ing] that a device is authorized to use a gaming service based on one or more characteristics of the device other than location."   '231 patent, col. 76, ll. 5-7.   For example, the DraftKings platform determines whether the device is authorized to use a gaming service based on a determination that the device runs approved software and includes minimum compatibility requirements in order to conduct

gaming activity.   DraftKings determines whether the device is running inappropriate software that may allow cheating or circumvention of DraftKings' terms and conditions.



**Information Collected via Technology**

- **Information Collected by our Services.** To make our Website and Services more useful to you, our Website automatically tracks certain information about the visits to our Website, including your browser type, operating system, Internet Protocol (IP) address (a number that is automatically assigned to your computer when you use the Internet, which may vary from session to session), domain name, clickstream data, referring/exist pages, and/or a date/time stamp for your visit. We use this information to analyze trends, administer the Website, gather demographic information about our user base as a whole, and to improve our Website and Services and for product development purposes. For example, some of the information may be collected so that when you visit the Website or Services again, it will recognize you and the information appropriate to your interests.
- **Cookies.** Like many online services, we use cookies to collect information. "Cookies" are small pieces of information that a website sends to your computer's hard drive while you are viewing the website. We may use both session Cookies (which expire once you close your web browser) and persistent Cookies (which stay on your computer until you delete them) to provide you with a more personal and interactive experience on our Website. This type of information is collected to make the Website and Services more useful to you and to tailor your experience with us to meet your special interests and expectations.
- **Pixel Tags.** In addition, we use "Pixel Tags" (also referred to as clear Gifs, Web beacons or Web bugs). Pixel tags are tiny graphic images with a unique identifier, similar in function to Cookies, that are used to track online movements of web users. In contrast to Cookies, which are stored on a computer's hard drive or web browser, Pixel Tags are embedded invisibly in web pages. Pixel Tags also allow us to send email messages in a format that users can read, and tell us whether emails have been opened to, in part, ensure that we are sending only messages that are of interest to our users. We may also use this information to reduce or eliminate messages sent to a user.
- **Threat Detection.** We use certain third party service providers, such as ThreatMetrix, to provide threat detection, user authentication and fraud prevention services. These service providers may automatically collect certain information about your visits to the Website and the device you use to connect to our Services, in order to monitor for potential threats or bad actors. This information may include, among other things, your IP address and your device's unique device identifier. If you would like to know more about ThreatMetrix's data practices, please visit their privacy policy at: https://www.threatmetrix.com/privacy-policy.

(Image retrieved 4/19/2019 at https://www.draftkings.com/help/privacy/us)



- Using a single Account to participate in a Contest on behalf of multiple entrants or otherwise collaborating with others to participate in any Contest;
- Using automated means (including but not limited to scripts and third-party tools) to interact with the Website in any way (this includes, but is not limited to: creating a contest, entering a contest, withdrawing from a contest, creating a lineup, and editing a lineup);
- Using automated means (including but not limited to harvesting bots, robots, parser, spiders or screen scrapers) to obtain, collect or access any information on the Website or of any User for any purpose.
- Any type of bonus abuse, abuse of the refer-a-friend program, or abuse of any other offers or promotions;
- Tampering with the administration of a Contest or trying to in any way tamper with the computer programs or any security measure associated with a Contest;

(Image retrieved 4/19/2019 at https://www.draftkings.com/terms-of-use)

45.     DraftKings' fantasy sports platform includes "determin[ing] that a user of the device is authorized to use the gaming service."  '231 patent, col. 76, ll. 8-9.  For example, DraftKings requires each user to verify their account.  This includes verifying the user's identity and that the user is at least 18 years of age.



(Image dated 4/19/2019, DraftKings Daily Fantasy mobile app).

46.     DraftKings' fantasy sports platform includes "determin[ing] that the device is associated with a first location in which gaming activity is allowed." '231 patent, col. 76, ll. 10-11.   For example, the DraftKings platform determines that the user device is in a certain geographic location within a non-restricted state before permitting the user to enter paid-entry contests.

22



(Image dated 4/19/2019, DraftKings Daily Fantasy mobile app).

47. On information and belief, DraftKings' daily fantasy sports platform includes "allow[ing] gaming activity based on the determination that the device is authorized, the determination that the user is authorized, and the determination that the device is associated with the first location." '231 patent, col. 76, ll. 12-15. The DraftKings platform grants the user access to its gaming services once the user's identity, device, and location has been verified.

**What Information Is Required To Open A DraftKings Account?**

In order to register an Account you are required to provide your full name, address, date of birth, email address and telephone number. If your identity cannot be validated, you will be required to submit additional information or documentation.

(Image retrieved 4/19/2019 at https://www.draftkings.com/help/faq).

your Profile.

○ If you tell us where you are (e.g., by allowing your mobile device to send us your location), we may store and use that information to verify for eligibility enter certain Contests and for fraud prevention purposes.

