IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTERACTIVE GAMES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 19-1105 (RGA) |
| | ) | |
| DRAFTKINGS, INC., | ) | |
| Defendant. | ) | |

**DEFENDANT DRAFTKINGS INC.'S OPENING BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO
<u>FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
Jeffrey J. Lyons (#6437)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com
jlyons@mnat.com

*Attorneys for Defendant DraftKings, Inc.*

OF COUNSEL:

G. Hopkins Guy III
BAKER BOTTS L.L.P.
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA  94304-1007
(650) 739-7500

Jamie R. Lynn
BAKER BOTTS L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004-2400
(202) 639-7786

Michael E. Knierim
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY  10112-4498
(212) 408-2500

Clarke W. Stavinoha
BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 900
Dallas, TX  75201-2980
(214) 953-6500

November 8, 2019

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.    NATURE AND STAGE OF THE PROCEEDINGS ......................................................... 1

III.   STATEMENT OF FACTS ............................................................................................ 1

IV.   LEGAL STANDARDS ................................................................................................ 2

V.    ARGUMENT ............................................................................................................... 2

     A.    The '231 and '302 Patents Claim Ineligible Subject Matter................................... 2

          i.    Claim 1 of the '231 Patent is representative of all claims .......................... 4

          ii.   Representative Claim 1 is directed to an abstract idea (Alice Step 1) ........ 4

          iii.  Representative Claim 1 lacks an inventive concept (Alice Step 2) ........... 8

     B.    The '901 Patent Claims Patent-Ineligible Subject Matter .................................... 11

          i.    Claim 27 is directed to an abstract idea (Alice Step 1)............................. 12

          ii.   Claim 27 does not recite an inventive concept (Alice Step 2)................. 14

     C.    The '967 Patent Claims Patent-Ineligible Subject Matter .................................... 16

          i.    Claim 1 is directed to an abstract idea (Alice Step 1)............................... 17

          ii.   Claim 1 does not recite an inventive concept (Alice Step 2)................... 19

VI.   CONCLUSION.......................................................................................................... 20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. Amazon.com, Inc.,*
  838 F.3d 1266 (Fed. Cir. 2016)......................................................................18

*Alice Corp. Pty Ltd. v. CLS Bank Int'l,*
  573 U.S. 208 (2014)................................................................................. *passim*

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)......................................................................................2

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC,*
  827 F.3d 1341 (Fed. Cir. 2016)...............................................................15, 20

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.,*
  No. 2018-1697, 2019 WL 2896449 (Fed. Cir. July 5, 2019)..................................10

*BSG Tech LLC v. Buyseasons, Inc.,*
  899 F.3d 1281 (Fed. Cir. 2018)................................................................. *passim*

*CalAmp Wireless Networks Corp. v. ORBCOMM, Inc.,*
  233 F. Supp. 3d 509 (E.D. Va. 2017) .....................................................................5

*CG Tech. Dev., LLC v. Bwin.party (USA),*
  No. 2:16-CV-00871-RCJ-VCF, 2016 WL 6089696 (D. Nev. Oct. 18, 2016).........................6

*CG Tech. Dev., LLC v. DraftKings Inc.,*
  No. 2:16-cv-00781-RCJ-VCF, 2016 WL 7190547 (D. Nev. Dec. 12, 2016)...................1, 2, 6

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n,*
  776 F.3d 1343 (Fed. Cir. 2014)...................................................................4, 11, 17

*Elec. Power Grp., LLC v. Alstom S.A.,*
  830 F.3d 1350 (Fed. Cir. 2016)................................................................. *passim*

*FairWarning IP, LLC v. Iatric Sys., Inc.,*
  839 F.3d 1089 (Fed. Cir. 2016)..................................................................5, 12

*Fitbit Inc. v. AliphCom,*
  No. 16-CV-00118-BLF, 2017 WL 819235 (N.D. Cal. Mar. 2, 2017) ...................................6, 9

*Front Row Techs., LLC v. NBA Media Ventures, LLC,*
  204 F. Supp. 3d 1190 (D.N.M. 2016), *aff'd sub nom., Front Row Techs. LLC
  v. MLB Advanced Media, L.P.*, 697 F. App'x 701 (Fed. Cir. 2017) ............................ *passim*

ii

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
　　792 F.3d 1363 (Fed. Cir. 2015)..................................................................................9, 19

*Interval Licensing LLC v. AOL, Inc.*,
　　896 F.3d 1335 (Fed. Cir. 2018)......................................................................................2, 7

*Location Based Servs., LLC v. Niantic, Inc.*,
　　295 F. Supp. 3d 1031 (N.D. Cal. 2017), *aff'd*, 742 F. App'x 506 (Fed. Cir.
　　2018) ...................................................................................................................6, 7, 9, 18

*Maxell, Ltd. v. Fandango Media, LLC*,
　　No. CV 17-07534 AG (SSX), 2018 WL 4502492 (C.D. Cal. Sept. 11, 2018),
　　*aff'd*, No. 2019-1088, 2019 WL 4941873 (Fed. Cir. Oct. 8, 2019) ............................12, 13, 18

*Orcinus Holdings, LLC v. Synchronoss Techs., Inc.*,
　　379 F. Supp. 3d 857 (N.D. Cal. 2019) .................................................................................19

*RecogniCorp, LLC v. Nintendo Co.*,
　　855 F.3d 1322 (Fed. Cir. 2017).............................................................................................12

*SAP Am., Inc. v. Investpic, LLC*,
　　898 F.3d 1161 (Fed. Cir. 2018).................................................................................................2

*Secure Mail Sols. LLC v. Universal Wilde, Inc.*,
　　169 F. Supp. 3d 1039 (C.D. Cal. 2016), *aff'd sub nom. Secured Mail Sols.*
　　*LLC v. Universal Wilde, Inc.*, 873 F.3d 905 (Fed. Cir. 2017) ....................................................8

*Smartgene Inc. v. Advanced Biological Labs., SA*,
　　555 F. App'x 950 (Fed. Cir. 2014) .......................................................................................12

*Solutran, Inc. v. Elavon, Inc.*,
　　931 F.3d 1161 (Fed. Cir. 2019).......................................................................................11, 16

*Trading Techs. Int'l, Inc. v. IBG LLC*,
　　921 F.3d 1084 (Fed. Cir. 2019).......................................................................................11, 16

**Rules and Statutes**

35 U.S.C. § 101 ..........................................................................................................................1, 20

Fed. R. Civ. P. 12(b)(6)......................................................................................................1, 2, 10, 20

iii

## I.        INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Interactive Games LLC ("IG") alleges that Defendant DraftKings Inc. ("DraftKings") infringes U.S. Patent Nos. 8,956,231 (Count I), 8,974,302 (Count II), 9,430,901 (Count III), and 8,616,967 (Count IV).  The asserted patents claim nothing more than computer implementations of abstract ideas related to limiting gambling activity based on location or time that are ineligible for patent protection and therefore invalid under 35 U.S.C. § 101.  Notably, this is not the first time that IG and its affiliates have asserted plainly invalid claims against DraftKings.  *See CG Tech. Dev., LLC v. DraftKings Inc.*, No. 2:16-cv-00781-RCJ-VCF, 2016 WL 7190547 (D. Nev. Dec. 12, 2016).  In that case, seven of ten patents were invalidated under § 101.  *See id.* at *5.  The asserted claims of the remaining patents were later found to be unpatentable in *inter partes* review proceedings.  Because the asserted patents in this case also claim ineligible subject matter and do not recite any inventive concept, the Court should dismiss Counts I-IV with prejudice.

