**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| INTERACTIVE GAMES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DRAFTKINGS, INC., | ) | C.A. No. 19-1105 (RGA) |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**INTERACTIVE GAMES, LLC'S ANSWERING BRIEF**
**IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR A FAILURE TO**
**<u>STATE A CLAIM PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>**

**<u>TABLE OF CONTENTS</u>**

<b>Page</b>

I.    INTRODUCTION ............................................................................................ 1

II.   BACKGROUND ............................................................................................. 1

III.  APPLICABLE LAW ....................................................................................... 2

    A.   Material Allegations Must Be Accepted as True ................................... 2

    B.   The "Abstract Idea" Exception to Patent Eligibility Is Narrow............. 3

IV.   ARGUMENT .................................................................................................. 4

    A.   DraftKings' Motion is Premature and Procedurally Defective.............. 4

        1.   DraftKings Fails to Disprove the Factual Allegations ............... 5

        2.   The Claims Analyzed by DraftKings Are Not Representative ... 6

        3.   Claim Construction Cannot Be Resolved on a 12(b)(6) Motion .... 8

    B.   The '231 and '302 Patent Claims Pass the *Alice* Patent Eligibility Inquiry ......... 10

        1.   Step One: Claims on Secure Remote Authentication Are Not Directed to Abstract Subject Matter and DraftKings Fails to Show Otherwise ...... 10

            a)   Multisystem secure authentication solves a technical problem ...... 10

            b)   Location redetermination improves the computer system ........... 11

            c)   DraftKings' alleged abstract idea can only be supported by ignoring the claim language and specification............ 12

        2.   Step Two: The Claims Recite an Inventive Concept ............... 13

    C.   The '901 Patent Claims Pass the *Alice* Patent Eligibility Inquiry ...... 15

        1.   Step One: Location Determination Claims Are Not Directed to Abstract Subject Matter and DraftKings Fails to Show Otherwise ...... 15

        2.   Step Two: The Claims Also Recite an Inventive Concept ...... 18

    D.   The '967 Patent Claims Pass the *Alice* Patent Eligibility Inquiry ...... 18

i

1.      Step One: The Location Determination Claims are Not Directed to
        Ineligible Subject Matter and DraftKings Fails to Show Otherwise ........ 18

2.      Step Two: The Claims Also Recite an Inventive Concept ...................... 20

V.      CONCLUSION ............................................................................................................... 20

ii

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    882 F.3d 1121 (Fed. Cir. 2018)........................................................................1, 5, 9

*Alice Corp. Pty. Ltd. v. CLS Bank Intern.*,
    134 S. Ct. 2347 (2014) ...................................................................... *passim*

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016)....................................................................3, 4, 18

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018)....................................................................5, 14

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997).......................................................................3

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.*,
    717 F.3d 1269 (Fed. Cir. 2013) (en banc), *aff'd*, 134 S. Ct. 2347 (2014) ................................3

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
    927 F.3d 1306 (Fed. Cir. 2019)....................................................................3, 14

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014)....................................................................16

*Cronos Techs., LLC v. Expedia, Inc.*,
    No. 13-1538-LPS, 2015 WL 5234040 (D. Del. Sept. 8, 2015) ...........................................4, 7

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014)....................................................................4, 5, 13, 19

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016)..................................................................... *passim*

*Front Row Techs., LLC v. NBA Media Ventures, LLC*,
    204 F. Supp. 3d 1190 (D.N.M. 2016) ...................................................................13

*Guada Techs. LLC v. Vice Media, LLC*,
    No. 17-1503-RGA, 2018 WL 4441460 (D. Del. Sept. 17, 2018)........................................9, 10

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015)....................................................................3

*Iron Gate Security, Inc. v. Lowe's Cos.*,
    No. 15-cv-8814, 2016 WL 4146140 (S.D.N.Y. Aug. 3, 2016)..............................................13

*T-Jat Sys. 2006 Ltd. v. Expedia, Inc.*,
    16-581-RGA, 2018 WL 1525496 (D. Del. Mar. 26, 2018) ....................................................9

*JSDQ Mesh Techs. LLC v. Fluidmesh Networks, LLC*,
    No. 16-cv-212-GMS, 2016 WL 4639140 (D. Del. Sept. 6, 2016)......................................7, 8

*Maio v. Aetna, Inc.*,
    221 F.3d 472 (3d Cir. 2000).................................................................................................2

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012).........................................................................................................3

*MAZ Encryption Techs. LLC v. Blackberry Corp.*,
    No. 13-304-LPS, 2016 WL 5661981 (D. Del. Sept. 29, 2016) ............................................6

*McRO Inc. v. Bandai Namco Games Am., Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016).........................................................................7, 8, 13, 17

*Microsoft Corp. v. i4i Ltd. Partn.*,
    564 U.S. 91 (2011)..............................................................................................................3

*MyMail, Ltd. v. ooVoo, LLC*,
    934 F.3d 1373 (Fed. Cir. 2019)............................................................................................9

*Nalco Co. v. Chem-Mod, LLC*,
    883 F.3d 1337 (Fed. Cir. 2018).........................................................................................6, 9

*Pac. Biosciences of Cal., Inc. v. Oxford Nanopore Techs., Inc.*,
    C.A. No. 17-1353-LPS, 2018 WL 1419082 (D. Del. Mar. 22, 2018) .................................2, 8

