IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTERACTIVE GAMES LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 19-1105 (RGA) |
| | ) | |
| DRAFTKINGS, INC., | ) | |
| Defendant. | ) | |

**DEFENDANT DRAFTKINGS INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION
TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO
<u>FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>**

OF COUNSEL:

G. Hopkins Guy III
BAKER BOTTS L.L.P.
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA  94304-1007
(650) 739-7500

Jamie R. Lynn
BAKER BOTTS L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004-2400
(202) 639-7786

Michael E. Knierim
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112-4498
(212) 408-2500

Clarke W. Stavinoha
BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 900
Dallas, TX 75201-2980
(214) 953-6500

January 10, 2020

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
Jeffrey J. Lyons (#6437)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com
jlyons@mnat.com

*Attorneys for Defendant DraftKings, Inc.*

# **TABLE OF CONTENTS**

                                                                                                                                                                       **Page**

I.     Introduction ................................................................................................................... 1

II.    DraftKings' Motion is Procedurally Proper ................................................................. 1

    A.    No Plausible, Disputed Factual Allegations Preclude Dismissal ......................... 1

    B.    DraftKings' Identified Claims are Representative ............................................... 3

    C.    Claim Construction Is Not Required For Dismissal ............................................ 4

III.   The '231 and '302 Patents Claim Ineligible Subject Matter ........................................ 5

    A.    Step One: The '231 and '302 Patents Are Directed To An Abstract Idea .......... 5

    B.    Step Two: The '231 and '302 Patents Lack an Inventive Concept ..................... 7

IV.   The '901 Patent Claims Ineligible Subject Matter ....................................................... 8

    A.    Step One: Comparing Signal Characteristics Is Abstract .................................... 8

    B.    Step Two: Comparing Data Does Not Supply An Inventive Concept ................ 9

V.    The '967 Patent Claims Ineligible Subject Matter ....................................................... 9

    A.    Step One: Authorizing Remote Gaming Is Abstract ........................................... 9

    B.    Step Two: Location Verification Using Conventional Processes Does Not Supply An Inventive Concept ............................................................................ 10

VI.   Conclusion .................................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   890 F.3d 1354 (Fed. Cir. 2018)......................................................................................1, 2

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018)...................................................................................1, 2, 3

*BSG Tech LLC v. Buyseasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018)...............................................................................2, 4, 8, 9

*ChargePoint, Inc. v. SemaConnect, Inc.*,
   920 F.3d 759 (Fed. Cir. 2019)..........................................................................................3, 5

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014)............................................................................................8

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014)......................................................................................7, 10

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016)...................................................................................5, 7, 8

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016)......................................................................................6, 7

*Front Row Techs., LLC v. NBA Media Ventures, LLC.*,
   204 F. Supp. 3d 1190 (D.N.M. 2016) ...............................................................................10

*Genetic Techs. Ltd. v. Merial LLC*,
   818 F.3d 1369 (Fed. Cir. 2016)............................................................................................4

*Maxell, Ltd. v. Fandango Media, LLC*,
   No. CV 17-07534 AG (SSX), 2018 WL 4502492 (C.D. Cal. Sept. 11, 2018),
   *aff'd,* No. 2019-1088, 2019 WL 4941873 (Fed. Cir. Oct. 8, 2019)............................................7

*Parker v. Flook*,
   437 U.S. 584 (1978)............................................................................................................5

*RecogniCorp, LLC v. Nintendo Co.*,
   855 F.3d 1322 (Fed. Cir. 2017)............................................................................................9

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
   873 F.3d 905 (Fed. Cir. 2017).........................................................................................2, 6

*SRI Int'l, Inc. v. Cisco Systems, Inc.*,
  930 F.3d 1295 (Fed. Cir. 2019)......................................................................................10

*Two-Way Media Ltd. v. Comcast Cable Comms.*,
  LLC, C.A. No. 14-1006-RGA, 14-1212-RGA, 2016 WL 4373698 (D. Del.
  Aug. 15, 2016), *aff'd* 874 F.3d 1329 (Fed. Cir. 2017)............................................3