(Image retrieved 4/19/2019 at https://www.draftkings.com/help/privacy/us).

48.    On information and belief, DraftKings' daily fantasy sports platform includes "determin[ing] a period of time relative to the determination of the first location after which a location redetermination of the device should be made, in which the period of time is determined based on a distance of the first location from a boundary of an area." '231 patent, col. 76, ll. 16-20.  For example, the user device sends location data to the DraftKings platform for purposes of tracking location of the computing device in real time, and physically locates user devices periodically while the user is connected to the DraftKings platform.  On information and belief, the period of time may depend on the location of the device in relation to the boundary of the non-restricted area.

49.    On information and belief, DraftKings' fantasy sports platform includes "determin[ing] that the period of time has passed; and in response to determining that the period of time has passed, determine[s] whether the device is associated with a second location in which gaming activity is allowed." '231 patent, col. 76, ll. 21-24.  For example, after a period of time expires, DraftKings determines whether the user is still in an authorized location where its gaming services can be accessed.

24



(Image dated 4/19/2019, DraftKings Daily Fantasy mobile app).

50.     DraftKings has placed its infringing daily fantasy sports products into service by providing, using, and/or testing its daily fantasy sports products.  DraftKings controls the daily fantasy sports platform as a whole and obtains a benefit from such control, including revenue from user entry fees, advertisers, and/or sponsors.  For example, DraftKings provides its daily fantasy sports mobile application to end users and controls how the mobile device transmits requests to, and communicates with, its gaming servers.

ME1 30678135v.1

51.     As a result of DraftKings' infringement of the '231 patent, Interactive Games has suffered and continues to suffer damages, in an amount not yet determined, of at least a reasonable royalty and/or lost profits.

### SECOND CLAIM FOR RELIEF
### (INFRINGEMENT OF U.S. PATENT NO. 8,974,302)

52.     Plaintiff incorporates by reference paragraphs 1-51 as if fully set forth herein.

53.     DraftKings, directly or through its agents, customers, and/or intermediaries, has made, used, tested, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems that infringe (either directly or under the doctrine of equivalents) one or more claims of the '302 patent.  For example, on information and belief, DraftKings' accused products and/or systems have certain features that determine whether a mobile device is authorized to use a gaming service, determine whether a user of the mobile device is authorized to use the gaming service, and repeatedly determine whether the mobile device is within or out of a geographical area in which the user is allowed to engage in gaming activity on the mobile device.  The system allows or disallows the user's gaming activity based at least in part on the determination that the mobile device is authorized, the determination that the user is authorized, and the determination that the mobile device is located within or out of the gaming-allowed geographical area.  Additionally, the system determines a period of time to elapse until the next repetition for determining whether the mobile device is within or out of the gaming-allowed geographical area, where the period of time is based at least in part on a distance of the mobile device from a boundary of the gaming-allowed geographical area.  This is done in a manner that infringes claims 1-25 of the '302 patent.

54.     DraftKings does not have a license or permission to use the '302 patent.

55.   By way of example only and for purposes of this Complaint, DraftKings tests, uses, and/or provides its daily fantasy sports platform in a manner that infringes each limitation of at least one asserted claim of the '302 patent, consistent with the information set forth in the following paragraphs.[3]

56.   On information and belief, DraftKings infringes all elements of claim 1, which recites as follows:

> 1. An apparatus comprising:
> a machine readable medium having stored thereon a set of instructions
>        that are configured to cause a processor to:
>        determine whether a mobile device is authorized to use a gaming
>                service;
>        determine whether a user of the mobile device is authorized to
>                use the gaming service;
>        to repeatedly:
>                determine whether the mobile device is within or without
>                        a geographical area in which the user is allowed
>                        to engage in gaming activity on the mobile
>                        device;
>                allow or disallow the user's gaming activity based at least
>                        in part on the determination that the mobile
>                        device is authorized, the determination that the
>                        user is authorized, and the determination that the
>                        mobile device is located within or without
>                        (respectively) the gaming-allowed geographical
>                        area; and
>                determine a period of time to elapse until the next
>                        repetition of determination whether the mobile
>                        device is within or without the gaming-allowed
>                        geographical area, the period of time to be based
>                        at least in part on a distance of the mobile device

---

[3] Plaintiff relies on the DraftKings daily fantasy sports mobile application available through iTunes for the iPhone mobile device as a representative product of the accused products, including the DraftKings mobile application running on other iOS devices, the DraftKings mobile application available for Android devices, and the DraftKings web application running on a computing device through a web browser.  *See, e.g.*, *DraftKings*, ITUNES, https://itunes.apple.com/us/app/draftkings/id710535379?mt=8 ("Compatible with iPhone, iPad, and iPod touch").  Upon information and belief, all of the accused products share the same, or substantially the same, infringing qualities with the representative product, and infringe the asserted patents in the same manner as set forth in the Complaint.

from a boundary of the gaming-allowed
geographical area.