## II.        NATURE AND STAGE OF THE PROCEEDINGS

IG filed this lawsuit on June 14, 2019.  The Court has not yet entered a case schedule.  The parties agreed to extend DraftKings' time to answer, move, or otherwise respond to the Complaint until November 8, 2019.  *See* D.I. 8.  DraftKings hereby moves to dismiss Counts I-IV under Federal Rule of Civil Procedure 12(b)(6) on the grounds that all claims of the asserted patents are not directed to patentable subject matter and are invalid under 35 U.S.C. § 101.

## III.        STATEMENT OF FACTS

DraftKings will present the facts relevant to each patent in the argument subsections below.[1]

---

[1]        All allegations and facts are taken from IG's Complaint and exhibits thereto.  No statement herein is intended to suggest an admission as to any allegation set forth in the Complaint or that DraftKings offers the same types of games or gaming concepts described in the patents-in-suit.

## IV.    LEGAL STANDARDS

Abstract ideas are not patentable.  *See Alice Corp. Pty Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).  Whether a claim covers an abstract idea is determined through a two-part test.  *Id.* at 217-18.  Step one considers whether a claim's "character as a whole" is "directed to" an abstract idea.  *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).  A claim that "only performs an abstract idea on a generic computer" is directed to an abstract idea.  *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1285 (Fed. Cir. 2018).  Claims related to computer-implemented wagering have been found to be abstract.  *DraftKings*, 2016 WL 7190547, at *2.

If a claim is directed to an abstract idea, step two considers whether the claim's elements, individually or as an ordered combination, "transform the nature of the claim" into an eligible application.  *Alice*, 573 U.S. at 217.  The inquiry is not whether the claim "as a whole is unconventional," but whether ***the claim*** contains an "inventive concept" sufficient to ensure that it amounts to significantly more than a patent on the abstract idea.  *BSG Tech*, 899 F.3d at 1290.  Reciting conventional activity or limiting a claim to a particular technological environment is not enough to transform an abstract claim into an eligible invention.  *See Alice*, 573 U.S. at 222-25.

Eligibility is "a question of law that may contain underlying issues of fact."  *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1342 (Fed. Cir. 2018).  Patent eligibility "may be, and frequently has been, resolved on a Rule 12(b)(6)" motion.  *SAP Am., Inc. v. Investpic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018).  While the Court must accept well-pleaded facts as true at this stage, that tenet "is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## V.    ARGUMENT

### A.    The '231 and '302 Patents Claim Ineligible Subject Matter

The '231 and '302 Patents have nearly identical specifications that describe embodiments purporting to "facilitate a customer placing a bet over a communication network using a mobile

device" if the customer is in a location where placing the bet is allowed.  Ex. A ("'231 Patent")

at 36:44-48; Ex. B ("'302 Patent") at 36:4-8.[2]  Claim 1 of each patent is shown below as examples:

| '231 Patent – Claim 1 | '302 Patent – Claim 1 |
|---|---|
| 1. An apparatus comprising: | 1. An apparatus comprising: |
| a machine readable medium having stored thereon a set of instructions that are configured to cause a processor to: | a machine readable medium having stored thereon a set of instructions that are configured to cause a processor to: |
| **_determine_** that a device is authorized to use a gaming service based on one or more characteristics of the device other than location; | **_determine_** whether a mobile device is authorized to use a gaming service |
| **_determine_** that a user of the device is authorized to use the gaming service; | **_determine_** whether a user of the mobile device is authorized to use the gaming service |
|  | to repeatedly: |
| **_determine_** that the device is associated with a first location in which gaming activity is allowed; | **_determine_** whether the mobile device is within or without a geographical area in which the user is allowed to engage in gaming activity on the mobile device; |
| **_allow_** gaming activity based on the determination that the device is authorized, the determination that the user is authorized, and the determination that the device is associated with the first location; | **_allow or disallow_** the user's gaming activity based at least in part on the determination that the mobile device is authorized, the determination that the user is authorized, and the determination that the mobile device is located within or without (respectively) the gaming-allowed geographical area |
| **_determine_** a period of time relative to the determination of the first location after which a location redetermination of the device should be made, in which the period of time is determined based on a distance of the first location from a boundary of an area | **_determine_** a period of time to elapse until the next repetition of determination whether the mobile device is within or without the gaming-allowed geographical area, the period of time to be based at least in part on a distance of the mobile device from a boundary of the gaming-allowed geographical area. |
| **_determine_** that the period of time has passed; and |  |
| in response to determining that the period of time has passed, **_determine_** whether the device is associated with a second location in which gaming activity is allowed. |  |

---

[2]      The '302 Patent is a continuation-in-part of the '231 Patent.  The only substantive difference between the two specifications is that the '302 Patent describes an "example of a determination that an operating system is approved" that is not in the '231 Patent.  *See* Ex. B, '302 Patent at 44:22-57.

### i.      Claim 1 of the '231 Patent is representative of all claims

Claim 1 of the '231 Patent is representative of all claims of the '231 and '302 Patents. Claim 1 of the '302 Patent is very similar to Claim 1 of the '231 Patent. Rather than explicitly claiming a second location determination, as in Claim 1 of the '231 Patent, Claim 1 of the '302 Patent "repeatedly" determines the location of the device, allows or disallows gaming based on the location, and determines a period of time until the next repetition. This is a distinction without a difference for purposes of eligibility. Both claims are "substantially similar and linked to the same abstract idea," namely analyzing information, including periodically-determined location information, to determine whether to allow gaming activity. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

As shown in Appendix A, the claims of both patents are not distinct for purposes of patent eligibility. Each patent contains two independent claims, Claims 1 (discussed above) and 21. In both patents, Claim 21 recites an apparatus further comprising "a mobile device" configured to transmit requests, communicate via a service, and provide a user interface, and "a gaming service" configured to perform the steps of Claim 1 of its respective patent. These elements do not change the "focus" of the claims to something other than the abstract idea. The same is true of the dependent claims, which are substantially similar in both patents. Thus, the Court should treat Claim 1 of the '231 Patent as representative of the '302 Patent for purposes of this analysis.[3]

### ii.      Representative Claim 1 is directed to an abstract idea (*Alice* Step 1)

The focus of Claim 1 "as a whole" is the abstract idea of analyzing information, including periodically-determined location information, to determine whether to allow gaming activity. The claim language and the specification support this characterization. Notably, six of the seven

---

[3]      Although DraftKings' analysis focuses on Claim 1 of the '231 Patent, DraftKings has included corresponding citations to the '302 Patent and addressed differences in claims where appropriate.

limitations of Claim 1 are "determine" steps.  The patents provide explicit guidance regarding how the term "determine" should be interpreted.  *See, e.g.*, '231 Patent at 3:3-4 ("[S]ections I-X provide a guide to interpreting the present application."); '302 Patent at 3:6-7.  The patents explain that "'determining' and grammatical variants thereof . . . is used *in an extremely broad sense*":

> The term "determining" *__encompasses a wide variety of actions__* and therefore *__"determining" can include calculating, computing, processing, deriving, investigating, looking up (e.g., looking up in a table, a database or another data structure), ascertaining and the like.__*  Also, "determining" can include receiving (e.g., receiving information), accessing (e.g., accessing data in a memory) and the like.  Also, "determining" can include resolving, selecting, choosing, establishing, and the like.