*Search & Soc. Media Partners, LLC v. Facebook, Inc.*,
    346 F. Supp. 3d 626 (D. Del. Sept. 28, 2018)......................................................................6

*SkillSurvey, Inc. v. Checkster LLC*,
    178 F. Supp. 3d 247 (E.D. Pa. 2016), *aff'd*, 683 F. App'x 930 (Fed. Cir. 2017) ....................3

*SRI International, Inc. v. Cisco Systems, Inc.*,
    930 F.3d 1295, 1301 (Fed. Cir. 2019)................................................................................19

*In re TLI Commc'ns LLC Patent Litig.*,
    823 F.3d 607 (Fed. Cir. 2016)..............................................................................................3

*Transport Techs., LLC v. L.A. Cty. Metro. Transp. Auth.*,
    No. CV-15-6423-RSWL-MRWx, 2016 WL 7444679 (C.D. Cal. July 22,
    2016) ..................................................................................................................................9

**Federal Statutes**

35 U.S.C. § 101 ........................................................................................................3, 9, 17

35 U.S.C. § 103 .................................................................................................................4

35 U.S.C. § 282(a) ............................................................................................................3

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ............................................................ *passim*

Federal Rule of Civil Procedure 12(c) ...............................................................................8

## I.      INTRODUCTION

DraftKings asks this Court—at the pleadings stage—to invalidate the asserted claims of the 8,956,231; 8,974,302; 9,430,901; and 8,616,967 patents as ineligible without offering any evidence contradicting the allegations in the Complaint. Established Federal Circuit authority, however, requires courts to take well-pled allegations as true and resolve all reasonable inferences and factual conflicts in the plaintiff's favor. The motion likewise ignores that factual disputes underlying the eligibility analysis—such as whether a claim term constitutes an inventive concept—preclude early dismissal. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1126 (Fed. Cir. 2018). These shortcomings alone require that DraftKings' motion be denied.

DraftKings' motion should also be denied on the merits, for it oversimplifies the claims and disregards specific claim language. Contrary to DraftKings' blanket statements, the claims do not cover an "abstract idea" but instead are narrowly tailored to advancements in technology for secure, remote mobile wagering to assure compliance with state regulations. More specifically, the claims of the asserted patents require discrete compliance variables necessary for accurately and reliably determining a user's ability (or not) to wager on a mobile device in a given location. This is not an abstract concept, nor was it routine or conventional at the time of the invention. Section 101 law has gone too far to find presumptively valid claims ineligible, and like here, DraftKings' oversimplification of the asserted claims reaches such a high level of abstraction that its arguments are untethered from the language of the claims themselves. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016).

## II.      BACKGROUND

IG asserted the '231, '302, '901, and '967 patents against DraftKings' daily fantasy and sports betting mobile platforms playable on mobile devices like iPhones, Androids, and tablets. The claimed technology allows compliance with highly restrictive state wagering regulations, such

as in New Jersey and Pennsylvania. D.I. 1 at ¶¶ 19-20. The claims of IG's '231 and '302 patents, for example, are directed to a secure authentication protocol that verifies the identity of the user, the eligibility of the user's device to participate in a gameplay, and the location of the user to ensure jurisdictional compliance. *Id*. at ¶¶ 20-28. They also require adjusting the frequency of location determination depending on where the user is with respect to the boundary of the area where gameplay is permitted. *Id*. at ¶ 26. In that way, as a user approaches a boundary where regulations change or gameplay is prohibited, more granular accuracy is achieved while also conserving system resources when the user is not in proximity of a boundary.

The '901 and '967 patents cover mobile gaming using location determination technology in conjunction with enhanced security protocols. *Id*. at ¶ 31. These protocols ensure that users originate and terminate wagering activity within the boundaries of the jurisdiction where wagering is permitted. *Id*. at ¶ 32. The device location is detected by calculating and comparing specific signal characteristics. *Id*. at ¶ 33. Simultaneously, the system uses a multi-layered authentication protocol to authenticate the device, its user, and location. *Id*. at ¶ 34. These inventions, rooted in computer technology, solve unique and highly technical problems associated with remote wagering on mobile devices. They cannot be solved by the human mind. *See id*. at ¶¶ 21, 32.

## III.   APPLICABLE LAW

### A.   Material Allegations Must Be Accepted as True

Courts must accept as true all material factual allegations. *Pac. Biosciences of Cal., Inc. v. Oxford Nanopore Techs., Inc.*, No. 17-1353-LPS, 2018 WL 1419082, at *3 (D. Del. Mar. 22, 2018). Dismissal is only proper if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481–82 (3d Cir. 2000). The relevant inquiry is "whether the

2

claimant is entitled to offer evidence to support the claims," not whether the plaintiff will ultimately prevail. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997).

Issued patents are entitled to a presumption of validity. 35 U.S.C. § 282(a); *see also Microsoft Corp. v. i4i Ltd. Partn.*, 564 U.S. 91, 96, 100 (2011). This presumption applies where claims are challenged under § 101. *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1284, 1304-05 (Fed. Cir. 2013) (en banc), *aff'd*, 134 S. Ct. 2347 (2014); *SkillSurvey, Inc. v. Checkster LLC*, 178 F. Supp. 3d 247, 255 (E.D. Pa. 2016), *aff'd*, 683 F. App'x 930 (Fed. Cir. 2017). Any fact "pertinent to the invalidity conclusion must be proven by clear and convincing evidence." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019).