**Rules and Statutes**

Fed. R. Civ. P. 12(b)(6)...................................................................................................1

I.        **INTRODUCTION**

In its Opening Brief (D.I. 11), DraftKings showed that the asserted patents claim abstract ideas with no saving inventive concept. In its Answering Brief (D.I. 13), IG fails to meaningfully address the claims' deficiencies or the analogous cases holding similar claims ineligible. Rather, IG devotes its opposition to manufacturing alleged disputes regarding questions of fact, representative claims, and claim construction issues. ***First***, contrary to IG's assertions, the ***claims***—as opposed to the specifications—recite no more than functional and result-based steps and lack any limiting detail to confine them to a ***particular solution*** to an identified problem. IG's reliance on *Aatrix* and *Berkheimer* to suggest that questions of fact preclude resolving the step-two analysis now is misplaced. Where, as here, the specifications state that the claimed technology was well-understood, routine, and conventional, there is no factual dispute at step two to preclude dismissal at the Rule 12(b)(6) stage. IG's attempts to inject unclaimed subject matter into the eligibility analysis is improper and highlights that the claims ***as written*** are ineligible. ***Second,*** IG fails to show that ***any*** claim of an asserted patent is not adequately represented by the independent claims analyzed by DraftKings. Each of the dependent claims identified in IG's Brief relates to the ***same*** abstract concepts as its respective independent claim and ***none*** add an inventive concept. ***Third***, there is no claim construction dispute precluding dismissal now—the asserted claims are ineligible even under IG's constructions (which are directly contradicted by the specifications).

II.       **DRAFTKINGS' MOTION IS PROCEDURALLY PROPER**

    **A. No Plausible, Disputed Factual Allegations Preclude Dismissal**

Relying on *Aatrix* and *Berkheimer*, IG wrongly contends that the allegations in its Complaint create factual issues that prevent resolving the eligibility question at this stage. D.I. 13 at 5-6. IG ignores that the "decisions in *Berkheimer* and *Aatrix* ***are narrow***: to the extent it is at issue in the case, whether a claim element or combination of elements is well-understood, routine, and

1

conventional is a question of fact." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1359 (Fed. Cir. 2018). Importantly, only a "genuine dispute of material fact" as to the "invention *as claimed*" can prevent dismissal. *Id*. "In a situation where the specification admits the additional claim elements are well-understood, routine, and conventional, it will be difficult, if not impossible, for a patentee to show a genuine dispute." *Id.* at 1356. Such is the case here.

IG fails to identify a single factual allegation precluding dismissal under *Aatrix* or *Berkheimer*. Instead, IG broadly contends that "[t]he Complaint alleges that the technological solutions provided in the asserted claims, *e.g.*, user and device verification and authorization for remote gambling systems, are unconventional and inventive because they did not exist until the advent of remote, network-based gaming and state-by-state mobile gaming regulations." D.I. 13 at 5. But the step-two inquiry is not whether the claim "as a whole is unconventional," but whether the claim constitutes an "inventive concept" such that it amounts to significantly more than a patent on the abstract idea. *See BSG Tech LLC v. Buyseasons, Inc*., 899 F.3d 1281, 1285 (Fed. Cir. 2018). Moreover, contrary to IG's allegations, the specifications admit that device location verification was conventional and routinely performed by third-party providers. *E.g.,* '231 Patent at 53:59-54:4 (explaining "a communication service provider (e.g., Sprint) may track a current location of a mobile device" and gaming services may query such a third-party "to verify a location as desired"). IG's argument is thus contradicted by the specifications and should be disregarded. *See Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) ("In ruling on a 12(b)(6) motion, a court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the claims and the patent specification.").