57.     On information and belief, DraftKings infringes all elements of claim 1, by testing, using, and/or providing its daily fantasy sports platform that is accessed by a mobile device, where the daily fantasy sports platform includes "[a]n apparatus comprising: a machine readable medium having stored thereon a set of instructions that are configured to cause a processor to" perform steps.   '302 patent, col. 70, ll. 16-18.   For example, the DraftKings platform is a fantasy sports gaming system hosted on a server that utilizes a processor and a memory to store a set of instructions that the processor executes for running the gaming platform.   A computing device accesses the DraftKings gaming platform hosted on a server.



(Image retrieved 4/19/2019 at https://www.draftkings.com).

58.   DraftKings' fantasy sports platform includes "determin[ing] whether a mobile device is authorized to use a gaming service." '302 patent, col. 70, ll. 19-20.  For example, the DraftKings platform determines whether the device is authorized to use a gaming service based on a determination that the device runs approved software and includes minimum compatibility requirements in order to conduct gaming activity.  DraftKings determines whether the device is running inappropriate software that may allow cheating or circumvention of DraftKings' terms and conditions.

**Information Collected via Technology**

- **Information Collected by our Services.** To make our Website and Services more useful to you, our Website automatically tracks certain information about the visits to our Website, including your browser type, operating system, Internet Protocol (IP) address (a number that is automatically assigned to your computer when you use the Internet, which may vary from session to session), domain name, clickstream data, referring/exist pages, and/or a date/time stamp for your visit. We use this information to analyze trends, administer the Website, gather demographic information about our user base as a whole, and to improve our Website and Services and for product development purposes. For example, some of the information may be collected so that when you visit the Website or Services again, it will recognize you and the information appropriate to your interests.

- **Cookies.** Like many online services, we use cookies to collect information. "Cookies" are small pieces of information that a website sends to your computer's hard drive while you are viewing the website. We may use both session Cookies (which expire once you close your web browser) and persistent Cookies (which stay on your computer until you delete them) to provide you with a more personal and interactive experience on our Website. This type of information is collected to make the Website and Services more useful to you and to tailor your experience with us to meet your special interests and expectations.

- **Pixel Tags.** In addition, we use "Pixel Tags" (also referred to as clear Gifs, Web beacons or Web bugs). Pixel tags are tiny graphic images with a unique identifier, similar in function to Cookies, that are used to track online movements of web users. In contrast to Cookies, which are stored on a computer's hard drive or web browser, Pixel Tags are embedded invisibly in web pages. Pixel Tags also allow us to send email messages in a format that users can read, and tell us whether emails have been opened to, in part, ensure that we are sending only messages that are of interest to our users. We may also use this information to reduce or eliminate messages sent to a user.

- **Threat Detection.** We use certain third party service providers, such as ThreatMetrix, to provide threat detection, user authentication and fraud prevention services. These service providers may automatically collect certain information about your visits to the Website and the device you use to connect to our Services, in order to monitor for potential threats or bad actors. This information may include, among other things, your IP address and your device's unique device identifier. If you would like to know more about ThreatMetrix's data practices, please visit their privacy policy at: https://www.threatmetrix.com/privacy-policy.

(Image retrieved 4/19/2019 at https://www.draftkings.com/help/privacy/us)

- Using a single Account to participate in a Contest on behalf of multiple entrants or otherwise collaborating with others to participate in any Contest;
- Using automated means (including but not limited to scripts and third-party tools) to interact with the Website in any way (this includes, but is not limited to: creating a contest, entering a contest, withdrawing from a contest, creating a lineup, and editing a lineup);
- Using automated means (including but not limited to harvesting bots, robots, parser, spiders or screen scrapers) to obtain, collect or access any information on the Website or of any User for any purpose.
- Any type of bonus abuse, abuse of the refer-a-friend program, or abuse of any other offers or promotions;
- Tampering with the administration of a Contest or trying to in any way tamper with the computer programs or any security measure associated with a Contest;

(Image retrieved 4/19/2019 at https://www.draftkings.com/terms-of-use)

29

59.     DraftKings' fantasy sports platform includes "determin[ing] whether a user of the mobile device is authorized to use the gaming service."  '302 patent, col. 70, ll. 21-22.   For example, DraftKings requires each user to verify their account.   This includes verifying the user's identity and that the user is at least 18 years of age.



(Image dated 4/19/2019, DraftKings Daily Fantasy mobile app).

60.     On information and belief, DraftKings' fantasy sports platform includes "repeatedly: determin[ing] whether the mobile device is within or without a geographical area in which the user is allowed to engage in gaming activity on the mobile device."  '302 patent, col. 70, ll. 23-27.   For example, DraftKings determines the location of each user's device,

30

periodically and in real time, to ensure the device is within a non-restricted state before permitting the user to enter paid-entry contests.