Ex. A, '231 Patent at 5:16-27 (emphasis added); Ex. B, '302 Patent at 5:14-26.  Thus, to "determine" as recited in Claim 1 merely requires analyzing information; it does not refer to a particular technological innovation or even an inventive concept.  The "determine" steps (and Claim 1 as a whole) are abstract because they are result-based and written so broadly that they encompass virtually *any* means of determining and allowing gaming activity per the explicit definition recited in the specification.

The Federal Circuit has "treated analyzing information by steps people go through in their minds . . . without more, as essentially mental processes within the abstract-idea category." *Elec. Power Grp.*, 830 F.3d at 1354.  Here, the specification admits that the steps could be "performed by or with the assistance of a human."  Ex. A, '231 Patent at 10:25-26; Ex. B, '302 Patent at 10:18-19.  Moreover, "taking some action in response to the information" (*e.g.*, allow gaming activity as in Claim 1) is "abstract as an ancillary part of" such analysis.  *CalAmp Wireless Networks Corp. v. ORBCOMM, Inc.*, 233 F. Supp. 3d 509, 512-13 (E.D. Va. 2017); *see also FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1093 (Fed. Cir. 2016) (notifying a user when misuse is detected is abstract).  Furthermore, "waiting until a particular point in time" to do something—here,

determining a location—"is an old concept, used for decades" that is also an abstract idea. *Fitbit Inc. v. AliphCom*, No. 16-CV-00118-BLF, 2017 WL 819235, at *15 (N.D. Cal. Mar. 2, 2017).

IG may argue that Claim 1 is not abstract because it requires determining a device's ***location***. But that is incorrect.  DraftKings acknowledges that, in an earlier case between the parties, the district court relied on its opinion in *CG Tech. Dev., LLC v. Bwin.party (USA)*, No. 2:16-CV-00871-RCJ-VCF, 2016 WL 6089696 (D. Nev. Oct. 18, 2016), to find that a claim involving a location determination was patent-eligible.  *See DraftKings*, 2016 WL 7190547, at *2.  In *Bwin*, the court concluded that a claim reciting "determining a first location of a mobile gaming device" was not ineligible, because "determining an actual, physical location is not an abstract concept."  2016 WL 6089696, at *4.  That opinion, however, is not binding on this Court and is contrary to later Federal Circuit precedent, and therefore should not control the outcome here.  Specifically, the Federal Circuit has since confirmed that merely reciting a generic location-determination step is not enough to save a claim from abstraction or ineligibility.  *See Front Row Techs., LLC v. NBA Media Ventures, LLC*,  204 F. Supp. 3d 1190 (D.N.M. 2016), *aff'd sub nom.*, *Front Row Techs. LLC v. MLB Advanced Media, L.P.*, 697 F. App'x 701 (Fed. Cir. 2017).

Indeed, Claim 1 is closely analogous to an ineligible claim in *Front Row*.  In *Front Row*, the district court invalidated a claim that "determines a user's location based on a handheld device's communications with a 'computing device'" and "authorizes the user to receive streaming video . . . based on his or her location."  *Id.* at 1280.  The Federal Circuit affirmed the district court's finding that the claim was directed to the abstract idea of "authorizing handheld devices to receive streaming video based on a user's location."  *Id.* at 1269.  Similarly, Claim 1 recites determining the location of a device—without reciting *any detail* as to how it is done—and allowing gaming activity based on the location.  The fact that Claim 1 here allows gaming activity based on information in addition to

6

location information cannot save it at step one.  *See Location Based Servs., LLC v. Niantic, Inc.*, 295 F. Supp. 3d 1031, 1053 (N.D. Cal. 2017), *aff'd*, 742 F. App'x 506 (Fed. Cir. 2018) ("Though this claim requires more information to be considered in the altering of the map, this difference does not render claim 1 non-abstract.").

Further, as in *Front Row*, Claim 1 does not recite an improvement to computer-related technology.  The '231 and '302 Patents do not purport to have invented a new way of determining that a device/user is authorized or determining a device's location, nor do they purport to have improved the functioning of the generic components recited in the claims (*e.g.*, the processor, mobile device, or gaming service).  Representative Claim 1 lacks any meaningful limitations that improve a computer as a tool, reciting instead "nothing more than generic, pre-existing computer functionality."  *Interval Licensing*, 896 F.3d at 1345.  Claim 1 requires the functional results of "determine" and "allow," but does not describe *how* to achieve these results in a non-abstract way.

The absence of any specific improvement to computer functionality distinguishes Claim 1 from claims found eligible at step one, and undermines IG's repeated, conclusory assertions in its Complaint that the '231 and '302 Patents claim "solutions to technological problems."  D.I. 1, ¶ 21. Although IG alleges that remote wagering "presents unique technical problems," IG fails to identify any ***technical problem*** solved by the claims.  *Id.*, ¶ 19.  Instead, IG identifies a laundry list of business problems that it attempts to disguise as technical problems (*e.g.*, "enabl[ing] secure remote wagering . . . ***while simultaneously complying with the high standards set by regulators and providing an improved customer experience***").  *Id.*, ¶ 20 (emphasis added).  These are not technical problems, but problems faced by any company operating in a highly-regulated field.

Indeed, analyzing information, including periodically-determined location information, to determine whether to allow gaming activity is a well-known, longstanding concept.  For example,

7

for many years, only certain jurisdictions in the United States have permitted real-money gambling on casino games, typically subject to strict regulations. *See, e.g.*, Ex. A, '231 Patent at 74:30-75:43; Ex. B, '302 Patent at 68:46-69:59. The elements of Claim 1 are analogous to steps that any casino operator would ordinarily take in operating its business, such as: checking an individual's identification to ensure that they are old enough to gamble and have not been blacklisted at the casino (*e.g.*, because they are a known cheater); and periodically ensuring that gambling occurs only in approved areas (*e.g.*, in the well-known case of casinos that straddle the border between California and Nevada, ensuring that gambling takes place only in the portion of the establishment located in Nevada). Claim 1 of the '231 Patent simply recites performing this "abstract idea on a generic computer." *BSG Tech.*, 899 F.3d at 1285. The Court should therefore proceed to step two.