**B.     The "Abstract Idea" Exception to Patent Eligibility Is Narrow**

The three limited exceptions to the broad scope of subject matter eligibility for "laws of nature, natural phenomena, and abstract ideas" are narrow because "all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 134 S. Ct. 2347, 2354 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012)). Courts must be careful to avoid oversimplifying the claims because it "all but ensures that the exceptions to § 101 swallow the rule." *Enfish*, 822 F.3d at 1337; *see also In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016). Courts instead must consider claims individually, in their entirety, and in view of the specification, to ascertain whether the character, as a whole, impermissibly preempts future use of an abstract idea. *See BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1347-49 (Fed. Cir. 2016); *Enfish*, 822 F.3d at 1335.

Under the *Alice* framework, step one is a "directed to" inquiry, which "applies a stage-one filter to claims, considered in light of the specification, based on whether 'their character as a whole is directed to excluded subject matter.'" *Enfish*, 822 F.3d at 1335 (quoting *Internet Patents*

*Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)). *Alice* step two is a separate inquiry to determine whether the elements of the claim, both individually and as an ordered combination, contain an inventive concept sufficient to transform an otherwise abstract idea into a patent-eligible application. *Alice*, 134 S. Ct. at 2355. Claims directed to a "problem that does not arise in the 'brick and mortar context,'" but "particular to the Internet," for example, indicate patent eligibility, despite resting upon a potentially "abstract idea." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257–58 (Fed. Cir. 2014). The inventive concept inquiry is not, however, an obviousness analysis under 35 U.S.C. § 103. *BASCOM*, 827 F.3d at 1350.

## IV.  ARGUMENT

### A.  DraftKings' Motion is Premature and Procedurally Defective

While left unaddressed by DraftKings, this Court generally considers three threshold factors before deciding a Rule 12(b)(6) motion on patent eligibility:

> (1) Are all non-representative claims adequately represented by the representative claim (i.e., do *all* of the challenged claims relate to the *same* abstract idea and do any of the non-representative claims add one or more inventive concepts . . . )?
> (2) Are there issues of claim construction that must be decided  . . . ?
> (3) Is there *any* set of facts that could be proven relating to preemption, questions of patentability, or whether the claims "solve a technological problem," that would result in a determination that one or more of the claims are patent-eligible?

*Cronos Techs., LLC v. Expedia, Inc*., No. 13-1538-LPS, 2015 WL 5234040, at *2 (D. Del. Sept. 8, 2015) (emphasis in original). The facts here, in view of these guiding factors, show that DraftKings's motion is premature and should be denied. DraftKings provides no justification for filing a Rule 12(b)(6) motion other than merely alleging that "[w]hile the Court must accept well-pleaded facts as true at this stage, that tenet is inapplicable to legal conclusions."[1] D.I. 11 at 3. This

---

[1] To the extent DraftKings suggests the asserted patents are invalid because other patents were found ineligible in a prior dispute involving IG, it is wrong. That prior opinion on patents covering geolocation technology for mobile gaming was found patent eligible, while other unrelated patents

statement—and DraftKings' motion—fails to acknowledge that numerous underlying factual disputes, like here, cannot be resolved through a Rule 12 motion.

### 1.     DraftKings Fails to Disprove the Factual Allegations

Under Federal Circuit authority, "eligibility can be determined at the Rule 12(b)(6) stage . . . only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix*, 882 F.3d at 1125. In *Aatrix*, the Federal Circuit vacated dismissal because the complaint contained concrete allegations "that individual elements and the claimed combination are not well-understood, routine, or conventional activity," and that the claimed combination improved computer functionality. *Id.* at 1128. In view of this factual dispute, the Federal Circuit held that it "could not conclude at the Rule 12(b)(6) stage that the claimed elements were well-understood, routine, or conventional." *Id.* at 1128–29; *see also Berkheimer v. HP, Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

The same is true here. IG's Complaint provides concrete allegations, based on the specification and claim language of each patent, that the asserted claims embody concrete technological solutions and inventive concepts that were not well-understood, routine, or conventional. *See* D.I. 1 at ¶¶ 19-36. The Complaint alleges that the technological solutions provided in the asserted claims, *e.g.*, user and device verification and authorization for remote gambling systems, are unconventional and inventive because they did not exist until the advent of remote, network-based gaming using mobile devices and state-by-state mobile gaming regulations. *See id.* at ¶¶ 21, 32. These detailed and well-supported allegations are true, and the claimed inventions are thus directed to concrete, inventive concepts particular to the Internet and regulatory compliance found in the mobile gaming industry. *See DDR*, 773 F.3d at 1257 (holding claims not

---

on gaming alone were not. *CG Tech. Dev., LLC v. Bwin.Party (USA), Inc.*, No. 2:16-cv-00871-RCJ-VCF, ECF No. 42 (D. Nev. Oct. 18, 2016).

abstract because, "[a]lthough the claims address a business challenge (retaining website visitors), it is a challenge particular to the Internet"). For example, the Complaint alleges that the claimed systems and apparatuses in the '231 and '302 patents embody "a multisystem secure authentication protocol to facilitate compliance with regulatory requirements."[2] *E.g.*, D.I. 1 at ¶ 20. The Complaint also provides detailed steps involved in the multisystem secure authentication protocol that confer an inventive concept. *Id*. at ¶¶ 21-30. Similar statements detailing the '901 and '967 patents are found in paragraphs 31-37 of the Complaint.