IG argues that the '231 and '302 Patents are directed to an allegedly novel "multisystem secure authentication protocol," and that this allegation creates a factual dispute that

precludes dismissal. D.I. at 6.  It is well settled, however, that the fundamental consideration of the eligibility analysis is "the language of the Asserted Claims themselves."  *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019).  The specification "***cannot be used*** to import details from the specification if those details *are not claimed*."  *Id.*  That is exactly what IG attempts to do in its Complaint and opposition.  Claim 1 of the '231 Patent, for instance, merely recites ***a processor*** that authorizes a device "based on one or more characteristics of the device ***other than location***"—a broad limitation not requiring the allegedly novel "multisystem" configuration.  This alone makes any factual allegation regarding an alleged "multisystem secure authentication protocol" moot for purposes of the §101 inquiry because the claims themselves must recite the alleged inventive concept, not just the specification or mere attorney argument.  *See, e.g.*, *Two-Way Media Ltd. v. Comcast Cable Comms.*, LLC, C.A. No. 14-1006-RGA, 14-1212-RGA, 2016 WL 4373698, at *5 (D. Del. Aug. 15, 2016), *aff'd* 874 F.3d 1329 (Fed. Cir. 2017).

### B. DraftKings' Identified Claims are Representative

It is well-settled that the eligibility of all claims of a patent may be determined based on an analysis of a representative claim. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018).  In its opposition, IG identifies a handful of dependent claims as allegedly non-representative, but "does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim." *Id*.  For example, IG argues that Claims 8-11 of the '231 Patent are distinct from representative Claim 1 because they "employ a combined order of specific rules that renders information into a specific format." D.I. 13 at 7-8 (quotations omitted).  Instead, Claim 8 recites:

> 8. The apparatus of claim 1, in which determining the period of time includes determining a period of time that is ***larger*** when the distance is larger and ***smaller*** when the distance is smaller.

Claiming *larger* or *smaller* time periods is a purely abstract limitation covering an infinite set of

3

possibilities.  This claim does not recite a specific order of limitations or "specific rules" and "specific formats" that IG alleges.  The claims do not change the focus from the abstract idea of "analyzing information, including periodically-determined location information, to determine whether to allow gaming activity," and add no inventive concept.  *BSG Tech*, 899 F.3d at 1291 ("[N]arrowing or reformulating an abstract idea does not add significantly more to it.")

IG also argues that Claims 2 and 4 of the '901 Patent "specify how to calculate 'signal characteristics' recited in claim 27, adding inventive concepts of the geolocation technology." D.I. 13 at 8. Instead, Claim 2 recites:

> 2. The method of claim 1, in which the first set of signal characteristics includes **strengths** of a plurality of signals between the mobile device and the signal detection devices.

Far from explaining "how to calculate" anything, this claim merely recites *what* is analyzed—*signal strength* (a conventional type of signal characteristics)—and just barely narrows the abstract type of "signal characteristics" to a different abstract type.  Analyzing a slightly different abstract category of information does not change the focus of the claims or add an inventive concept.

### C. Claim Construction Is Not Required For Dismissal

IG seeks to delay dismissal by proposing a wholly unsupported construction and insisting this Court construe two instances the word "determining." D.I. 13 at 9.  Contrary to IG's assertions, "claim construction is not an inviolable prerequisite to validity determinations under §101." *Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369, 1374 (Fed. Cir. 2016).  This is especially true where, as here, the proposed construction lacks merit. Specifically, IG contends that "determining" in one limitation "should be construed to mean that the algorithm for calculating and adjusting the frequency of the authentication depends on the proximity of the user to the boundary of the area where a gaming activity is allowed." D.I. 13 at 10.  But IG fails to identify any intrinsic support for its constructions and ignores the ***explicit definition*** of the term provided in each patent.

4

*E.g.*, '231 Patent at 5:16-27 ("The term 'determining' … is used in an ***extremely broad*** sense … [and] encompasses a wide variety of actions" (emphasis added)).  No material dispute exists here.

Even if the Court adopts IG's constructions, that does not change the abstract focus of the claims.  IG's proposed construction for "*determining* a period of time" ("the algorithm for ***calculating and adjusting*** the frequency of authentication") was held abstract long before *Alice*.  *See Parker v. Flook*, 437 U.S. 584, 596 (1978) (calculating and adjusting a parameter via an equation is an abstract idea).  Likewise, IG's proposed construction for "*determining* a location" ("an algorithm for calculating and pinpointing the location of a mobile device ***based on specific comparisons*** of the nature of wireless signal patterns") (D.I. 13 at 10) adds nothing because analyzing and comparing data is abstract.  *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016). And at step-two IG does not assert that such algorithms—implemented on generic computer hardware—provide an inventive concept or technical solution.