(Image dated 4/19/2019, DraftKings Daily Fantasy mobile app).

61.     On information and belief, DraftKings' daily fantasy sports platform includes "allow[ing] or disallow[ing] the user's gaming activity based at least in part on the determination that the mobile device is authorized, the determination that the user is authorized, and the determination that the mobile device is located within or without (respectively) the gaming-allowed geographical area."   '302 patent, col. 70, ll. 28-33.   For example, the DraftKings platform must verify that the mobile device is authorized, the user is authorized, and that the

mobile device is located within a geographical area where gaming is authorized.  Once the verification is complete, DraftKings grants access to its gaming services.

**What Information Is Required To Open A DraftKings Account?**

In order to register an Account you are required to provide your full name, address, date of birth, email address and telephone number.  If your identity cannot be validated, you will be required to submit additional information or documentation.

(Image retrieved 4/19/2019 at https://www.draftkings.com/help/faq).

◆ If you tell us where you are (e.g., by allowing your mobile device to send us your location), we may store and use that information to verify for eligibility enter certain Contests and for fraud prevention purposes.

(Image retrieved 4/19/2019 at https://www.draftkings.com/help/privacy/us).

62.     On information and belief, DraftKings' daily fantasy sports platform includes "determin[ing] a period of time to elapse until the next repetition of determination whether the mobile device is within or without the gaming-allowed geographical area, the period of time to be based at least in part on a distance of the mobile device from a boundary of the gaming-allowed geographical area."  '302 patent, col. 70, ll. 34-40.  DraftKings periodically determines the location of the device to ensure that the mobile device is still within the authorized geographic area.  On information and belief, the elapsed period of time may relate to the user's location within the non-restricted boundary and the user's distance to the boundary.



(Image dated 4/19/2019, DraftKings Daily Fantasy mobile app).

63.    DraftKings has placed its infringing daily fantasy sports products into service by providing, using, and/or testing its daily fantasy sports products.  DraftKings controls the daily fantasy sports platform as a whole and obtains a benefit from such control, including revenue from user entry fees, advertisers, and/or sponsors.  For example, DraftKings provides its daily fantasy sports mobile application to end users and controls how the mobile device transmits requests to, and communicates with, its gaming servers.

33

64.     As a result of DraftKings' infringement of the '302 patent, Interactive Games has suffered and continues to suffer damages, in an amount not yet determined, of at least a reasonable royalty and/or lost profits.

### THIRD CLAIM FOR RELIEF
### (INFRINGEMENT OF U.S. PATENT NO. 9,430,901)

65.     Plaintiff incorporates by reference paragraphs 1-64 as if fully set forth herein.

66.     DraftKings, directly or through its agents, customers, and/or intermediaries, has made, used, tested, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems that infringe (either directly or under the doctrine of equivalents) one or more claims of the '901 patent.  For example, on information and belief, DraftKings' accused products and/or systems have certain features that associate a plurality of sets of signal characteristics with a respective location, where each set includes a respective plurality of signal characteristics that correspond to a signal between a device and a wireless network device.  The system compares a set of signal characteristics from a communication device to the previously associated sets to determine a location of the communication device.  Here, the system enables a gaming functionality of the communication device based on the determined location. Additionally, the system disables wagering functionality after detecting a period of non-use of the communication device.  This is done in a manner that infringes at least claims 1-4, 8, 11-18, 20-22, 26, and 27 of the '901 patent.

67.     DraftKings does not have a license or permission to use the '901 patent.

68.     By way of example only and for purposes of this Complaint, DraftKings tests, uses, and/or provides the sports betting platform in a manner that infringes each limitation of at

least one asserted claim of the '901 patent, consistent with the information set forth in the following paragraphs.[4]

69.     On information and belief, DraftKings infringes all elements of claim 27, which recites as follows:

> 27. A method comprising:
> before using a communication device to play games through a wireless communication network, associating, by a computing device, each of a plurality of sets of signal characteristics with a respective location, each set of signal characteristics including a respective plurality of signal characteristics and each signal characteristic of a respective plurality of signal characteristics corresponding to a signal between a device and a wireless network device;
> determining a location of the communication device by comparing, by the computing device, a set of signal characteristics involving the communication device and a plurality of wireless network devices to the prior associated sets of signal characteristics;
> wherein a gaming functionality of the communication device is enabled based upon the determined location; and
> disabling the wagering functionality in response to a period of non-use of the communication device.