### iii.    Representative Claim 1 lacks an inventive concept (*Alice* Step 2)

Claim 1 does not contain an inventive concept. The "determine" and "allow" steps amount to a claim to the abstract idea itself and cannot add significantly more. *See BSG Tech.*, 899 F.3d at 1290 ("[A] claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept[.]"). Even if these elements could supply an inventive concept, they do not, as they barely recite any limitations beyond the abstract concept. Importantly, Claim 1 "fails to explain how the elements will accomplish their intended result." *Front Row*, 204 F. Supp. 3d at 1280-81. The "general language" of the claim elements relating to authorization, location determination, and allowing gaming are not specific and are similar to limitations that other courts have dismissed. *Secure Mail Sols. LLC v. Universal Wilde, Inc.*, 169 F. Supp. 3d 1039, 1056 (C.D. Cal. 2016), *aff'd sub nom. Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905 (Fed. Cir. 2017). Although Claim 1 requires determining a period of time based on a distance from a boundary and a second location determination thereafter, these aspects (and the analogous elements in the '302 Patent) fail to impart an inventive concept. "[P]eriodically updating data is a routine and conventional computer

8

function." *Location Based Services*, 295 F. Supp. 3d at 1057. This limitation simply restricts the manner in which one step of the claim is performed and "has no transformative effect on the rest of the" claim. *Fitbit*, 2017 WL 819235, at *17.

Nothing else transforms Claim 1 into an eligible application. The only additional element is a "machine readable medium," which merely "spell[s] out" what it means to apply the abstract idea on a computer and "cannot confer patent eligibility." *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015). The other conventional elements recited in the claims (*e.g.*, a processor or mobile device) do not supply an inventive concept, because "generic computer implementation" of an abstract idea does not render a claim eligible. *Alice*, 573 U.S. at 221. Here, the specifications confirm that the processes they describe may be implemented by "general purpose computers." Ex. A, '231 Patent at 8:30-34; Ex. B, '302 Patent at 8:21-25.

The dependent claims of the '231 Patent also fail to supply an inventive concept. Claims 2 and 3 allow or prevent gaming activity based on location, which is nothing more than the same abstract idea. Claims 6 and 17 recite "geofenc[ing]," which the specifications confirm was a well-known technology for determining a device's location that was commercially available from many providers. *See, e.g.*, Ex. A, '231 Patent at 36:64-37:14 (describing that a gaming operator could implement geofencing technology by working "with Sprint, another geofencing provider, and/or a third party provider"); Ex. B, '302 Patent at 36:24-35. The other dependent claims narrow the information analyzed in the "determine" steps, which is insufficient to supply an inventive concept. *See BSG Tech*, 899 F.3d at 1291 ("As a matter of law, narrowing or reformulating an abstract idea does not add 'significantly more' to it."). The dependent claims of the '302 Patent are substantially similar and fail to supply an inventive concept for analogous reasons. *See* Appendix A.

Considered as an ordered combination, Claim 1 merely recites a computer implementation of the abstract idea of analyzing information, including periodically-determined location information, to determine whether to allow gaming activity. Claim 1 does not require a particular configuration or arrangement of system components (it only requires a machine readable medium), and neither do any of the dependent claims. The same is true of Claim 21 of the '231 Patent and its dependent claims (and the analogous claims of the '302 Patent). There is also nothing inventive about the ordering of steps, as the specifications acknowledge that "[o]ther embodiments may include differently ordered actions, different components, no actions, more actions, fewer actions, and so on." Ex. A, '231 Patent at 45:43-45; Ex. B, '302 Patent at 45:32-34.

The attorney argument in IG's Complaint does not save the claims at step two either, nor create a fact issue that precludes resolving eligibility at the Rule 12(b)(6) stage. *First*, the Court is "not required" to accept IG's "legal conclusions as true, even if couched as factual allegations." *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, No. 2018-1697, 2019 WL 2896449, at \*10 (Fed. Cir. July 5, 2019) ("That includes [plaintiff's] repeated characterization of its inventions as 'technical innovations.'"). *Second*, the Complaint does not include any concrete, factual allegations that the claim elements were not well-understood, routine, and conventional at the time of the alleged invention. *Third*, IG's allegations that the claims solve technical problems are unsupported by plausible, factual allegations. IG merely couches business concerns (*e.g.*, complying with regulations or providing an improved customer experience) as technical problems without identifying any technical impediment to enabling "remote wagering." D.I. 1, ¶ 20.

*Fourth*, IG's Complaint alleges inventive features described in the specifications but not recited in the claims. For example, no claim requires a "multisystem secure authentication protocol" or the detailed steps shown in Figure 3 of the '302 Patent reproduced in IG's Complaint. *Id.*, ¶ 20.

10

Thus, IG's allegations fail to raise a fact dispute regarding eligibility, because eligibility "depends on what is claimed, not all that is disclosed in the specification." *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1095 (Fed. Cir. 2019). **Fifth**, IG's reliance on the alleged novelty of the claims to support eligibility is misplaced. *See* D.I. 1, ¶ 29. "[M]erely reciting an abstract idea by itself in a claim—even if the idea is novel and non-obvious—is not enough to save it from ineligibility." *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1169 (Fed. Cir. 2019).

### B.     The '901 Patent Claims Patent-Ineligible Subject Matter

The '901 Patent specification describes a gaming system that enables and/or disables particular functions of a "communication device" based on its location and limits the duration of wagering activity according to any number of different parameters. *See* Ex. C ("'901 Patent") at 10:27-28, 11:10-13, 14:55-58. Although the *specification* describes limiting the duration of wagering activity according to a variety of different parameters, the asserted *claim*—incredibly— simply covers turning wagering functionality off after a period of non-use. Claim 27 recites:

> 27. A method comprising:
> **before using a communication device to play games** through a wireless communication network, associating, by a computing device, each of a plurality of sets of signal characteristics with a respective location, each set of signal characteristics including a respective plurality of signal characteristics and each signal characteristic of a respective plurality of signal characteristics corresponding to a signal between a device and a wireless network device;
> **determining a location of the communication device** by comparing, by the computing device, a set of signal characteristics involving the communication device and a plurality of wireless network devices to the prior associated sets of signal characteristics;
> wherein a gaming functionality of the communication device is **enabled based upon the determined location**; and
> **disabling the wagering functionality in response to a period of non-use** of the communication device.

Claim 27 is representative, because the claims are "substantially similar and linked to the" abstract ideas of: collecting information, analyzing it to determine a location, and taking an action based on the analysis; and restricting an activity based on a timer. *Content Extraction*, 776 F.3d at 1348.

### i.        Claim 27 is directed to an abstract idea (*Alice* Step 1)

Claim 27 combines two abstract concepts—(1) collecting information, analyzing it, and taking an action based on the analysis; and (2) restricting an activity based on a timer—*e.g.*, turn it off after a period of non-use.  The combination cannot change its abstract nature.  "Adding one abstract idea . . . to another abstract idea . . . does not render the claim non-abstract."  *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017); *see also FairWarning*, 839 F.3d at 1097 (claims directed to a combination of three abstract idea categories were abstract at step one).