These allegations raise more than just a reasonable expectation that discovery will reveal evidence to support that the claimed elements are inventive. *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) ("The plausibility standard 'does not impose a probability requirement at the pleadings stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' to support the plaintiff's allegations."). And this factual dispute alone is enough to preclude dismissal, especially where DraftKings' motion offers nothing to contradict these specific allegations. *See Search & Soc. Media Partners, LLC v. Facebook, Inc.*, 346 F. Supp. 3d 626, 643 (D. Del. Sept. 28, 2018) ("Further factual development regarding just how unconventional or innovative this application was . . . might impact the Section 101 inquiry."); *MAZ Encryption Techs. LLC v. Blackberry Corp.*, No. 13-304-LPS, 2016 WL 5661981, at *6, *8 (D. Del. Sept. 29, 2016) (same).

## 2. The Claims Analyzed by DraftKings Are Not Representative

DraftKings' motion also fails to adequately analyze *all* the asserted claims. In a Rule

---

[2] DraftKings argues that "no claim requires a 'multisystem secure authentication protocol.'" D.I. 11 at 10. This is not true, and DraftKings' argument only emphasizes the factual disputes here. For example, claim 1 of the '231 patent recites a multisystem secure authentication protocol and its detailed steps including the authentication of a user, a device, and its location. Further, the "multisystem secure authentication protocol" and its steps shown in Fig. 3 are described in detail in the specification. *See* '231, 40:64-45:49; '302, 40:15-45:38.

12(b)(6) motion challenging eligibility of multiple claims based on an analysis of a single representative claim, a defendant must show that the analyzed claim adequately represents all other "non-representative" claims. *Cronos*, 2015 WL 5234040, at *2. Indeed, this Court has denied 12(b)(6) motions when the alleged "representative" independent claim does not adequately represent the remaining claims, including dependent claims that impart further inventive concepts. *Id*. (denying motion to dismiss for failing to "provide at least ***some*** meaningful analysis for ***each*** of the challenged claims"); *JSDQ Mesh Techs. LLC v. Fluidmesh Networks, LLC*, No. 16-cv-212-GMS, 2016 WL 4639140, at *3 (D. Del. Sept. 6, 2016) (finding plaintiff "has sufficiently pled allegations to create a factual dispute as to whether the non-representative claims add inventive concepts that would result in patent eligibility").

Despite this requirement, DraftKings analyzed only a single claim from each patent without addressing other claims or IG's well-pled allegations. Even worse—and contrary to established authority—DraftKings oversimplifies the claimed invention of claim 1 of the '231 patent, reducing it to the highest possible level of abstraction, i.e., "analyzing information." D.I. 11 at 5; *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) ("[C]ourts 'must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims.'"). Then, while ignoring all other claim limitations, DraftKings sweeps in all other limitations of the dependent claims into an oversimplified characterization that they do not impart an inventive concept. *See* D.I. 11 at 4.

This argument is not only contrary to the Federal Circuit precedent but is also technically flawed. Dependent claims 8-11, for instance, are directed to adjusting the frequency of the determining step in claim 1 based on the distance of a user from the boundary of the area in which the user is permitted to engage in a gaming activity. *See, e.g.*, D.I. 1 at ¶¶ 25-26. Claims 12-15

7

recite requirements for how these steps are carried out. *See id*. Further, dependent claims 18-20 are directed to authorizing the device using hashing protocols and communication port disablement. *See id*. at ¶¶ 27-28. Thus, the claimed inventions recited in these "non-representative" claims go well beyond claim 1—they employ "a combined order of specific rules that renders information into a specific format that is then used and applied to create desired results." *McRO*, 837 F.3d at 1315. For similar reasons, at least dependent claims 8-13 are not adequately represented by claim 1 of the '302 patent.

DraftKings likewise chooses claim 27 of the '901 patent and claim 1 of the '967 patent as representative without explanation. *See* D.I. at 11, 17. Again, DraftKings offers nothing more than attorney argument which oversimplifies the claimed invention and fails to analyze the remaining independent and dependent claims with their many additional claim limitations. For example, at least dependent claims 2 and 4 of the '901 patent specify how to calculate "signal characteristics" recited in claim 27, adding inventive concepts of the geolocation technology. Similarly, at least dependent claims 3-6 of the '967 patent add inventive concepts of using a timer based on the geolocation information calculated according to claim 1. Because there is a factual dispute as to whether the "representative claims" in the motion adequately represent other asserted claims (they do not), DraftKings' motion should be denied. *See JSDQ Mesh*, 2016 WL 4639140, at *3.

### 3.    Claim Construction Cannot Be Resolved on a 12(b)(6) Motion

While IG submits that the Court should not find the claimed inventions abstract in the first instance, the Court should decide step 2 and thus, patent eligibility, only *after* discovery and claim construction. *Pac. Biosciences*, 2018 WL 1419082, at *7 (holding that at the claim construction stage, "the Court cannot say that [movant] has shown by clear and convincing evidence that the claims do not capture an inventive concept."). Recently, the Federal Circuit vacated the grant of a Rule 12(c) motion on eligibility grounds because the district court did not construe a disputed

8

claim term and the parties had not briefed their claim construction arguments. *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1380 (Fed. Cir. 2019); *see also Aatrix*, 882 F.3d at 1125. Courts, in fact, routinely deny Rule 12(b)(6) motions because they "cannot resolve the § 101 analysis before gaining a full understanding of the claimed subject matter during claim construction." *Transport Techs., LLC v. L.A. Cty. Metro. Transp. Auth.*, No. CV-15-6423-RSWL-MRWx, 2016 WL 7444679, at *6 (C.D. Cal. July 22, 2016); *see also Guada Techs. LLC v. Vice Media, LLC*, No. 17-1503-RGA, 2018 WL 4441460, at *6 (D. Del. Sept. 17, 2018); *T-Jat Sys. 2006, Ltd. v. Expedia, Inc.*, No. 16-581-RGA, 2018 WL 1525496, at *7 (D. Del. Mar. 28, 2018).