**III.   THE '231 AND '302 PATENTS CLAIM INELIGIBLE SUBJECT MATTER**

**A.  Step One: The '231 and '302 Patents Are Directed To An Abstract Idea**

IG alleges that the '231 and '302 Patents are not abstract at step one because they are directed to the alleged "technical improvement" of a "multisystem secure authentication protocol" (D.I. 13 at 10) and process for "location redetermination" (*id.* at 11-12).  IG, however, relies on ***unclaimed*** details not recited by any claims.  This is improper—any "reliance on the specification must ***always yield to the claim language*** in identifying [the] focus [of the claims]." *ChargePoint*, 920 F.3d at 766 (emphasis added).  The plain text of representative Claim 1 recites ***only*** generic and abstract limitations (*i.e.*, determine a device/user/location is authorized) with no ***specific*** technical improvements.

For example, IG argues that the claimed system offers the specific technical solution of:

5

> using a "*multisystem* secure authentication protocol" to authorize the mobile device. In one example, an *authenticator service* confirms that a *unique identifier* for the device is associated with an authorized account or list of authorized devices. ***The system can also ensure that devices do not include software that enables otherwise prohibited access***. It does so by validating that certain *external communication interfaces* are disabled.

D.I. 13 at 11 (citations omitted). But Claim 1 does not *claim* any of these features. D.I. 11 at 3. Nor do any other claims. The claim language controls, and here that language is too abstract and generic to confer eligibility. IG also fails to address Federal Circuit authority holding the same alleged "technical solution" as abstract. *See* D.I. 11 at 8. Specifically, the Federal Circuit affirmed that using a unique identifier to *authenticate* an email sender "embrace[d] the abstract idea of using a marking … to communicate information about the mail object, *i.e.*, the sender." *Secured Mail*, 873 F.3d at 911. Thus, even the unclaimed detail IG relies on has been held to be abstract.

IG also relies on other *unclaimed* matter in alleging that its claims recite a technical solution, including the allegation that the claims "leverage[e] geofencing, GPS, and triangulation techniques to create virtual perimeters of geographic areas that allow or disallow gaming." D.I. 13 at 12. Instead, Claim 1 only recites two purely generic location determination steps: "*determine that/whether the device is associated with a first/second location.*" Moreover, the specifications admit that these location steps were conventional and had already been commoditized by third parties. *See* '231 Patent at 53:59-66, 54:15-16.

IG next claims that the configuration recited in Claim 1 "improv[es] the efficiency and performance of the computer system itself" by minimizing redeterminations. D.I. 13 at 12. This argument also fails. ***First***, claiming location determination based only on a "distance from a boundary" with no additional detail does not claim a specific technical aspect that would "***minimize the requirement for constant surveillance***" at certain times and therefore does not provide a "specific improvement to computer functionality." ***Second***, IG's reliance on *Enfish* is misplaced.

6

*See* D.I. 13 at 13.  In *Enfish*, the claims were "not simply directed to *any* form of storing tabular data, but instead [were] specifically directed to a self-referential table" that functioned differently than conventional database structures.  *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016).  Here, performing a well-known function (location determination) in the same way but ***more or less frequently*** does not recite an improvement to the ***underlying performance or function of that activity***.  **Third**, performing authorization based on distance to a boundary in order to conserve resources has been performed by casino operators for decades by stationing additional security personnel at entry points, with fewer stationed throughout the casino floor.  Thus, the very "improvement" that IG touts is abstract.