70.     On information and belief, DraftKings infringes all elements of claim 27, by testing, using, and/or providing its sports betting platform that is accessed by a communication device, where the sports betting platform performs "[a] method comprising: before using a communication device to play games through a wireless communication network." '901 patent,

---

[4] Plaintiff relies on the DraftKings sports betting mobile application available through iTunes for the iPhone mobile device as a representative product of the accused products, including the DraftKings mobile application running on other iOS devices, the DraftKings mobile application available for Android devices, and the DraftKings web application running on a computing device through a web browser. *See, e.g.*, *DraftKings*, ITUNES, https://itunes.apple.com/us/app/draftkings-sportsbook/id1375031369?mt=8 ("Compatible with iPhone, iPad, and iPod touch"). Upon information and belief, all of the accused products share the same, or substantially the same, infringing qualities with the representative product, and infringe the asserted patents in the same manner as set forth in the Complaint.

col. 26, ll. 9-11.   For example, DraftKings' platform is accessed through a communication device, such as a mobile phone, laptop, or tablet, that utilizes a wireless communication network.

11) How do I download the DraftKings Sportsbook app?

To download the iOS app, visit the App Store here: INSERT LINK

To download the Android app, tap here: INSERT APK

*Due to location services requirements, the DraftKings Sportsbook is not available via web on a Mobile Device. To play on a Mobile Device, you must download the DraftKings Sportsbook App.*

(Image retrieved 4/19/2019 at https://sportsbook.draftkings.com/help/faq).



(Image retrieved 4/19/2019 at https://www.draftkings.com/sportsbook).

71.   On information and belief, DraftKings' sports betting platform includes "associating, by a computing device, each of a plurality of sets of signal characteristics with a

respective location." '901 patent, col. 26, ll. 11-13. For example, each user device sends identifiers, such as an IP address, session identifier, cookie, mobile identification number, and/or mobile subscription identification number, and user identification data, to the DraftKings platform for purposes of tracking location of the computing device using a variety of geolocation techniques.

**Information Collected via Technology**

- **Information Collected by our Services.** To make our Website and Services more useful to you, our Website automatically tracks certain information about the visits to our Website, including your browser type, operating system, Internet Protocol (IP) address (a number that is automatically assigned to your computer when you use the Internet, which may vary from session to session), domain name, clickstream data, referring/exist pages, and/or a date/time stamp for your visit. We use this information to analyze trends, administer the Website, gather demographic information about our user base as a whole, and to improve our Website and Services and for product development purposes. For example, some of the information may be collected so that when you visit the Website or Services again, it will recognize you and the information appropriate to your interests.
- **Cookies.** Like many online services, we use cookies to collect information. "Cookies" are small pieces of information that a website sends to your computer's hard drive while you are viewing the website. We may use both session Cookies (which expire once you close your web browser) and persistent Cookies (which stay on your computer until you delete them) to provide you with a more personal and interactive experience on our Website. This type of information is collected to make the Website and Services more useful to you and to tailor your experience with us to meet your special interests and expectations.
- **Pixel Tags.** In addition, we use "Pixel Tags" (also referred to as clear Gifs, Web beacons or Web bugs). Pixel tags are tiny graphic images with a unique identifier, similar in function to Cookies, that are used to track online movements of web users. In contrast to Cookies, which are stored on a computer's hard drive or web browser, Pixel Tags are embedded invisibly in web pages. Pixel Tags also allow us to send email messages in a format that users can read, and tell us whether emails have been opened to, in part, ensure that we are sending only messages that are of interest to our users. We may also use this information to reduce or eliminate messages sent to a user.
- **Threat Detection.** We use certain third party service providers, such as ThreatMetrix, to provide threat detection, user authentication and fraud prevention services. These service providers may automatically collect certain information about your visits to the Website and the device you use to connect to our Services, in order to monitor for potential threats or bad actors. This information may include, among other things, your IP address and your device's unique device identifier. If you would like to know more about ThreatMetrix's data practices, please visit their privacy policy at: https://www.threatmetrix.com/privacy-policy .

(Image retrieved 4/19/2019 at https://sportsbook.draftkings.com/legal/nj-privacy-policy).

72. On information and belief, DraftKings' sports betting platform includes "associating . . . each of a plurality of sets of signal characteristics with a respective location, each set of signal characteristics including a respective plurality of signal characteristics and each signal characteristic of a respective plurality of signal characteristics corresponding to a signal between a device and a wireless network device." '901 patent, col. 26, ll. 11-18. On information and belief, the DraftKings platform receives the identifiers from the user device and matches them to a previously populated lookup table to track and monitor each user device. For example, the mobile telephone number, GSM and/or WiFi identifiers are sent to the DraftKings

system and matched for purposes of identifying the user device and tracking its location in real-time.

**THE INFORMATION WE COLLECT**

**Information You Provide to Us**

- We may collect personal information from you, such as your first and last name, location, email address, username and password, and the country and state in which you reside when you create an account to log in to our network ("**Account**").
- When you order Services on our Website, or deposit or withdraw funds from your Account, we may collect all information necessary to complete the transaction, including your name, address, phone number, credit card information, billing information and social security number.
- If you use our Application on your mobile device, we may collect your phone number and unique device id number.