The first three steps of Claim 27 amount to nothing more than collecting information (*i.e.*, sets of signal characteristics of respective locations), analyzing the information (*i.e.*, comparing signal characteristics of a device to the sets of signal characteristics to determine a location), and taking an action based on the analysis (*i.e.*, turning on a gaming functionality).  It is well-settled that "collecting information, including when limited to particular content," and analyzing it is abstract. *Elec. Power Grp.*, 830 F.3d at 1353-54; *see also Smartgene Inc. v. Advanced Biological Labs., SA*, 555 F. App'x 950, 954-55 (Fed. Cir. 2014) (finding ineligible claims directed to the abstract idea of comparing stored and input data).  And, as discussed above, taking an action in response to the analyzed information (*e.g.*, enabling "functionality" as in Claim 27) is abstract as an ancillary part of the analysis.  *See, e.g.*, *Front Row*, 204 F. Supp. 3d at 1269 (finding claim that authorizes a user to receive streaming video based on location directed to an abstract idea).

The remaining element, the "disabling" step, is the epitome of an abstract idea:  turning a function off after a period of non-use—in other words, a gambling alarm clock.  This is nothing more than restricting activity based on a rule (in this case, simply a timer), which the Federal Circuit has routinely held is abstract.  *See Maxell, Ltd. v. Fandango Media, LLC*, No. CV 17-07534 AG (SSX), 2018 WL 4502492, at *4 (C.D. Cal. Sept. 11, 2018), *aff'd*, No. 2019-1088, 2019 WL 4941873 (Fed. Cir. Oct. 8, 2019) (collecting cases).  Indeed, "imposing specific event-based

restrictions on activity is . . . something that humans have done in many contexts throughout human history." *Id.* (finding claim reciting "enabling" and "disabling" playback functionality abstract).

The fact that Claim 27 is limited to restrictions on gaming or wagering functionality merely limits the abstract idea of turning off functionality to a particular field. But limiting the claim to the "particular technological environment" of remote gaming is insufficient to transform it into a patent-eligible application of the abstract idea at its core. *Elec. Power Group*, 830 F.3d at 1354.

Claim 27 does not recite an improvement to computer-related technology. Claim 27 uses generic elements (*e.g.*, a communication device, wireless network, and wireless network devices) to carry out the abstract idea, which does not save the claim from abstraction. Rather, for an application of an abstract idea to save the claim at step one, the claim's focus must be something other than the abstract idea itself. *See BSG Tech*, 899 F.3d at 1285. Here, by contrast, Claim 27 recites the functional results of "associating," "determining," "comparing," and "disabling," but does not describe how to achieve these results in a non-abstract way. The claims do not recite any improvement to how signal characteristics are obtained or analyzed, how the location of a device is determined, or how gaming or wagering functionality is enabled or disabled.

IG's allegations that the claims address technical problems of "enabling remote wagering" lack merit and cannot change the abstract nature of the claims. D.I. 1, ¶¶ 32, 34. Notably, IG's Complaint does not identify any specific technical impediment to enabling remote wagering; it merely assumes that there *was* a technical problem and makes unsupported allegations that the claims solved it. The problem for IG is that most of the alleged difficulties identified in the Complaint (*e.g.*, complying with regulations) are not technical problems. Although IG alleges that the '901 Patent solved the problem of "accurately detecting the location of a device" (*id.*, ¶ 33), this assertion is inconsistent with the '901 Patent, which does not disclose any new method of

determining a device's location and relies entirely on existing, well-understood technology for that purpose.  *See, e.g.*, Ex. C, '901 Patent at 7:28-34, 8:23-29, 10:25-11:9.  Because Claim 27 is directed to an abstract idea, not a technical improvement, the Court should proceed to step two.

### ii.    Claim 27 does not recite an inventive concept (*Alice* Step 2)

There is no inventive concept in Claim 27.  Limiting the claim to the environment of remote gaming is "insufficient to transform" it into an eligible application.  *Elec. Power Grp.*, 830 F.3d at 1354.  The additional elements—a communication device, wireless communication network, computing device, device, and wireless network devices—are admittedly conventional.  *See, e.g.*, Ex. C, '901 Patent at 3:28-30 (the "network" is a conventional cellular, wireless, or wireline network), 5:9-11, 15:58-61 ("any type of known wireless communication" may be used), 3:55-60 (the "communication device" is "any suitable device"), 5:30-32, 4:31-47, 9:59-62 (the signal detection devices are conventional "wireless access points, wireless routers, wireless base stations, satellites, or any other suitable signal detection device").  These generic elements "are not even arguably inventive" and cannot supply an inventive concept.  *Elec. Power Grp.*, 830 F.3d at 1355.

The "associating," "determining," "comparing," and "disabling" steps amount to a claim to the abstract idea itself and thus cannot add "significantly more[.]"  *BSG Tech.*, 899 F.3d at 1290.  Regardless, the specification confirms that these steps recite well-understood, routine, and conventional activity.  The inventors of the '901 Patent did not invent a new way of determining the location of a device (*e.g.*, based on signal characteristics or otherwise), or a new way of turning functionality on and off.  Rather, the specification describes well-known signal-based location-detection techniques such as "Received Signal Strength Indication (RSSI) value or any other suitable indication of signal strength" and "Time Difference of Arrival (TDOA), or any other suitable technology," none of which IG purports to have invented.  Ex. C, '901 Patent at 10:25-11:9; *see also id.* at 8:23-29 ("any type of location verification may be used"); 7:28-34 (listing known location

verification techniques).  Moreover, Claim 27 provides no detail regarding *how* to enable or disable gaming functionality.  This "result-focused, functional" claim language "has been a frequent feature of claims held ineligible under § 101[.]"  *Elec. Power Grp.*, 830 F.3d at 1356.

Considered as an ordered combination, Claim 27 does not recite any "non-conventional and non-generic arrangement" that could save it at step two.  *Cf. Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).  The specification confirms that no inventive arrangement of elements was contemplated by the '901 Patent.  The configurations described in the specification are examples and "may be modified[.]" Ex. C, '901 Patent at 6:52-54. The location of the server of the gaming service "is not critical."  *Id.* at 3:62-67.  The decision to permit or prohibit gaming activity "may be made at the gaming communication device, at the gaming server, or at any of the components of the telecommunications network[.]"  *Id.* at 9:16-22; *see also id.* at 9:63-10:2 (signal detection devices may be "anywhere inside or outside of" a casino complex).  Thus, the combination of elements in Claim 27 does not supply an inventive concept.

The attorney argument in IG's Complaint does not save Claim 27 at step two.  The Complaint does not include any factual allegations that the elements of Claim 27 (alone or in combination) were anything other than well-understood, routine, and conventional at the time of the alleged invention or improved the functioning of the underlying technology.  This is not surprising, given the specification's admissions that the claims rely on conventional technology.  Furthermore, IG's conclusory allegation that the claims solve technical problems is unsupported by any plausible factual allegations.  As with the '231 and '302 Patents discussed above, IG reformulates business concerns (*e.g.*, complying with regulations) as technical problems without identifying any technical impediment to "enabling remote wagering" in compliance with regulations.  *See* D.I. 1, ¶¶ 32-33.

IG again relies on features described in the specification, but not claimed, to support its allegations of inventiveness. Claim 27 does not require these features—*i.e.*, periodically updating information (which, in any event, is a conventional computer function) or providing multi-layered authentication. *See* D.I. 1, ¶¶ 32, 34. Because eligibility "depends on what is claimed," IG's allegations fail to raise a fact dispute. *Trading Techs.*, 921 F.3d at 1095. IG's further allegation that the claims are novel "is not enough to save it from ineligibility." *Solutran*, 931 F.3d at 1169.