Here, the parties dispute the meaning of at least the claim term "determine" in the '231 and '302 patents, particularly in the "determine a period of time . . . based on a distance of the first location from a boundary area" and "determining a location . . . by comparing . . .  a set of signal characteristics" phrases of the '901 patent.[3] These claim construction disputes raise core underlying factual issues: whether the claims constitute a non-abstract idea (under DraftKings' interpretation) or inventive concepts (under IG's). Indeed, DraftKings' entire motion rests on its interpretation that the claims amount to nothing more than "merely requir[ing] analyzing information." *See* D.I. 11 at 5. They require more, however, and DraftKings' oversimplification of the claims as a whole only myopically points to one portion of the specification for support, while ignoring both the context of the claim terms as a whole and other portions of the specification. *See Nalco*, 883 F.3d at 1350 ("It is not appropriate to resolve these disputes . . . without the benefit of claim construction.").

Contrary to DraftKings' oversimplification that "determine" means only "analyzing," other

---

[3] To properly construe the phrases that include "determine" as a claim limitation, the Court may also have to construe at least the terms "signal characteristics" and "signal detection devices" recited in claim 1 of the '901 patent.

9

claim limitations including, for example, "determine a period of time . . . based on a distance of the first location from a boundary area" should be construed to mean that the algorithm for calculating and adjusting the frequency of the authentication depends on the proximity of the user to the boundary of the area where a gaming activity is allowed. *See generally* '231, claims 1-21; '302, claims 1-25. Likewise, "determining a location . . . by comparing . . . a set of signal characteristics" requires an algorithm for calculating and pinpointing the location of a mobile gaming device based on specific comparisons of the nature of wireless signal patterns, and not just generically "analyzing," as DraftKings asserts. Whether these claim elements viewed individually or in combination were routine and conventional to a person skilled in the art is a question of fact that should "preclude[] granting a motion to dismiss" here. *Guada*, 2018 WL 4441460, at *6-7.

**B.     The '231 and '302 Patent Claims Pass the *Alice* Patent Eligibility Inquiry**

**1.     Step One: Claims on Secure Remote Authentication Are Not Directed to Abstract Subject Matter and DraftKings Fails to Show Otherwise**

The '231 and '302 patents are not, as DraftKings argues, directed to an abstract idea. These patented technological solutions instead address and overcome the challenges facing mobile gaming operators in complying with regulations in different locations. Moreover, these challenges were not encountered earlier with traditional, land-based gaming, but only emerged when mobile devices allowed for remote gaming. D.I. 1 at 19. Far from routine or conventional, the '231 and '302 patented technology solved remote wagering challenges by leveraging multiple layers of authentication protocols to authenticate the user, the user's device, and its geolocation, thereby ensuring that the mobile gaming experience remained legal, secure, and practical. '231, 40:65-67.

**a)     Multisystem secure authentication solves a technical problem**

Remote gaming saw additional hurdles based on regulatory compliance: gaming operators had to ensure security and authenticity of users' mobile device and that users did not circumvent

regulatory controls. *Id*., 36:15-37:53, 37:20-35. The '231 and '302 patents address this by using a "multisystem secure authentication protocol" to authorize the mobile device. *Id*., 40:65-67. In one example, an authenticator service confirms that a unique identifier for the device is associated with an authorized account or list of authorized devices. *Id*., 42:15-20, 45:10-15. The system can also ensure that devices do not include software that enables otherwise prohibited access. It does so by validating that certain external communication interfaces are disabled. *Id*., 39:45-62, 43:24-25.

Claim 1 of the '231[4] patent claims this improvement, the system "determine[s] that a device is authorized to use a gaming service based on one or more characteristics of the device other than location." *Id.*, 76:5-8. The dependent claims elaborate on that improvement. For example, dependent claim 18 further recites the data structure for confirming the device does not have software for spoofing a location by determining that communication ports of the device are disabled before allowing access. *See, id.*, 39:51-62. Dependent claims 19 and 20 cover how the system verifies the authentication of the application by using multistage hashing protocols to send application and operating system signatures to the device authenticator service. *Id*., 41:5-20. The '302 patent, additionally, requires determining whether the operating system running on the user's mobile device is approved. '302, 71:1-2. Claim 7, for example, reads memory locations and compares files to ensure the device has not been "rooted" or modified. *Id*

### b)    Location redetermination improves the computer system

The asserted patents address additional challenges to secure mobile wagering by leveraging geofencing, GPS, and triangulation techniques to create virtual perimeters of geographic areas that allow or disallow gaming. '231, 52:59-53:30. The claimed techniques in the '231 patent enable accurate determination of a user's location using the mobile device as a proxy. *Id*., 36:64-66. This,

---

[4] IG submits that claim 1 of the '231 patent is not "representative" and refers to the '231 patent specification and claims only for purposes of rebutting DraftKings' arguments here.

however, is done while addressing that constant location determination strains system resources and increases latency during peak usage. *Id.*, 54:15-25. While some users may require location determinations at a more constant rate, others may not. The claimed system minimizes the requirement for constant surveillance at certain times thereby improving the efficiency and performance of the computer system itself by minimizing redeterminations. *Id.,* 54:15-50.