### B. Step Two: The '231 and '302 Patents Lack an Inventive Concept

At step two, IG alleges that its claims recite the inventive concept of leveraging "multiple layers of authentication protocols to authenticate the user, the user's device, and its location." D.I. 13 at 14.  But such systems have been applied in countless contexts throughout human history.  *See Maxell, Ltd. v. Fandango Media, LLC,* No. CV 17-07534 AG (SSX), 2018 WL 4502492, at *4 (C.D. Cal. Sept. 11, 2018), *aff'd,* No. 2019-1088, 2019 WL 4941873 (Fed. Cir. Oct. 8, 2019) ("imposing specific event-based restrictions on activity is … something that humans have done in many contexts throughout human history").  Applying this abstract concept in a new context, *i.e.*, mobile gaming, also does not save the claims.  *See DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1258 (Fed. Cir. 2014) (cautioning that applying an abstract concept with routine additional steps to address challenges in a new context does not confer eligibility).

Invoking a generic location determination process at a *determined time period* based on *distance* also fails to transform the claims because it encompasses steps people go through in their minds and is an "essentially mental process[] within the abstract idea category."  *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d at 1354.  The specification confirms that these location

7

determining steps have an "extremely broad" definition, which includes human activity such as "looking up in a table," and thus are abstract. '231 Patent at 5:15-27. As such, even when taken as an ordered combination, the recited location determination processes cannot supply the inventive concept. *See BSG Tech.,* 899 F.3d at 1290 ("[A] claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept[.]").[1]

## IV. THE '901 PATENT CLAIMS INELIGIBLE SUBJECT MATTER

### A. Step One: Comparing Signal Characteristics Is Abstract

Claim 27 of the '901 Patent is directed to the abstract concept of collecting information, analyzing it, and taking action based on the analysis. IG argues that Claim 27 recites a specific technological improvement by "disclos[ing] the specific structure of the novel system's architecture for detecting the location of a device covered by a communications network" and "calculating signal characteristics between a calibration device and signal detection devices and comparing the calculated signal characteristics with those received from a mobile device." D.I. 13 at 16. But, as the claim language makes clear, (*see* D.I. 11 at 11), no "specific structure" or "architecture" is recited in Claim 27, and IG's touted improvement of "comparing signal characteristics" is nothing more than the abstract concept of "information collection and analysis." *Elec. Power Grp.*, 830 F.3d at 1355. Legally, "narrowing or reformulating an abstract idea" such as by applying it to different types of data (*i.e.*, signal characteristics) "does not add significantly more to it." *BSG Tech*, 899 F.3d at 1291. Far from providing a specific solution to a technical problem, the '901 Patent simply claims a generic method of information collection and analysis.

---

[1] IG also imports limitations from *ten different* claims in alleging that "***Claim 1*** of the '231 patent" determines a "period of time that takes into account multiple factors" such as speed, direction, and distance. D.I. 13 at 12. Instead, Claim 1 recites a single factor—distance. But even the unclaimed factors fail to transform the abstract focus—analyzing data from ***one*** or ***multiple*** data sets is abstract. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (collecting data sets and recognizing data within as abstract).

### B. Step Two: Comparing Data Does Not Supply An Inventive Concept

IG alleges that the '901 Patent recites "an inventive concept based on jurisdictional compliance"—namely, "accurately determining the location of a user's mobile device to ensure compliance." D.I. 13 at 18. This is not an inventive concept, but another formulation of the abstract idea itself. *See BSG Tech.,* 899 F.3d at 1290. The lack of any inventive concept beyond this abstract idea is illustrated by the "redacted" version of Claim 27 that IG provides. D.I. 13 at 16. IG faults DraftKings for alleged oversimplification by focusing on the "functional" steps and disregarding the remaining limitations. *Id.* The unredacted steps—"determining a location of the communication device," "enabl[ing] [gaming functionality] based upon the determined location," and "disabling the wagering functionality in response to a period of non-use"—are just the abstract concept of allowing gaming activity based on location. The blacked-out text recites nothing more than the abstract concepts of collecting information (*i.e.*, sets of signal characteristics for locations), analyzing the information (*i.e.*, comparing signal characteristics of a device to the sets of signal characteristics to determine location), and taking an action based on the analysis (*i.e.*, turning on gaming functionality). Merely "[a]dding one abstract idea … to another abstract idea … does not render the claim non-abstract." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017). IG's cited comparison of signal characteristics therefore "cannot supply the inventive concept." *See BSG Tech.,* 899 F.3d at 1290.