(Image retrieved 4/19/2019 at https://sportsbook.draftkings.com/legal/nj-privacy-policy).

73.    On information and belief, DraftKings' sports betting platform includes "determining a location of the communication device by comparing, by the computing device, a set of signal characteristics involving the communication device and a plurality of wireless network devices to the prior associated sets of signal characteristics." '901 patent, col. 26, ll. 19-23.   For example, the identifiers received by the DraftKings platform from the user device are matched to a previously populated lookup table to track and monitor each user device location using GPS, Wi-Fi and/or cell phone triangulation techniques.

5) I am being incorrectly located outside of my state (PC/Mac).

If you believe that you are within state borders and you are being restricted from playing for real money on a desktop or laptop computer, there may be an issue with locating you via Wi-Fi. Check to make sure that you have your computer's Wi-Fi signal/capability turned on. If your computer is not equipped with Wi-Fi, it likely you will not be able to access real money games.

(Image retrieved 4/19/2019 at https://www.draftkings.com).

12) How do I turn on location services?

Go to Settings > Privacy > Location Services

Make sure that Location Services is on

Scroll down to find the DraftKings Sportsbook App

Tap the app and select an option:

*Never*: Prevents access to Location Services information.
*While Using the App*: Allows access to Location Services only when the DraftKings Sportsbook or one of its features is visible on screen. If the app is set to While Using the App, you might see your status bar turn blue with a message that an app is actively using your location.
*Always*: Allows access to your location even when the DraftKings Sportsbook is in the background.

(Image retrieved 4/19/2019 at https://www.draftkings.com).

17) Why do I have to download the Geocomply plugin?

Due to state law, DraftKings must ensure that you are physically located where Online Sports Betting is legal. Those regulations require the Geocomply plugin to be used in order to pinpoint your location using your wireless Internet connection.

Please note that the Geocomply plugin is browser specific, but you only need to install it once to avoid any interruptions going forward.

(Image retrieved 4/19/2019 at https://www.draftkings.com).

   74. On information and belief, DraftKings' sports betting platform includes "wherein a gaming functionality of the communication device is enabled based upon the determined location." '901 patent, col. 26, ll. 24-25.  For example, the DraftKings platform determines that the user device is within a non-restricted state before permitting the user to place sports bets.

9) Can I access my DraftKings Sportsbook account in a jurisdiction that does not permit sports gambling?

Yes, absolutely! You can make a deposit or withdraw your funds from your account even if you are physically located in a banned state. You can also view placed bets and promotions in a banned state. You just cannot place bets for real money while physically located in a state that does not allow sports gambling.

(Image retrieved 4/19/2019 at https://www.draftkings.com).



(Image dated 4/16/2019, DraftKings Sportsbook mobile app).

75. On information and belief, DraftKings' sports betting platform includes "disabling the wagering functionality in response to a period of non-use of the communication device." '901 patent, col. 26, ll. 27-28. For example, DraftKings disconnects the user's device from the gaming platform if a period of inactivity is detected.

ME1 30678135v.1



(Image dated 3/28/2019, DraftKings Sportsbook mobile app).

76.     As a result of DraftKings' infringement of the '901 patent, Interactive Games has suffered and continues to suffer damages, in an amount not yet determined, of at least a reasonable royalty and/or lost profits.

**FOURTH CLAIM FOR RELIEF**
**(INFRINGEMENT OF U.S. PATENT NO. 8,616,967)**

77.     Plaintiff incorporates by reference paragraphs 1-76 as if fully set forth herein.

78.     DraftKings, directly or through its agents, customers, and/or intermediaries, has made, used, tested, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems that infringe (either directly or under the doctrine of equivalents) one or more claims of the '967 patent.  For example, on information and belief, DraftKings' accused

41

products and/or systems have certain features that determine whether a mobile device is located within an approved gaming area in which a user is permitted to engage in wager-based gaming activity and permit the user to engage in wager-based gaming activities based on determining that the gaming device is located within the approved gaming area. Here, counter is incremented as the user engages in a wager-based gaming activity within the approved gaming area, determine that the gaming device moved to a location within an unapproved gaming area, and based on the determination, prevent the user from engaging in the wager-based gaming activity and stop incrementing the counter. This is done in a manner that infringes at least claims 1-20 of the '967 patent.

79.     DraftKings does not have a license or permission to use the '967 patent.

80.     By way of example only and for purposes of this Complaint, DraftKings tests, uses, and/or provides the sports betting platform in a manner that infringes each limitation of at least one asserted claim of the '967 patent, consistent with the information set forth in the following paragraphs. [5]

81.     On information and belief, DraftKings infringes all elements of claim 1, which recites as follows:

> 1. An apparatus comprising:
> at least one processor; and
> at least one memory device electronically coupled to the at least one
>         processor, in which the at least one memory device stores

---

[5] Plaintiff relies on the DraftKings sports betting mobile application available through iTunes for the iPhone mobile device as a representative product of the accused products, including the DraftKings mobile application running on other iOS devices, the DraftKings mobile application available for Android devices, and the DraftKings web application running on a computing device through a web browser. *See, e.g.*, *DraftKings*, ITUNES, https://itunes.apple.com/us/app/draftkings-sportsbook/id1375031369?mt=8 ("Compatible with iPhone, iPad, and iPod touch"). Upon information and belief, all of the accused products share the same, or substantially the same, infringing qualities with the representative product, and infringe the asserted patents in the same manner as set forth in the Complaint.