## C.   The '967 Patent Claims Patent-Ineligible Subject Matter

The '967 Patent describes a "gaming system" that "allows users to access applications via gaming communication devices coupled to a communication network." *See* Ex. D ("'967 Patent") at Abstract. The claims, however, cover nothing more than the abstract concept of authorizing wager-based gaming on a device based on location and elapsed time, which is no different than a parent restricting a child's screen time while at home. Claim 1 recites:

> 1. An apparatus comprising:
> at least one processor; and
> at least one memory device electronically coupled to the at least one processor, in which the at least one memory device stores instructions which, when executed by the at least one processor, direct the at least one processor to:
>     *determine* that a gaming device is located within an approved gaming area, in which a user of the gaming device is permitted to engage in at least one wager-based gaming activity via the gaming device when the gaming device is used by the user from within approved gaming areas,
>     in which the user is not permitted to engage in the at least one wager-based gaming activity via the gaming device when the gaming device is used by the user from within unapproved gaming areas, and
>     in which the apparatus is operable to communicate with the gaming device via a wireless communications network;
>     *permit* the user to engage in the at least one wager-based gaming activity via the gaming device based at least in part on determining that the gaming device is located within the approved gaming area;
>     *increment* a counter as the user engages in the at least one wager-based gaming activity via the gaming device from within the approved gaming area, in which ***the counter comprises an amount of time***, and
>     ***in which the user is permitted to engage in the at least one wager-based gaming activity via the gaming device for a predetermined amount of time***;

16

after determining that the gaming device is located within the approved gaming area, ***determine*** that the gaming device moved to a location within an unapproved gaming area; and

based at least in part on determining that the gaming device is located within the unapproved gaming area:

(i) ***not permit*** the user to engage in the at least one wager-based gaming activity via the gaming device; and

(ii) ***stop incrementing*** the counter.

Claim 1 is representative of all claims. Claim 15 recites a method that corresponds to Claim 1. The other independent claims, Claims 7 and 18, are substantially similar to Claims 1 and 15, except that Claims 7 and 18 require "incrementing a counter while the gaming device is activated." This insubstantial difference does not change the "focus" of Claims 7 and 18. All of the claims are "substantially similar and linked to the same abstract idea," namely authorizing wager-based gaming activity based on location information and elapsed time. *Content Extraction*, 776 F.3d at 1348. The dependent claims narrow how a location is determined (*e.g.*, Claims 2 and 8) or the type of activity (*e.g.*, Claims 5, 6, 13, and 14), or recite insignificant post-solution activity (*e.g.*, Claims 3-4, 9-12, 16-17, and 19-20), none of which changes the focus of the claims.

### i.   Claim 1 is directed to an abstract idea (*Alice* Step 1)

Claim 1 recites essentially six steps:  (1) determining that a device is located in an approved area; (2) permitting the user to engage in a wager-based gaming activity based on the location; (3) incrementing a counter as the user engages in the activity, to limit the user to a permitted activity for a predetermined amount of time; (4) determining that the device moved to a location in an unapproved area; (5) not permitting the user to engage in the activity based on the second location; and (6) stopping incrementing the timer.  Considered as a whole, Claim 1 is directed to the abstract idea of authorizing wager-based gaming activity based on location information and elapsed time. *See Elec. Power Grp.*, 830 F.3d at 1353 (*Alice*, step one, considers a claim's "character as a whole"). The other elements merely limit the claim to a particular environment (remote gaming).

Claim 1 is analogous to the ineligible claim in *Front Row*. In *Front Row*, a claim directed to authorizing a user to receive streaming video based on location was found to be directed to an abstract idea. *See* 204 F. Supp. 3d at 1269, 1280. Similarly, Claim 1 determines whether a device "is located within an approved gaming area" or "an unapproved gaming area" and authorizes gaming activity based on the location. That Claim 1 permits gaming activity based on "a predetermined amount of time" in addition to location cannot save the claim at step one. *See Location Based Servs.*, 295 F. Supp. 3d at 1053 ("Though this claim requires more information to be considered in the altering of the map, this difference does not render claim 1 non-abstract."). This amounts to nothing more than restricting an activity based on rules (here, a temporal restriction), which is an abstract idea. *See Maxell*, 2018 WL 4502492, at *4.

Notably absent from Claim 1 is any detail regarding how the steps are performed. Claim 1 does not recite *how* to determine that a device is located in an approved area or has moved to an unapproved area, *how* to permit the user to engage in the gaming activity, or *how* the counter is incremented. At this level of generality, "the claims do no more than describe a desired function or outcome, without providing any limiting detail that confines the claim to a particular solution to an identified problem." *Affinity Labs of Tex., LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016). Thus, the focus of Claim 1 is not a technical improvement but rather the abstract idea of authorizing wager-based gaming activity based on location information and elapsed time.

Indeed, there is no suggestion in the '967 Patent that the functioning of any of the underlying technology (*e.g.*, the processor or memory device in Claim 1) is improved. Although IG alleges that the '967 Patent "discloses technological solutions to a technological problem in the field of user and device verification and authorization for remote gambling systems" (D.I. 1, ¶ 32), IG again fails to identify any specific technical problem solved by the claims. *See, e.g.*, *id.*, ¶¶ 32, 34. Because

Claim 1 merely recites steps for authorizing gaming activity based on location information and elapsed time at a high level using abstract, result-based and functional language, the claims are directed to an abstract idea and the Court should proceed to step two.

### ii. Claim 1 does not recite an inventive concept (*Alice* Step 2)

Claim 1 does not contain a saving inventive concept. Limiting the claim to the particular environment of remote gaming is "insufficient to transform" the claim into an eligible application. *Elec. Power Grp.*, 830 F.3d at 1354. The generic "processor" and "memory device" merely spell out how to "apply it on a computer" and cannot confer eligibility. *Intellectual Ventures*, 792 F.3d at 1370. The specification confirms that the other elements—a gaming device and wireless communications network—are off-the-shelf, conventional computer and network technology. *See, e.g.*, Ex. D, '967 Patent at 3:34-38 (the "gaming communication device" may be "any suitable device"), 4:16-24 (listing well-known wireless and wireline technologies that may be used).

The "determine," "permit," "increment," "not permit," and "stop incrementing" steps amount to a claim to the abstract idea and cannot add "significantly more[.]" *BSG Tech.*, 899 F.3d at 1290. Moreover, nothing in these steps is inventive. The location-determination steps rely on conventional technology and not any innovative way of determining a location. *See* Ex. D, '967 Patent at 7:5-11 (listing known location verification technologies), 7:66-67 ("any type of location verification may be used"). The claim does not "permit" or "not permit" activity in an innovative or unconventional way—Claim 1 recites nothing about *how* these steps are implemented. Finally, there is nothing inventive about incrementing (or stopping incrementing) a counter or the claimed predetermined amount of time. "[T]he idea of using a timer" is conventional. *Orcinus Holdings, LLC v. Synchronoss Techs., Inc.*, 379 F. Supp. 3d 857, 876 (N.D. Cal. 2019).