Claim 1 of the '231 patent recites determining "a location redetermination of the device" based on a period of time that takes into account multiple factors. Dependent claims 8-17 emphasize these factors, including (1) the speed of travel, (2) direction of travel, and (3) distance to a boundary, such as a state border, for improving the efficiency of the system. Far from abstract, the claims are rooted in computer technology and recite improvements that definitively alter the operation of traditional mobile gaming devices in a specific way to authenticate the user, the user's device, and the user's location before providing remote access to remote gaming within a highly-regulated industry. *Enfish*, 822 F.3d at 1335-1336.

        c)      **DraftKings' alleged abstract idea can only be supported by ignoring the claim language and specification**

In its attempt to minimize the claims of the '231 and '302 patents as covering nothing more than "analyzing information," DraftKings ignores the patents' claim language, dependent claims, and much of their disclosures. D.I. 11, 4. This approach not only takes the claim elements out of context, but also disregards many elements all together. The result violates *Alice*'s requirement of evaluating the claims *as a whole* and as *an ordered combination*. *Alice*, 134 S. Ct. at 2359. Indeed, DraftKings cites only to discrete portions of the specification, while conveniently ignoring others, to support an overly broad and erroneous approach to its *Alice* analysis. *Compare, e.g.,* D.I. 11, 5 (citing the term "determining"), *with* 6 (alleging no details on how location determination is done). This oversimplification is the "untethered" analysis that the Federal Circuit has cautioned against.

12

*Enfish*, 822 F.3d at 1337. Moreover, this overgeneralization could very well be used to describe all computerized methods because at some level all computer processors analyze data. Characterizing the claims in this manner does no more than establish that the claims relate to computer components and software. That, however, is insufficient to establish that claims are directed to an abstract idea. *See McRO*, 837 F.3d 1299; *DDR Holdings*, 773 F.3d 1245.

DraftKings attempts to analogize *Front Row*, but that case is distinguishable. First, the conclusion that *Front Row*'s claims were directed to an abstract idea largely premised on the claims "not amount[ing] to 'improvements to computer-related technology'" and "not creat[ing] any 'non-abstract' software improvements, such as faster processing times or flexibility." *Front Row Techs., LLC v. NBA Media Ventures, LLC*, 204 F. Supp. 3d 1190, 1271 (D.N.M. 2016). But here, the claimed location redetermination features improve the efficiency and performance of the computer. Second, DraftKings' position that the claims recite merely "a generic location-determination step," D.I. 11 at 6, again ignores the entirety of the claim, as well as other dependent claims that include claim limitations requiring much more than a generic lookup.

The claims here are much more like those found in *Enfish*—claiming an improvement that by its nature changes the operation of a gaming device. 822 F.3d at 1335 ("make non-abstract improvements to computer technology"). The claimed apparatuses vary the time between periodic location checks based on these parameters. *Id.*, 49:60-50:10, 54:62-67. This is not abstract, but grounded in the technology for implementing legal, mobile wagering. The patented devices function differently based on the determined user, device, and location attributes.

### 2.     Step Two: The Claims Recite an Inventive Concept

The claims are not directed to an ineligible concept; therefore, an "inventive concept" analysis is not necessary. *Enfish*, 822 F.3d at 1339. Nevertheless, as is clear from the Complaint, the claims contain an inventive concept based on a solution to the real-world need of ensuring

adherence to jurisdictional regulations when gaming via mobile devices. *See Iron Gate Security, Inc. v. Lowe's Cos.*, No. 15-cv-8814, 2016 WL 4146140, at *9 (S.D.N.Y Aug. 3, 2016) ("[T]he objective of [step two] is to determine whether the claims provide a solution to a problem; it is not intended to replace the requirements for validity."). DraftKings flat-out ignores this by asserting that the claims perform only generic location determination (which they do not) on a generic computer (which they do not). D.I. 11 at 8-9.

As mentioned above, and worth repeating here, at the time of invention in 2010, there was a real-world need to authenticate users and their devices to ensure compliance with state regulations. '231, 40:64-41:17. The inventors responded to this by developing a system that leverages multiple layers of authentication protocols to authenticate the user, the user's device, and its location. *Id.*, 40:65-67. The claims recite a technical improvement to prior art systems by, among other things, "determin[ing]that a device is authorized to use a gaming service based on one or more characteristics of the device other than location," "determin[ing] that a user of the device is authorized to use the gaming service," "determin[ing] that the device is associated with a first location in which gaming activity is allowed," and performing a "location redetermination of the device . . . *based on a distance of the first location from a boundary of an area*." '231, claim 1. The specification supports the claimed inventions by not only describing these challenges but also offering solutions to them. *See, e.g.,* D.I. 1 at ¶¶ 20-29.