## V. THE '967 PATENT CLAIMS INELIGIBLE SUBJECT MATTER

### A. Step One: Authorizing Remote Gaming Is Abstract

IG contends that the '967 Patent claims are directed to the specific technical solution of "using a location verification or determination feature to change and improve the operation of a mobile gaming device to permit or disallow gaming from [a] remote location depending upon whether or not the location meets one or more criteria." D.I. 13 at 19. This is indistinguishable from

9

the subject matter held ineligible in *Front Row Techs., LLC v. NBA Media Ventures, LLC*. *See* 204 F. Supp. 3d 1190, 1193 (D.N.M. 2016), *aff'd sub nom. Front Row Techs. LLC v. MLB Advanced Media, L.P.*, 697 F. App'x 701 (Fed. Cir. 2017). Instead of addressing *Front Row*, IG attempts to analogize to *SRI Int'l, Inc. v. Cisco Systems, Inc.,* which held claims that "prevent the normal, expected operation of a conventional computer network" to be eligible at step one because they claimed use of a "specific technique … to solve a technological problem arising in computer networks." 930 F.3d 1295, 1303-304 (Fed. Cir. 2019). *SRI* is readily distinguishable. IG conflates normal operation of a "computer network" from *SRI*, with normal operation of a "casino." *See* D.I. 13 at 19 ("it would have been counterintuitive in 2004 for a casino to limit a user's wagering"). The claims here, by contrast, fail to recite any specific technique to solve a technological problem and, in fact, actually *require* normal operation of a computer network to function as intended.

### B. Step Two: Location Verification Using Conventional Processes Does Not Supply An Inventive Concept

IG argues that its claims recite the inventive concept of "provid[ing] location verification suitable to ensure that a user is within an approved gaming area." D.I. 13 at 20. However, representative Claim 1 only recites a generic location determination step: "determine that a gaming device is located within an approved gaming area." This is simply not inventive—it relies on conventional technology and does not recite an innovative way of determining a location. *See* '967 Patent at 7:5-11 (listing known location verification technologies), 7:66-67 ("any type of location verification may be used"). Considered as an ordered combination, Claim 1 merely recites a conventional ordering of steps as would be expected for authorizing wager-based gaming based on location. It therefore does not recite an inventive concept.

### VI. CONCLUSION

DraftKings requests that this Court grant its motion to dismiss.

OF COUNSEL:

G. Hopkins Guy III
BAKER BOTTS L.L.P.
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA  94304-1007
(650) 739-7500

Jamie R. Lynn
BAKER BOTTS L.L.P.
1299 Pennsylvania Avenue, N.W.
Washington, DC  20004-2400
(202) 639-7786

Michael E. Knierim
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112-4498
(212) 408-2500

Clarke W. Stavinoha
BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 900
Dallas, TX 75201-2980
(214) 953-6500

January 10, 2020

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)
Jeffrey J. Lyons (#6437)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com
jlyons@mnat.com

*Attorneys for Defendant DraftKings, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on January 10, 2020, upon the following in the manner indicated:

| | |
|---|---|
| Daniel M. Silver<br>Alexandra M. Joyce<br>MCCARTER & ENGLISH, LLP<br>Renaissance Centre<br>405 N. King St., 8th Fl.<br>Wilmington, DE 19801<br>*Attorneys for Plaintiff Interactive Games LLC* | *VIA ELECTRONIC MAIL* |
| Robert F. Shaffer<br>James R. Barney<br>Anthony D. Del Monaco<br>Abdul Ghani Hamadi<br>FINNEGAN, HENDERSON, FARABOW, GARRETT &<br>DUNNER, LLP<br>901 New York Avenue, NW<br>Washington, DC 20001-4413<br>*Attorneys for Plaintiff Interactive Games LLC* | *VIA ELECTRONIC MAIL* |

/s/ *Rodger D. Smith II*

Rodger D. Smith II (#3778)