42

> instructions which, when executed by the at least one processor,
> direct the at least one processor to:
> determine that a gaming device is located within an approved gaming
> area,
> > in which a user of the gaming device is permitted to engage in at
> > least one wager-based gaming activity via the gaming
> > device when the gaming device is used by the user from
> > within approved gaming areas,
> > in which the user is not permitted to engage in the at least one
> > wager-based gaming activity via the gaming device when
> > the gaming device is used by the user from within
> > unapproved gaming areas, and
> > in which the apparatus is operable to communicate with the
> > gaming device via a wireless communications network;
> permit the user to engage in the at least one wager-based gaming activity
> via the gaming device based at least in part on determining that
> the gaming device is located within the approved gaming area;
> increment a counter as the user engages in the at least one wager-based
> gaming activity via the gaming device from within the approved
> gaming area,
> > in which the counter comprises an amount of time, and
> > in which the user is permitted to engage in the at least one
> > wager-based gaming activity via the gaming device for a
> > predetermined amount of time;
> after determining that the gaming device is located within the approved
> gaming area, determine that the gaming device moved to a
> location within an unapproved gaming area; and
> based at least in part on determining that the gaming device is located
> within the unapproved gaming area:
> > (i) not permit the user to engage in the at least one wager-based
> > gaming activity via the gaming device; and
> > (ii) stop incrementing the counter.

82.      On information and belief, DraftKings infringes all elements of claim 1, by

testing, using, and/or providing its sports betting platform that is accessed by a mobile device,

where the sports betting platform includes "[a]n apparatus comprising: at least one processor;

and at least one memory device electronically coupled to the at least one processor, in which the

at least one memory device stores instructions which, when executed by the at least one

processor, direct one least one processor to" perform steps.  '967 patent, col. 19, ll. 26-31.  For

example, the DraftKings platform provides a sports betting gaming system hosted on a server

43

that utilizes a processor and a memory to store a set of instructions that the processor executes for running the gaming platform.  The DraftKings gaming platform, that is hosted on a server, is accessed by a computing device, such as a mobile phone, laptop, or tablet.

> 11) How do I download the DraftKings Sportsbook app?
>
> To download the iOS app, visit the App Store here: INSERT LINK
>
> To download the Android app, tap here: INSERT APK
>
> *Due to location services requirements, the DraftKings Sportsbook is not available via web on a Mobile Device. To play on a Mobile Device, you must download the DraftKings Sportsbook App.*

(Image retrieved 4/19/2019 at https://sportsbook.draftkings.com/help/faq).



(Image retrieved 4/19/2019 at https://www.draftkings.com/sportsbook).

83.     DraftKings' sports betting platform includes "determin[ing] that a gaming device is located within an approved gaming area, in which a user of the gaming device is permitted to engage in at least one wager-based gaming activity via the gaming device when the gaming device is used by the user from within approved gaming areas." '967 patent, col. 19, ll. 32-37. For example, the DraftKings platform determines that the user device is in a certain geographic location, such as within the state of New Jersey, before permitting the user to engage in wagering activity.



(Image retrieved 4/19/2019 at https://sportsbook.draftkings.com).

84.     DraftKings' sports betting platform includes "in which the user is not permitted to engage in the at least one wager-based gaming activity via the gaming device when the gaming device is used by the user from within unapproved gaming areas." '967 patent, col. 19, ll. 38-41.

For example, DraftKings does not permit a user from wagering on sporting events if the user device is located outside of New Jersey.

## FAQS

**Where can I make a bet?**                                                              —

You can only make a bet in a state where DraftKings is licensed for regulated online sports betting. Your account will be restricted from making a bet if you are physically located in a state that does not permit sports gambling.

If you live in a state where online sports betting is not permitted, you can sign up via this link to receive updates on the status of legislation and ways you can help bring sports betting to your state.

(Image retrieved 4/19/2019 at https://www.draftkings.com/sportsbook).



(Image retrieved 4/19/2019 at https://www.draftkings.com/sportsbook).

85.     On information and belief, DraftKings' sports betting platform includes "in which the apparatus is operable to communicate with the gaming device via a wireless communications network." '967 patent, col. 19, ll. 42-44.  A gaming device, such as a laptop or mobile phone, is used to access the DraftKings gaming platform using a wireless network.