Considered as an ordered combination, Claim 1 still lacks an inventive concept. Claim 1 recites a conventional ordering of steps that one would expect when applying the abstract idea of

authorizing wager-based gaming activity based on location information and elapsed time.  There is no unconventional arrangement of elements—Claim 1 recites only a processor and a memory device. *Cf. Bascom*, 827 F.3d at 1350.  This is confirmed by the specification, which acknowledges that the "configuration of the overall gaming system" is exemplary and "may be modified," the location of the server constituting the gaming service "is not critical," and "the decision to permit or prohibit a gaming activity" can be made virtually anywhere.  Ex. D, '967 Patent at 3:40-46, 6:29-32, 8:57-63.

The dependent claims also fail to provide an inventive concept.  There is nothing inventive about determining that the gaming device is not in the approved area as recited in Claims 2 and 8. Claims 5, 6, 13, and 14 limit the type of gaming activity, while Claims 3-4, 9-12, 16-17, and 19-20 recite steps that require performing the abstract idea again.  But "narrowing or reformulating an abstract idea does not add 'significantly more' to it."  *BSG Tech*, 899 F.3d at 1291.

The claims of the '967 Patent therefore lack an inventive concept.  IG's Complaint does not compel a different conclusion.  IG does not allege that any of the elements of Claim 1 (or any other claims of the '967 Patent), alone or as an ordered combination, were not well-understood, routine, and conventional at the time of the alleged invention.  Indeed, IG's Complaint makes the ***same*** conclusory allegations regarding alleged technical problems solved by the '967 Patent and purported novelty as it does for the '901 Patent.  For analogous reasons to those described above in relation to the '901 Patent, the allegations in IG's Complaint do not save the claim at step two or create a fact issue that precludes resolving the issue of eligibility at the Rule 12(b)(6) stage.

## VI.    CONCLUSION

For the above reasons, the claims of the '231, '302, '901, and '967 Patents are invalid for failing to claim patent-eligible subject matter under 35 U.S.C. § 101.  DraftKings respectfully requests that the Court grant DraftKings' motion and dismiss Counts I-IV with prejudice.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

_____

Rodger D. Smith II (#3778)
Jeffrey J. Lyons (#6437)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com
jlyons@mnat.com

OF COUNSEL:

G. Hopkins Guy III
BAKER BOTTS L.L.P.
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA  94304-1007
(650) 739-7500

*Attorneys for Defendant DraftKings, Inc.*

Jamie R. Lynn
BAKER BOTTS L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004-2400
(202) 639-7786

Michael E. Knierim
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY  10112-4498
(212) 408-2500

Clarke W. Stavinoha
BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 900
Dallas, TX  75201-2980
(214) 953-6500

November 8, 2019

**APPENDIX A**

| '231 Patent | '302 Patent |
| --- | --- |
| 1. An apparatus comprising: | 1. An apparatus comprising: |
| a machine readable medium having stored thereon a set of instructions that are configured to cause a processor to: | a machine readable medium having stored thereon a set of instructions that are configured to cause a processor to: |
| determine that a device is authorized to use a gaming service based on one or more characteristics of the device other than location; | determine whether a mobile device is authorized to use a gaming service |
| determine that a user of the device is authorized to use the gaming service; | determine whether a user of the mobile device is authorized to use the gaming service |
| | to repeatedly: |
| determine that the device is associated with a first location in which gaming activity is allowed; | determine whether the mobile device is within or without a geographical area in which the user is allowed to engage in gaming activity on the mobile device; |
| allow gaming activity based on the determination that the device is authorized, the determination that the user is authorized, and the determination that the device is associated with the first location; | allow or disallow the user's gaming activity based at least in part on the determination that the mobile device is authorized, the determination that the user is authorized, and the determination that the mobile device is located within or without (respectively) the gaming-allowed geographical area |
| determine a period of time relative to the determination of the first location after which a location redetermination of the device should be made, in which the period of time is determined based on a distance of the first location from a boundary of an area | determine a period of time to elapse until the next repetition of determination whether the mobile device is within or without the gaming-allowed geographical area, the period of time to be based at least in part on a distance of the mobile device from a boundary of the gaming-allowed geographical area. |
| determine that the period of time has passed; and | |
| in response to determining that the period of time has passed, determine whether the device is associated with a second location in which gaming activity is allowed. | |
| 2. The apparatus of claim 1, in which the instructions are configured to cause the processor to continue to allow the gaming activity in response determining that the device is associated with the second location. | 2. The apparatus of claim 1, in which the instructions are configured to cause the processor to:<br><br>continue to allow the gaming activity in response determining that the mobile device remains within the gaming-allowed geographical area. |

| '231 Patent | '302 Patent |
|---|---|
| 3. The apparatus of claim 1, in which the instructions are configured to cause the processor to prevent the gaming activity in response to determining the device is associated with a third location in which gaming activity is not allowed. | 3. The apparatus of claim 1, in which the instructions are configured to cause the processor to:<br><br>prevent the gaming activity in response to determining the mobile device is no longer within the gaming-allowed geographical area. |
| 4. The apparatus of claim 1, in determining that the device is authorized include determining that a mobile telephone number of the device has been signed up to have access to the gaming service. | 4. The apparatus of claim 1, in which the instructions are further configured to cause the processor to:<br><br>determine whether the mobile device is authorized by determining whether a mobile telephone number of the mobile device has been signed up for the gaming service. |
| 5. The apparatus of claim 1, in which determining that the user is authorized includes authenticating a login and password. | 5. The apparatus of claim 1, in which the instructions are further configured to cause the processor to:<br><br>determine whether the user is authorized based at least in party on authenticating a login and password. |
| 6. The apparatus of claim 1, in which determining that the device is associated with the first location in which gaming activity is allowed includes querying a geofencing service. | 6. The apparatus of claim 1, in which the instructions are further configured to cause a processor to:<br><br>determining whether the mobile device is located within or without the gaming-allowed geographical area by querying a geofencing service. |
| 7. The apparatus of claim 1, further comprising the processor. | |
| | 7. The apparatus of claim 1, in which the instructions are further configured to cause the processor to:<br><br>determine whether an operating system of the mobile device is authorized to use the gaming service. |
| 8. The apparatus of claim 1, in which determining the period of time includes determining a period of time that is larger when the distance is larger and smaller when the distance is smaller. | 8. The apparatus of claim 1, in which the instructions are further configured to cause the processor to:<br><br>determine the inter-repetition period of time by determining a period of time that is larger when the distance is larger and smaller when |