Here, DraftKings' motion has not proven any facts by clear and convincing evidence that the '231 and '302 patents embody anything other than patent eligible inventive concepts when all facts and inferences are drawn in IG's favor. *Berkheimer*, 881 F.3d at 1368; *see also Cellspin*, 927 F.3d 1315 ("deciding whether claims recite an 'inventive concept,'. . . may turn on underlying 'question[s] of fact"). To the extent DraftKings argues that the novel technical solutions disclosed

14

in the specification are not embodied in the claims, these arguments only confirm that DraftKings' motion is inappropriate at this time. D.I. 11 at 10.[5]

### C.     The '901 Patent Claims Pass the *Alice* Patent Eligibility Inquiry

#### 1.     Step One: Location Determination Claims Are Not Directed to Abstract Subject Matter and DraftKings Fails to Show Otherwise

The '901 patent addresses, not an abstract idea, but the technological challenges facing pioneering mobile gaming operators in 2005. At that time, gaming operators were presented with unique technical problems, because unlike traditional gaming, where "participants in casino-type gambling activities must be present at a gaming machine or at a gaming table within the casino in order to place a bet," remote gaming did not require physical presence. '901, 1:42-46. There were, as now, "pre-defined area[s] in which gaming is permitted by law" and areas that were prohibited. *Id.*, 3:40-45. To ensure compliance, operators were concerned with determining the user's location with the accuracy necessary to comply with laws and regulations.

The '901 patent addressed these problems by using geolocation techniques and enabling users to remotely engage in gaming activities in accordance with applicable laws. The patent recognizes that with remote gaming, operators needed "to ensure that movement of the gaming communication device to an unauthorized area is detected during play, and not just upon login or initial access." *Id.*, 9:10-15. The patent solves this by ensuring that wagers originate and terminate within boundaries of a competent jurisdiction. *Id.*, 5:65-6:2, 7:45-50. For example, the patent discloses a unique architecture for accurately detecting a device's location with GPS, triangulation, and geofencing techniques for selective geographic control. *Id.*, 7:20-65. The system periodically updates the location determination information to ensure constant compliance. *Id.*, 9:9-15.

---

[5] DraftKings' categorization of the technical problems as "business problems" is misleading from a legal standpoint and miscomprehends what drives technical innovation from a practical one.

The claims describe how the "location verification is accomplished" to "avoid the potential for bets or wagers to be made outside Nevada state lines," for example. *Id.*, 7:35-50. They disclose calculating signal characteristics between a calibration device and signal detection devices and comparing the calculated signal characteristics with those received from a mobile device. *Id.*, 26:10-23. The dependent claims cover additional characteristics, including signal strengths (claim 2) and transmission times of signals (claim 4). *See id.*, 24:17-27. Thus, far from abstract, the claims disclose the specific structure of the novel system's architecture for detecting the location of a device covered by a communications network.

DraftKings' the-end-justifies-the-means approach ignores these core claim elements and critical language to conclude with an "abstract idea." The result is one that again violates *Alice. See* 134 S. Ct. at 2359. This flawed analysis is shown below, which shows the swathes of claim language (masked) that DraftKings set aside to manufacture its abstract idea argument:



'901, 26:9-28. Oversimplifying the claims into these "functional" steps is precisely the type of "untethered" analysis the Federal Circuit has cautioned against. *Enfish*, 822 F.3d at 1337.

DraftKings' disregard of claim language, recited structures, and the specification provides a biased lens through which *all* software patents can be reduced to abstract ideas. This impermissible approach is the only basis for DraftKings to analogize to *Content Extraction*, D.I.

11 at 11, which relates to claims disclosing extracting data, using a scanner, analyzing the data, and storing it. In contrast, a proper reading of the '901 patent claims, read in light of the specification, shows they are similar to inventions found eligible. In *Enfish*, the Federal Circuit recognized that "[s]oftware can make non-abstract improvements to computer technology just as hardware improvements can." 822 F.3d at 1335. The claims in *Enfish* were found to be "directed to an improvement of an existing technology . . . bolstered by the specification's teachings that the claimed invention achieves other benefits over conventional" systems. *Id.* at 1336, 1337.

Like *Enfish*, the claims of the '901 patent cover a particular improvement to existing location determination technology, providing a novel architecture for detecting a device's location by calculating signal characteristics between a calibration device and signal detection devices. This allows these devices to operate remotely while addressing the regulatory hurdles. The performance of the computer system itself is in turn improved by more accurately determining the location of the "gaming communication device within a larger property, such as a casino complex." '901, 9:30-45. The device's location "may be determined based upon the strength of the signal received by each signal detection device 602 from the [gaming communication] device 604," using, for example, Received Signal Strength Indication values. *Id.*, 10:29-38.

Similarly, *McRO* cautioned against looking at the claims "generally and failing to account for the specific requirements of the claims." *McRO*, 837 F.3d at 1313. *McRO* focused on the "specific means" used in a patent and recognized that there is little risk of preemption where "specific structure[s]" are claimed. *Id.* at 1314, 1315. Here, the claims recite a calibration device and signal detection devices for detecting a mobile device's location by calculating signal characteristics. The claims cover, not an abstract concept, but an improvement to the location determination system itself. Like in *McRO*, not only is the nature of the recited structure far from

17

abstract, but it also avoids the risk of preemption that is "[t]he concern underlying the exceptions to § 101." *Id.* at 1315.