13) How do I enable my Wi-Fi?

**Windows Users:**

- Open Control Panel

- Click on 'Network and Internet' or 'Network Connections'

- Click 'View Network Status and Tasks' or select the icon of the Wi-Fi adapter you want to enable

- Click 'Connect or Disconnect' or click 'Enable'

(Image retrieved 4/19/2019 at https://sportsbook.draftkings.com/help/faq).

86.    On information and belief, DraftKings' sports betting platform includes "permit[ting] the user to engage in the at least one wager-based gaming activity via the gaming device based at least in part on determining that the gaming device is located within the approved gaming area."  '967 patent, col. 19, ll. 45-48.  For example, the DraftKings platform must verify that the user device is located within a geographical area where gaming is authorized, such as New Jersey, before DraftKings grants access to its gaming services.



(Image retrieved 4/19/2019 at https://sportsbook.draftkings.com).

87.    DraftKings' sports betting platform includes "increment[ing] a counter as the user engages in the at least one wager-based gaming activity via the gaming device from within the approved gaming area, in which the counter comprises an amount of time, in which the user is permitted to engage in the at least one wager-based gaming activity via the gaming device for a predetermined amount of time."   '967 patent, col. 19, ll. 49-55.   For example, DraftKings provides a time management system that limits the time spent on wagering activities such that exceeding the time prevents further play.

## Player Limits

You can set self-imposed limits to block yourself from certain gaming functionality. After setting a limit, you may only increase it after the date shown under current limits has passed. You will be able to decrease a previously set limit at any time.

(Image retrieved 4/19/2019 at https://sportsbook.draftkings.com/help/responsible-gaming).



(Image retrieved 4/19/2019 at https://sportsbook.draftkings.com/help/responsible-gaming).

88.     DraftKings' sports betting platform includes "after determining that the gaming device is located within the approved gaming area, determine that the gaming device moved to a location within an unapproved gaming area." '967 patent, col. 19, ll. 56-59.   For example, DraftKings determines the location of the user device during gameplay to determine if the location has moved to a restricted area.



(Image retrieved 4/19/2019 at https://sportsbook.draftkings.com/help/faq).

89.     DraftKings' sports betting platform includes, "based at least in part on determining that the gaming device is located within the unapproved gaming area: (i) not permit the user to engage in the at least one wager-based gaming activity via the gaming device; and (ii) stop incrementing the counter." '967 patent, col. 19, ll. 60-65.   For example, DraftKings prevents the user from engaging in wager-based gaming if the mobile device is located outside of

49

New Jersey and stops the session, including the timer calculating the user's time limit restrictions.



(Image retrieved 4/19/2019 at https://sportsbook.draftkings.com/help/responsible-gaming).

90.     As a result of DraftKings' infringement of the '967 patent, Interactive Games has suffered and continues to suffer damages, in an amount not yet determined, of at least a reasonable royalty and/or lost profits.

## JURY DEMAND

91.     Plaintiff requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

1.     A declaration that DraftKings infringes the Patents-in-Suit under 35 U.S.C. § 271 and a final judgment incorporating same;

ME1 30678135v.1

2.     Equitable relief under 35 U.S.C. § 283, including but not limited to an injunction that enjoins DraftKings and any of its officers, agents, employees, assigns, representatives, privies, successors, and those acting in concert or participation with them from infringing the Patents-in-Suit;

3.     An award of damages sufficient to compensate Plaintiff for infringement of the Patents-in-Suit by DraftKings, together with prejudgment and post-judgment interest under 35 U.S.C. § 284;

4.     Entry of an order compelling DraftKings to compensate Plaintiff for any ongoing and/or future infringement of the Patents-in-Suit, in an amount and under terms appropriate under the circumstances;

5.     That this Court declare this an exceptional case and award Plaintiff its reasonable attorneys' fees, costs, and expenses in accordance with 35 U.S.C. § 285; and

6.     That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.

ME1 30678135v.1

Dated:  June 14, 2019

McCARTER & ENGLISH, LLP

/s/ Daniel M. Silver
Daniel M. Silver (#4758)

OF COUNSEL:

Alexandra M. Joyce (#6423)
Renaissance Centre

Robert F. Shaffer
James R. Barney
Anthony D. Del Monaco
Scott A.  Allen
Abdul Ghani Hamadi
FINNEGAN, HENDERSON,
FARABOW, GARRETT &
DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413

405 N. King St., 8th Fl.
Wilmington, DE 19801
(302) 984-6331
dsilver@mccarter.com
ajoyce@mccarter.com

*Attorneys for Plaintiff*

ME1 30678135v.1

## INDEX OF EXHIBITS

**Exhibit A**       8,956,231 Patent

**Exhibit B**       8,974,302 Patent

**Exhibit C**       9,430,901 Patent

**Exhibit D**       8,616,967 Patent

ME1 30678135v.1