| '231 Patent | '302 Patent |
|---|---|
|  | the distance is smaller. |
| 9. The apparatus of claim 1, in which determining the period of time includes determining a period of time that is proportionate to the distance. | 9. The apparatus of claim 1, in which the instructions are further configured to cause the processor to:<br><br>determine the inter-repetition period of time by determining a period of time that is proportional to the distance to the boundary. |
| 10. The apparatus of claim 1, in which determining the period of time includes determining the period of time based on a speed and the distance. | 10. The apparatus of claim 1, in which the instructions are further configured to cause the processor to:<br><br>determine the inter-repetition period of time by determining the period of time based at least in part on a speed of travel of the mobile device and the distance to the boundary. |
| 11. The apparatus of claim 10, in which determining the period of time includes determining a period of time that is proportional to the speed and the distance. | 11. The apparatus of claim 10, in which the instructions are further configured to cause the processor to:<br><br>determine the inter-repetition period of time by determining a period of time that is proportional to the speed of travel of the mobile device and the distance to the boundary. |
| 12. The apparatus of claim 10, in which the instructions are configured to cause the processor to determine a location prior to the first location and determine the speed based on the first location and the prior location. | 12. The apparatus of claim 10, in which the instructions are configured to cause the processor to:<br><br>determine a speed of travel of the mobile device based at least in part on a sequence of two or more locations determined for the mobile gaming device. |
| 13. The apparatus of claim 10, in which the determining the period of time includes determining the period of time based on the speed, the distance, and a direction. | 13. The apparatus of claim 10, in which the instructions are further configured to cause the processor to:<br><br>determine the inter-repetition period of time by determining the period of time based at least in part on the speed of travel of the mobile device, the distance, and a direction of travel of the mobile device. |
| 14. The apparatus of claim 13, in which the instructions are configured to cause the processor to determine a location prior to the first location and determine the direction | 14. The apparatus of claim 13, in which the instructions are configured to cause the processor to: |

| '231 Patent | '302 Patent |
|---|---|
| based on the first location and the prior location. | determine a direction of travel of the mobile device based at least in part on a sequence of two or more locations determined for the mobile gaming device. |
| 15. The apparatus of claim 13, in which the direction includes a direction relative to a direction of travel of the device. | 15. The apparatus of claim 13, in which the direction includes a direction relative to a direction of travel of the mobile device. |
| 16. The apparatus of claim 1, in which the period of time includes a period of time that is greater when the boundary includes a boundary of a state than when the boundary includes a boundary within a state. | 16. The apparatus of claim 1, in which the instructions are further configured to cause the processor to:<br><br>determine the inter-repetition period of time to be greater when the boundary includes a boundary of a state than when the boundary includes a boundary within a state. |
| 17. The apparatus of claim 1, in which the boundary includes a boundary of a geofence. | 17. The apparatus of claim 1, in which the boundary includes a boundary of a geofence. |
| 18. The apparatus of claim 1, in which determining that the device is authorized includes determining that one or more communication ports of the device are disabled. | |
| 19. The apparatus of claim 1, in which determining that the device is authorized includes determining comparing a hashed value based on at least one file stored on the device to an approved hashed value based on the at least one application.<br><br>20. The apparatus of claim 1, in which determining that the device is authorized includes determining that one or more communication ports of the device are disabled, comparing a hashed value based on at least one file stored on the device to an approved hashed value based on the at least one application, and determining that a mobile telephone number of the device has been signed up for the gaming service. | 18. The apparatus of claim 1, in the instructions are further configured to cause the processor to:<br><br>determine whether the mobile device is authorized by generating a first hash from a first portion of an approved operating system file that is less that the entirety of the file and a length of the file; receiving an indication of a second hash generated by the mobile device of the portion of the operating system file run by the mobile device and a length of the file run by the mobile device, and comparing the second hash. |
| | 19. The apparatus of claim 1, the gaming service being further configured to:<br><br>determine whether the mobile device is authorized to use the gaming service based at least in part on a determination whether an |

| '231 Patent | '302 Patent |
|---|---|
| | identity of the mobile device that the mobile device itself is authorized to use the gaming service. |
| | 20. The apparatus of claim 1, the gaming service being further configured to:<br><br>determine whether the mobile device is authorized based at least in part on determining whether a mobile telephone number of the device has been signed up for the gaming service. |
| | 21. The apparatus of claim 1, in which:<br><br>the boundary of the gaming-allowed geographical area is, at least in part, established by factors other than a transmission boundary of a transmission base station. |
| 21. An apparatus comprising: | 22. An apparatus comprising: |
| a mobile device configured to transmit gaming requests to a gaming service, communicate through a communication service, and provide a user interface to a customer; and | a mobile device configured to transmit gaming requests to a gaming service, communicate through a communication service, and provide a user interface to a customer; and |
| the gaming service, in which the gaming service is configured to: | the gaming service, in which the gaming service is configured to: |
| determine that the mobile device is authorized to use the gaming service based on one or more characteristics of the device other than location; | determine whether the mobile device is authorized to use the gaming service; |
| determine that the customer is authorized to use the gaming service; | determine whether the customer is authorized to use the gaming service; |
| | to repeatedly: |
| determine that the device is associated with a first location in which gaming activity is allowed; | determine whether the mobile device is within or without a geographical area in which the user is allowed to engage in gaming activity on the mobile device; |
| allow gaming activity based on the determination that the device is authorized, the determination that the user is authorized, and the determination that the device is associated with the first location; | allow or disallow the user's gaming activity based at least in part on the determination that the mobile device is authorized, the determination that the user is authorized, and the determination that the mobile device is located within or without (respectively) the gaming-allowed geographical area; and |
| determine a period of time relative to the | determine a period of time to elapse until the |

5

| '231 Patent | '302 Patent |
|---|---|
| determination of the first location after which a location redetermination of the device should be made, in which the period of time is determined based on a distance of the first location from a boundary of an area; | next repetition of determination whether the mobile device is within or without the gaming-allowed geographical area, the period of time to be based at least in part on a distance of the mobile device from a boundary of the gaming-allowed geographical area. |
| determine that the period of time has passed; and | |
| in response to determining that the period of time has passed, determine whether the device is associated with a second location in which gaming activity is allowed. | |
| 22. The apparatus of claim 21, in which the gaming service includes one or more servers. | |
| | 23. The apparatus of claim 22, the gaming service being further configured to:<br><br>determine whether an operating system of the mobile device is authorized to use the gaming service. |
| 23. The apparatus of claim 21, in which the mobile device includes a cellular telephone and the communication service includes a cellular phone service. | 24. The apparatus of claim 22, in which the mobile device includes a cellular telephone and the communication service includes a cellular phone service. |
| | 25. The apparatus of claim 22, the gaming service being further configured to:<br><br>determine whether the operating system is authorized is authorized for use with the gaming service by generating a first hash from a first portion of an approved operating system file that is less that the entirety of the file and a length of the file; and transmitting an indication of the first hash for verification by the gaming service. |

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on November 8, 2019, upon the following in the manner indicated:

Daniel M. Silver                                                    *VIA ELECTRONIC MAIL*
Alexandra M. Joyce
MCCARTER & ENGLISH, LLP
Renaissance Centre
405 N. King St., 8th Fl.
Wilmington, DE 19801
*Attorneys for Plaintiff Interactive Games LLC*

Robert F. Shaffer                                                   *VIA ELECTRONIC MAIL*
James R. Barney
Anthony D. Del Monaco
Scott A. Allen
Abdul Ghani Hamadi
FINNEGAN, HENDERSON, FARABOW, GARRETT &
DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
*Attorneys for Plaintiff Interactive Games LLC*


                                        */s/ Rodger D. Smith II*
                                        _____
                                        Rodger D. Smith II (#3778)