## 2.  Step Two: The Claims Also Recite an Inventive Concept

The '901 patent is not directed to a patent ineligible concept. Nevertheless, the claims also contain an inventive concept based on jurisdictional compliance. DraftKings ignores this, and argues the inventors "did not invent a new way of determining the location of a device…or a new way of turning functionality on and off." D.I. 11 at 14. DraftKings even alleges that the inventors must have invented a new "signal-based location-detection technique" for an inventive concept to exist. *Id.* In doing so, DraftKings improperly attacks the claims on an element-by-element basis to describe each element as "conventional technology," contrary to the law. *Id.* at 15. Indeed, "[t]he inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art." *BASCOM*, 827 F.3d at 1350.

A proper *Alice* step-two inquiry reveals that the patented invention solved the problem of accurately determining the location of a user's mobile device to ensure compliance. '901, 7:20-65. The inventors responded to this need by creating a system that leverages geolocation techniques to "enable[e]…a set of wagering activities through the mobile device" by comparing "calculated sets of signal characteristics" between "a calibration device at the location and a set of signal detection devices of the communication network" with a "set of signal characteristics measured between the signal detection devices and the mobile device." *Id.*, 23:62-24:5. The claims thus describe an inventive, unconventional concept in 2005. *See, e.g.,* D.I. 1 at ¶¶ 31-34.

## D.  The '967 Patent Claims Pass the *Alice* Patent Eligibility Inquiry

### 1.  Step One: The Location Determination Claims are Not Directed to Ineligible Subject Matter and DraftKings Fails to Show Otherwise

The '967 patent also recognizes that remote gaming "does not provide location verification

suitable to ensure that a user is within an approved gaming area." '967, 1:40-44. The patent solves these problems by using "a location verification or determination feature" to change and improve the operation of a mobile gaming device "to permit or disallow gaming from the remote location depending upon whether or not the location meets one or more criteria." *Id.*, 3:16-24. But it goes a step further, tying the user's wagering ability to both location and a time period that accounts only for time during which the user was permitted to wager, and automatically disables the user's device based on these restrictions. *Id.*, 20:55-21:6, 21:30-40. The claims recite an improvement that alters the operation of traditional mobile devices.

Claim 1, for example, is similar to those found eligible in *SRI International, Inc. v. Cisco Systems, Inc.*, 930 F.3d 1295, 1301 (Fed. Cir. 2019). *SRI* addressed a patent related to event monitoring in a computer network and where the "claims were directed to more than an abstract idea" because they did not "merely require[] a 'computer network operating in its normal, expected manner.'" *Id.* at 1304 (quoting *DDR Holdings*, 773 F.3d at 1258). *SRI* stressed that claims were different in that they "actually prevent the normal, expected operation" of a conventional system. *Id.* at 1304. As in *SRI*, the '967 patent's claims are specifically directed to ensuring that a mobile gaming device may not simply operate "in its normal, expected manner." *Id.* Instead, the device's location is used to permit or not permit the wagering based on location and automatically disables the device when the user exceeds an allotted amount of time, while distinguishing between the time spent within or outside permitted locations. This is contrary to the "normal, expected" operation—it would have been counterintuitive in 2004 for a casino to *limit* a user's wagering or disable a gaming device after exceeding a time period.

DraftKings again ignores both the claims and the specification of the '967 patent to bolster its oversimplification of the claims as "authorizing wager-based gaming on a device based on

location and elapsed time" and comparing it to "a parent restricting a child's screen time while at home." D.I. 11 at 16. This approach is the type of "untethered" analysis the Federal Circuit has cautioned against. *Enfish*, 822 F.3d at 1337. While a parent at home could manually remove her child's device to restrict screen time, this analogy fails to take into account *any* of the actual technical problems faced when the child's device is remote and moving between permitted and prohibited watching locations. *See, e.g.,* '967, 3:15-25, 10:31-50. Indeed, in 2004, gaming operators needed to ensure that the device's location was accurately determined such that the time restrictions only applied when the device was used in permitted areas. *Id.*, 20:59-21:6, 21:27-39. Otherwise, the user's movements in and out of approved gaming areas would be unaccounted for.

### 2.    Step Two: The Claims Also Recite an Inventive Concept

The Complaint details that prior art systems were not able to "provide location verification suitable to ensure that a user is within an approved gaming area. '967, 1:40-43. This shows an inventive concept. And a proper step two inquiry reveals that the invention solved real-world problems facing the industry in 2004, including how to ensure users remotely wagered only where permitted, even after an initial determination that the activity was permitted, and accounting for movements in and out of gaming areas. The claims of the patent recite a technical improvement to prior art by accurately determining the user's location and tying certain time restrictions to such determinations. *Id.*, 19:26-65. The claims also recite when and how to disable the user's device, by "incrementing the counter" only when the "gaming device is located back within the area in which the user is permitted to engage" in the wagering activity (*Id.*, 20:5-17) and "deactivat[ing] the gaming device" by causing the "device to be inoperable." *Id.*, 21:30-39, 49-56.

### V.    CONCLUSION

For these reasons, IG requests that the Court deny DraftKings' motion to dismiss.

Dated: December 20, 2019

McCARTER & ENGLISH, LLP


*/s/ Daniel M. Silver*
Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
Renaissance Centre
405 N. King Street, 8th Floor
OF COUNSEL:                    Wilmington, Delaware 19801
                               (302) 984-6300
Robert F. Shaffer              dsilver@mccarter.com
James R. Barney               ajoyce@mccarter.com
Anthony D. Del Monaco
Abdul Ghani Hamadi            *Attorneys for Plaintiff*
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413


21