# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CG TECHNOLOGY DEVELOPMENT, LLC, INTERACTIVE GAMES LIMITED, and INTERACTIVE GAMES LLC,<br>  Plaintiffs,<br><br>v.<br><br>FANDUEL, INC.,<br>  Defendant. | Civil Action No. 1:17-cv-01041-RGA |

MEMORANDUM OPINION

Daniel M. Silver, Alexandra M. Joyce, MCCARTER & ENGLISH, LLP, Wilmington, DE; Robert F. Shaffer (argued), Scott A. Allen, Abdul Ghani S. Hamadi, FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP, Washington, DC;

    Attorneys for Plaintiffs

Kenneth L. Dorsney, MORRIS JAMES LLP, Wilmington, DE; Eric A. Buresh, Megan J. Redmond (argued), Carrie A. Bader, ERISE IP, P.A., Overland Park, KS;

    Attorneys for Defendant

March 5, 2020


**ANDREWS, U.S. DISTRICT JUDGE:**

Before the Court is Defendant's Rule 12(c) Motion for Judgment on the Pleadings. (D.I. 340). The Court has considered the parties' briefing. (D.I. 341, 348, 350). The Court heard oral argument on February 13, 2020. (D.I. 374).

## I. BACKGROUND

Plaintiffs filed this action on April 8, 2016 in the District of Nevada, eventually alleging infringement of twelve patents including U.S. Patent No. 8,771,058 ("the '058 patent"). (D.I. 31). The District of Nevada transferred the instant case to this Court on July 27, 2017. (D.I. 219). Defendant has been successful at invalidating asserted claims. (D.I. 341 at 1). Claim 6 of the '058 patent is the only remaining claim at issue.

The '058 patent is directed to determining game configurations on a mobile device based on the location of that device. ('058 patent, Abstract, col. 12:22-28, col. 60:2-28). Claim 6 is dependent on claim 1. The Patent Trial and Appeal Board found claim 1 invalid under § 103. (D.I. 341, Ex. A at 48). Claim 1 reads as follows:

> 1. A method comprising:
> determining a first location of a mobile gaming device;
> determining a first game configuration associated with the first location;
> generating, by a computer system, a first game outcome using the first game configuration;
> instructing a display screen of the mobile gaming device to display an indication of the first game outcome;
> determining a first payout associated with the first game outcome;
> crediting a player account with a first amount based on the first payout;
> determining a second location of the mobile gaming device, wherein the second location is different from the first location;
> determining a second game configuration associated with the second location, wherein the second game configuration is different from the first game configuration;
> generating, by the computer system, a second game outcome using the second game configuration;
> instructing the display screen of the mobile gaming device to display an indication of the second game outcome;
> determining a second payout associated with the second game outcome; and

crediting the player account with a second amount based on the second payout.

Claim 6 reads:

6. The method of 1, in which determining the first game configuration includes:
accessing a lookup table which contains an ordered list of locations and associated game configurations;
finding within the lookup table the first location; and
determining that the first game configuration is associated with the first location.

At claim construction, I determined that "lookup table" means "an array or matrix of data that contains items that are searched." (D.I. 337 at 4).

## II. LEGAL STANDARD

### A. Rule 12(c)

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss when the Rule 12(c) motion alleges that the plaintiff failed to state a claim upon which relief can be granted. *See Turbe v. Gov't of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991); *Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010). The court must accept the factual allegations in the complaint and take them in the light most favorable to the non-moving party. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). "When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court must "draw on its judicial experience and common sense" to make the determination. *See id*. In ruling on a motion for judgment on the pleadings, the court is generally limited to the pleadings. *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 257 (3d Cir. 2004). The court may, however, consider documents incorporated into the pleadings and those that are in the public record. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

2

### B. 35 U.S.C. § 101

Section 101 of the Patent Act defines patent-eligible subject matter. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has recognized an implicit exception for three categories of subject matter not eligible for patentability—laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). The purpose of these carveouts is to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012). "[A] process is not unpatentable simply because it contains a law of nature or a mathematical algorithm," as "an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." *Id.* at 1293–94 (cleaned up). "[T]o transform an unpatentable law of nature into a patent-eligible application of such a law, one must do more than simply state the law of nature while adding the words 'apply it.'" *Id.* at 1294 (emphasis omitted).

The Supreme Court reaffirmed the framework laid out in *Mayo* "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2355. First, the court must determine whether the claims are drawn to a patent-ineligible concept. *Id.* If the answer is yes, the court must look to "the elements of the claim both individually and as an 'ordered combination'" to see if there is an "'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (alteration in original). "A claim that

3

recites an abstract idea must include 'additional features' to ensure that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Id.* at 2357. Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Id.* at 2358 (quoting *Bilski v. Kappos*, 561 U.S. 593, 610-11 (2010)). Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* For this second step, the machine-or-transformation test can be a "useful clue," although it is not determinative. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014).

"Whether a claim is drawn to patent-eligible subject matter under § 101 is an issue of law," and "is a matter of both claim construction and statutory construction." *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008), *aff'd sub nom. Bilski v. Kappos*, 561 U.S. 593 (2010). "Claim construction is a question of law . . . ." *In re Nuijten*, 500 F.3d 1346, 1352 (Fed. Cir. 2007). At *Alice* step two, however, "[w]hether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018).

### III.   DISCUSSION

#### A. Law of the Case

"The law-of-the-case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Musacchio v. United States*, 136 S. Ct. 709, 716 (2016) (cleaned up). Plaintiffs argue that the law-of-the-case doctrine applies here because the Nevada court already decided that the claims of the '058 patent are not directed to a patent-ineligible abstract idea. (D.I. 348 at 1). Plaintiffs

4

contend that this should end the § 101 analysis and that I should deny Defendant's motion without further consideration. (*Id.*).

In Plaintiffs' associated case against Bwin.Party, the Nevada court determined that representative claim 19 of the '058 patent was not abstract and therefore denied Bwin.Party's motion to dismiss under § 101 ("Nevada I"). *CG Tech. Dev., LLC v. Bwin.Party (USA), Inc.*, 2016 WL 6089696, at *4-5 (D. Nev. Oct. 18, 2016). Plaintiffs argue that because the instant case was consolidated with the *Bwin.Party* case, this Court is bound by the Nevada I decision. (D.I. 348 at 2). I do not agree. The Nevada court consolidated the related cases for pretrial purposes after it issued the Nevada I decision. *See CG Tech. Dev., LLC v. FanDuel, Inc.*, Case No. 2:16-cv-00801-RCJ-VCF, D.I. 92 (D. Nev. Dec. 12, 2016). That consolidation does not mean a previous decision in one case (*Bwin.Party*) retroactively applies to the other consolidated cases.

Plaintiffs further argue that because, after the consolidation, the Nevada court again determined that claim 19 was not abstract ("Nevada II"), the consolidated cases are therefore bound by that decision. (D.I. 374 at 32:12-17). This argument fails because of the posture of the Nevada II decision, which denied Bwin.Party's motion for reconsideration of the Nevada I decision. *CG Tech. Dev., LLC v. Bwin.Party (USA), Inc.*, Case No. 2:16-cv-00871-RCJ-VCF, D.I. 63 (D. Nev. Jan. 4, 2017). In the Nevada II decision, the district court affirmed its Nevada I decision that denied Bwin.Party's motion to dismiss under § 101. *Id.* The Nevada II decision did not address any of the consolidated cases or mention that the *Bwin.Party* case had been consolidated with others in the interim period. *Id.* The Nevada II decision was not entered on the consolidated docket, but rather on that of the *Bwin.Party* case. Neither the Nevada I decision

5

nor the Nevada II decision are part of the "same case" as the instant case. The law-of-the-case doctrine does not apply.

### B. Abstract Idea

To distinguish patents that claim ineligible concepts "from those that claim patent-eligible applications of those concepts . . . we [first] determine whether the claims at issue are directed to [an abstract idea]." *Alice*, 134 S. Ct. at 2355. "The 'abstract ideas' category embodies 'the longstanding rule that an idea of itself is not patentable.'" *Id.* (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)). "The Supreme Court has not established a definitive rule to determine what constitutes an 'abstract idea' sufficient to satisfy the first step of the *Mayo/Alice* inquiry." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). The Supreme Court has recognized, however, that "fundamental economic practice[s]," *Bilski*, 561 U.S. at 611, "method[s] of organizing human activity," *Alice*, 134 S. Ct. at 2356, and mathematical algorithms, *Benson*, 409 U.S. at 64, are abstract ideas. In navigating the parameters of such categories, courts have generally sought to "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish*, 822 F.3d at 1334. "[S]ome improvements in computer-related technology when appropriately claimed are undoubtedly not abstract." *Id.* at 1335. "[I]n determining whether the claims are directed to an abstract idea, we must be careful to avoid oversimplifying the claims because '[a]t some level, all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (alterations in original) (quoting *Alice*, 134 S. Ct. at 2354).

Defendant asserts that claim 6 of the '058 patent is directed to an abstract idea because it "falls within the category of 'method[s] of organizing human activity.'" (D.I. 341 at 4).

6

Plaintiffs respond that claim 6 is not abstract because it is a specific improvement of the "operation of a mobile gaming device and the way it displays game configurations to an end user." (D.I. 348 at 8). For the following reasons, I determine that claim 6 of the '058 patent is directed to the abstract idea of "determining game configuration based on location."

Claim 6 of the '058 patent is a method claim that depends on independent claim 1. The method embodies the basic concept of determining game configuration based on the location of a mobile device. The steps of the method can be summarized as follows: (1) determining the location of a mobile gaming device ('058 patent, col. 60:3); (2) using a lookup table to determine the game configuration associated with that location (*id.* col. 60:47-51); and (3) implementing that game configuration (*id.* col. 60:6-14). These are basic steps of determining the configuration of a game based on the location of a mobile device, a method of organizing human activity.

Plaintiffs argue that claim 6 is not directed to an abstract idea because it "recites an improvement that alters the operation [of] traditional mobile gaming devices in a very specific way using specific data structures." (D.I. 348 at 9). To support this argument, Plaintiffs rely on cases where the Federal Circuit has found "similar" inventions non-abstract and patentable. (*Id.*). Plaintiffs point to *Enfish*, where the Federal Circuit determined that claims which focused on "an improvement to computer functionality itself, not on . . . tasks for which a computer is used in its ordinary capacity," were not abstract under *Alice*. 822 F.3d at 1336. Plaintiffs contend that claim 6 is similar in that it teaches an improvement to a traditional gaming system because it forces the gaming devices to "function differently based on the determined geofencing." (D.I. 348 at 9). The claims in *Enfish*, however, are not similar to claim 6. In *Enfish*, the claims were "specifically directed to a self-referential table for a computer database"

7

that is designed to "improve the way a computer stores and retrieves data in memory." 822 F.3d at 1337, 1339 (emphasis omitted). Rather than improving the function of a computer itself, claim 6 employs a generic data structure, a lookup table, to determine the game configuration associated with a location.

Plaintiffs also rely on *SRI International, Inc. v. Cisco Systems, Inc.*, 930 F.3d 1295 (Fed. Cir. 2019). In that case, the Federal Circuit found the claims, which taught a specific technique of using network monitors to identify intruders into the network, to be "directed to an improvement in computer network technology" and therefore not abstract. *SRI International*, 930 F.3d at 1303. The Federal Circuit distinguished the claims at issue in *SRI International* from those in *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016): "The *Electric Power* claims were drawn to using computers as tools to solve a power grid problem, rather than improving the functionality of computers and computer networks themselves" like the claims in *SRI International*. *Id.* at 1304. The claims at issue in *Electric Power* were directed to "[a] method of detecting events on an interconnected electric power grid in real time over a wide area and automatically analyzing the events on the interconnected electric power grid." *Electric Power*, 830 F.3d at 1351. The Federal Circuit determined that those claims were focused "on the combination of [] abstract-idea processes. The advance [the claims] purport to make is a process of gathering and analyzing information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing those functions." *Id.* at 1354. Thus, the Federal Circuit determined that the claims were directed to an abstract idea. *Id.*

Claim 6 is similar to the claims in *Electric Power*, not to those in *SRI International*. Like the *Electric Power* claims, claim 6 is directed to "the combination of [] abstract idea processes."

8

*Id.* Determining the location of a mobile gaming device, determining the game configuration associated with that location, and implementing that game configuration are each "independently abstract ideas that use computers as tools." *Id.*

Plaintiffs further argue that *McRO, Inc. v. Bandai Namco Games America, Inc.*, 837 F.3d 1299 (Fed. Cir. 2016) supports their argument that claim 6 is patentable. (D.I. 348 at 10). In that case, the Federal Circuit held that the claims at issue were directed to a "specific asserted improvement in computer animation." *McRO*, 387 F.3d at 1314. Because the patent "incorporat[ed] the specific features of the rules as claim limitations," the Federal Circuit found that the claims were "limited to a specific process for automatically animating characters using particular information and techniques" and were therefore not directed to patent-ineligible subject matter. *Id.* at 1316. Plaintiffs argue that the lookup table of claim 6 is similar "specific structure" to that in *McRO*. (D.I. 348 at 10). I disagree. The "specific structure" in *McRO* was the combined order of the specific, subjective rules that were the means of automating lip synchronization. *McRO*, 387 F.3d at 1315. Claim 6, however, merely uses a generic data structure, a lookup table, "as a tool to automate conventional activity." *Id.* at 1314. Claim 6 describes searching a data structure in an ordinary fashion to find the game configuration associated with a location.

Therefore, claim 6 of the '058 patent is directed to the abstract idea of "determining game configuration based on location."

### C. Inventive Concept

The decision that a patent is directed to an abstract idea "does not render the subject matter ineligible." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015). Having decided that claim 6 is directed to an abstract idea, the Court must next

"determine whether the [claim does] significantly more than simply describe the abstract method." *Ultramercial*, 772 F.3d at 715. Since "a known idea, or one that is routine and conventional, is not inventive in patent terms," this analysis "favors inquiries analogous to those undertaken for determination of patentable invention." *Internet Patents*, 790 F.3d at 1346. Indeed, the Federal Circuit has noted that the two stages of the *Alice* two-step inquiry "are plainly related" and "involve overlapping scrutiny of the content of the claims . . . ." *Elec. Power Grp.*, 830 F.3d at 1353. Furthermore, neither "[a] simple instruction to apply an abstract idea on a computer," nor "claiming the improved speed or efficiency inherent with applying the abstract idea on a computer" satisfies the requirement of an "inventive concept." *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015); *see also Bancorp Servs., LLC v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) ("[T]he fact that the required calculations could be performed more efficiently via a computer does not materially alter the patent eligibility of the claimed subject matter.").

Plaintiff argues that claim 6 of the '058 patent has an inventive concept because it provides a solution "to the real-world need to address the implications of differing jurisdictions and their effect on permitted game configurations." (D.I. 348 at 12-13). At oral argument, Plaintiff pointed to *Bascom Global Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016) to support the notion that there can be an inventive concept as long as there is a "nonconventional, nonroutine arrangement of what would otherwise be considered conventional and routine limitations." (D.I. 374 at 38:24, 39:2-7). In *Bascom*, the Federal Circuit determined that the claims at issue contained an inventive concept "in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom*, 827 F.3d at 1350. The patent in *Bascom* taught an improvement to internet content filtering that "could be adapted to many different

10

users' preferences while also installed remotely in a single location." *Id.* The Federal Circuit determined that the "patent describe[d] how its particular arrangement of elements is a technical improvement over prior art ways of filtering such content" rather than the claims merely instructing that the abstract idea of filtering be carried out by generic computer components. *Id.*

Claim 6 of the '058 patent, however, does not have a "particular arrangement of elements" that creates an inventive concept. The limitations of claim 6 instead teach the basic steps for using a conventional lookup table.

The specification of the '058 patent identifies a lookup table as an "example" of "a computer data structure [that] may be used to keep a record" of game configurations "in different locations." ('058 patent, col. 6:7-12). At claim construction, the parties agreed that the term "lookup table" has a plain and ordinary meaning understood by those of skill in the art at the time of the patent, which has a priority date of February 15, 2007. (D.I. 337 at 4; D.I. 31-10 at 1). To resolve this meaning, I turned to the definition of "lookup table" in the Computer Desktop Encyclopedia, Version 20.4 (2007). (*Id.*). I determined that "lookup table" means "an array or matrix of data that contains items that are searched." (*Id.*).[1] The fact that the patent does not specifically define a lookup table but instead refers to it as an example of a data structure that may be used, and the fact that the plain and ordinary meaning of "lookup table" was readily discerned from an encyclopedia entry, demonstrate that a lookup table is a conventional and well-known data structure. A lookup table itself is not an inventive concept.

In claim 6, the lookup table is also used in a conventional way; it is searched to find the game configuration associated with a location. Searching a lookup table used to store game configurations associated with locations is not an inventive concept sufficient to transform a

---

[1] This usage is similar to that in the 2002 Microsoft Computer Dictionary (D.I. 306-1 at 419 of 445): "a previously constructed table of values."

11

patent-ineligible abstract idea into an eligible one. *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290–91 (Fed. Cir. 2018) ("If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea."); *Berkheimer*, 881 F.3d at 1370 (holding that the claim limitations "amount to no more than performing the abstract idea of parsing and comparing data with conventional computer components" and thus lacked an inventive concept). Thus, viewed separately or as an ordered combination, the elements of claim 6 do not recite an inventive concept, and cannot transform the abstract idea into a patent-eligible application.

## IV.   CONCLUSION

Defendant gambled with a Rule 12(c) motion and won the jackpot. For the foregoing reasons, the Court GRANTS Defendant's Motion for Judgment on the Pleadings (D.I. 340). An accompanying order will issue.

# EXHIBIT B

2020 WL 1069742
Only the Westlaw citation is currently available.
United States Court of Appeals, Federal Circuit.

CUSTOMEDIA TECHNOLOGIES, LLC, Appellant

v.

DISH NETWORK CORPORATION,
Dish Network LLC, Appellees

Customedia Technologies, LLC, Appellant

v.

Dish Network Corporation,
Dish Network LLC, Appellees

2018-2239
|
2019-1000
|
Decided: March 6, 2020

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. CBM2017-00023, CBM2017-00032.

**Attorneys and Law Firms**

Raymond William Mort, III, The Mort Law Firm, PLLC, Austin, TX, argued for appellant.

Eliot Damon Williams, Baker Botts LLP, Palo Alto, CA, argued for appellees. Also represented by George Hopkins Guy, III; Ali Dhanani, Michael Hawes, Houston, TX.

Before Prost, Chief Judge, Dyk and Moore, Circuit Judges.

**Opinion**

Moore, Circuit Judge.

 *1  Customedia Technologies, LLC appeals the Patent Trial and Appeal Board's final written decisions holding claims 1–6, 8, 17, and 23 of U.S. Patent No. 8,719,090 and claims 1–4, 6–7, 16–19, 23–24, 26–28, 32–36, and 41 of U.S. Patent No. 9,053,494 ineligible under 35 U.S.C. § 101 and finding claims 1 and 5 of the '090 patent unpatentable under 35 U.S.C. § 102. Because the claims are ineligible under § 101, we affirm the Board's determinations. We do not reach the Board's § 102 findings.

**BACKGROUND**

The '090 and '494 patents, which share a specification, disclose comprehensive data management and processing systems. '090 Patent at 3:3–7, 17–21. According to the specification, these systems comprise a remote Account-Transaction Server (ATS) and a local host Data Management System and Audio/Video Processor Recorder-player (VPR/DMS), e.g., a cable set-top box. Id. at 4:15–19, 21:44–49. Broadcasters and other content providers transmit advertising data via the ATS to a local VPR/DMS. Id. at 31:1–6. The advertising data may then be selectively recorded in programmable storage sections in the VPR/DMS according to a user's preferences. Id. at 31:3–6, 32:7–21. These storage sections may be "reserved, rented, leased or purchased from end user[s], content providers, broadcasters, cable/satellite distributor, or other data communications companies administering the data products and services." Id. at 31:44–49, 60–64. For example, a cable distributor may provide customers with a cable set-top box with built-in storage sections that may be leased or sold to advertisers. Id. at 31:64–32:4. Claim 1 of the '090 patent recites:

> 1. A data delivery system for providing automatic delivery of multimedia data products from one or more multimedia data product providers, the system comprising:
>
> a remote account transaction server for providing multimedia data products to an end user, at least one of the multimedia data products being specifically identified advertising data; and
>
> a programmable local receiver unit for interfacing with the remote account transaction server to receive one or more of the multimedia data products and for processing and automatically recording the multimedia data products, said programmable local receiver unit including at least one individually controlled and reserved advertising data storage section adapted specifically for storing the specifically identified advertising data, said at least one advertising data storage section being monitored and controlled by said remote account transaction server and such that said specifically identified advertising data is delivered by said remote account transaction server and stored in said at least one individually controlled and reserved advertising data storage section.

'090 patent at Claim 1.

Dish Network Corporation and Dish Network LLC (collectively, DISH) petitioned for review of claims 1–8, 17, and 23 of the '090 patent and claims 1–7, 16–19, 23–28, 32–36, 39, 41, and 43 of the '494 patent pursuant to the Transitional Program for Covered Business Method Patents (CBM review). Leahy-Smith Am. Invents Act, Pub. L. No. 112-29, § 18(a) 125 Stat. 284, 329–31 (2011) (AIA). The Board instituted CBM review in each case and issued final written decisions holding claims 1–8, 17, and 23 of the '090 patent and claims 1–4, 6–7, 16–19, 23–24, 26–28, 32–36, and 41 of the '494 patent ineligible under 35 U.S.C. § 101. In addition to holding the claims ineligible under § 101, the Board found claims 1, 5, and 7 of the '090 patent unpatentable under 35 U.S.C. § 102 and claim 7 of the '090 patent unpatentable under 35 U.S.C. § 112. The Board held that DISH failed to prove that alternatively, claims 1–8, 17, and 23 of the '090 patent are unpatentable under 35 U.S.C. § 103 as obvious over U.S. Patent Nos. 5,774,170 (Hite) and 4,607,346 (Hill). Customedia timely appealed the Board's determinations under §§ 101 and 102.[1] DISH cross-appealed the Board's determinations under § 103.[2] We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

DISCUSSION

*2  We review the Board's legal conclusions de novo and its factual findings for substantial evidence. *Samsung Elecs. Co. v. Elm 3DS Innovations, LLC*, 925 F.3d 1373, 1380 (Fed. Cir. 2019). Eligibility under 35 U.S.C. § 101 is a question of law, based on underlying facts. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018).

Section 101 provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof," may obtain a patent. 35 U.S.C. § 101. The Supreme Court has held that "[l]aws of nature, natural phenomena, and abstract ideas are not patent eligible." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216, 134 S.Ct. 2347, 189 L.Ed.2d 296 (2014) (quoting *Assoc. for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589, 133 S.Ct. 2107, 186 L.Ed.2d 124 (2013)). We follow the Supreme Court's two-step framework for determining patent-eligibility under § 101. *Id.* at 217, 134 S.Ct. 2347. First, we determine whether the claims are directed to a "patent-ineligible concept," such as an abstract idea. *Id.* If so, we "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78–79, 132 S.Ct. 1289, 182 L.Ed.2d 321 (2012)).

I. *Alice* Step One

At *Alice* step one, we must determine whether the claims are directed to an abstract idea. *Alice*, 573 U.S. at 217, 134 S.Ct. 2347. For example, in *Bilski v. Kappos*, the Supreme Court held ineligible claims directed to the concept of risk hedging, an abstract idea it described as "a fundamental economic practice long prevalent in our system of commerce." 561 U.S. 593, 611, 130 S.Ct. 3218, 177 L.Ed.2d 792 (2010). And in *Alice*, the Supreme Court made clear that the invocation of a computer does not necessarily transform an abstract idea into a patent-eligible invention. 573 U.S. at 223, 134 S.Ct. 2347. There, the Supreme Court held ineligible claims directed to a method of exchanging financial obligations using a computer system as a third-party intermediary. *Id.* at 218–21, 134 S.Ct. 2347. The Court explained that the claims were merely implemented "using some unspecified, generic computer" and did not "purport to improve the functioning of the computer itself." *Id.* at 225–26, 134 S.Ct. 2347. Not infrequently, patentees, like Customedia, latch on to this language from *Alice* and claim that their claims do "improve the functioning of the computer itself." Here, for instance, Customedia argues that its claims are eligible because they "provide for improvements to the operation and functioning of computer systems." Appellant's Br. 71, Nos. 18-2239, -2309. We do not agree. The claims at issue here are directed to the abstract idea of using a computer to deliver targeted advertising to a user, not to an improvement in the functioning of a computer.

Claim 1 of the '090 patent recites a "data delivery system for providing automatic delivery of ... specifically identified advertising data." '090 patent at Claim 1. The advertising data is received and processed by a "programmable local receiver unit," which includes at least one "individually controlled and reserved advertising data storage section adapted specifically for storing the specifically identified advertising data."[3] *Id.* Customedia argues that by providing a reserved and dedicated section of storage, the claimed invention improves the data delivery system's ability to store advertising data, transfer data at improved speeds and efficiencies, and prevent system inoperability due to insufficient storage. In short, by dedicating a section of the computer's memory to advertising

data, the claimed invention ensures memory is available for at least some advertising data. This does not, however, improve the functionality of the computer itself. Even if we accept Customedia's assertions, the claimed invention merely improves the abstract concept of delivering targeted advertising using a computer only as a tool. This is not what the Supreme Court meant by improving the functioning of the computer itself nor is it consistent with our precedent applying this concept.

**\*3** In *Enfish, LLC v. Microsoft Corp.*, for example, we held patent eligible claims reciting a self-referential database that improved the way computers stored and retrieved data in memory. 822 F.3d 1327, 1337–39 (Fed. Cir. 2016). We concluded the claims did not invoke a computer merely as a tool, but rather improved the way the computer itself operated and handled data, allowing more efficient launching and adaptation of databases. *Id.* at 1336–37. We therefore held that the "plain focus of the claims is on an improvement to computer functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity." *Id.* at 1336. As in *Enfish*, we held patent eligible claims in *Visual Memory LLC v. NVIDIA Corp.* that were directed to "an improved computer memory system." 867 F.3d 1253, 1259–60 (Fed. Cir. 2017). We noted that the claims "focus[ed] on a 'specific asserted improvement in computer capabilities,'" namely the accommodation of different types of processors without compromising performance, "instead of 'on a process that qualifies as an abstract idea for which computers are invoked merely as a tool.'" *Id.* (quoting *Enfish*, 822 F.3d at 1336). More recently in *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, we evaluated claims directed to a system for generating check data that enabled the detection of persistent systematic errors that prior art systems could not detect. 942 F.3d 1143, 1151 (Fed. Cir. 2019). In holding the claims patent eligible, we stated that the claimed invention "improve[d] the functioning of the overall technological process of detecting systematic errors in data transmissions." *Id.* at 1151–52.

To be a patent-eligible improvement to computer functionality, we have required the claims to be directed to an improvement in the functionality of the computer or network platform itself. In *Ancora Techs. Inc. v. HTC America, Inc.*, for example, we held that claims directed to storing a verification structure in computer memory were directed to a non-abstract improvement in computer functionality because they improved computer security. 908 F.3d 1343, 1347–49 (Fed. Cir. 2018). We determined the claims addressed the "vulnerability of license-authorization software to hacking" and were thus "directed to a solution to a computer-functionality problem." *Id.* at 1349. Likewise, in *Finjan, Inc. v. Blue Coat System, Inc.*, we held that claims to a "behavior-based virus scan" provided greater computer security and were thus directed to a patent-eligible improvement in computer functionality. 879 F.3d 1299, 1304–06 (Fed. Cir. 2018). In *Data Engine Techs. LLC v. Google LLC*, we held patent eligible claims reciting "a specific method for navigating through three-dimensional electronic spreadsheets" because the claimed invention "improv[ed] computers' functionality as a tool able to instantly access all parts of complex three-dimensional electronic spreadsheets." 906 F.3d 999, 1007–08 (Fed. Cir. 2018); *see also Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1359–63 (Fed. Cir. 2018) (holding patent eligible claims reciting an improved user interface for electronic devices that improved the efficiency of the electronic device, "particularly those with small screens"). And in *SRI Int'l, Inc. v. Cisco Sys. Inc.*, we held patent eligible claims directed to an improved method of network security "using network monitors to detect suspicious network activity ... generating reports of that suspicious activity, and integrating those reports using hierarchical monitors." 930 F.3d 1295, 1303 (Fed. Cir. 2019). We concluded that the "focus of the claims was on the specific asserted improvement in computer capabilities," namely "providing a network defense system that monitors network traffic in real-time to automatically detect large-scale attacks." *Id.* at 1303–04.

We have held that it is not enough, however, to merely improve a fundamental practice or abstract process by invoking a computer merely as a tool. For example, in *Affinity Labs. of Texas, LLC v. DIRECTV, LLC*, we held that claims to a method of providing out-of-region access to regional broadcasts were directed to an abstract idea. 838 F.3d 1253, 1258 (Fed. Cir. 2016). We determined the claims were not a patent-eligible improvement in computer functionality because they simply used cellular telephones "as tools in the aid of a process focused on an abstract idea." *Id.* at 1262; *see also In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (holding ineligible claims reciting concrete physical components merely as "a generic environment in which to carry out the abstract idea of classifying and storing digital images in an organized manner"). Likewise, in *Intellectual Ventures I LLC v. Capital One Bank (USA)*, we held that claims reciting a system for providing web pages tailored to an individual user were directed to an abstract idea. 792 F.3d 1363, 1369–70 (Fed. Cir. 2015). We held that "claiming the improved speed or efficiency

inherent with applying the abstract idea on a computer" was insufficient to render the claims patent eligible as an improvement to computer functionality. *Id.* at 1367, 1370; *see also Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715–16 (Fed. Cir. 2014) (holding that displaying an advertisement in exchange for access to copyrighted material is an abstract idea). And in *SAP Am., Inc. v. InvestPic, LLC*, we held patent ineligible claims directed to "selecting certain information, analyzing it using mathematical techniques, and reporting or displaying the results of the analysis." 898 F.3d 1161, 1167–68 (Fed. Cir. 2018). We determined the claims were focused not on a physical-realm improvement to computers as tools but rather an improvement in wholly abstract ideas. *Id.* at 1168.

**\*4** We have also held that improving a user's experience while using a computer application is not, without more, sufficient to render the claims directed to an improvement in computer functionality. For example, in *Trading Techs. I*, we held patent ineligible claims directed to a computer-based method for facilitating the placement of a trader's order. *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1092–93 (Fed. Cir. 2019) (*Trading Techs. I*). Although the claimed display purportedly "assist[ed] traders in processing information more quickly," we held that this purported improvement in user experience did not "improve the functioning of the computer, make it operate more efficiently, or solve any technological problem." *Id.*; *see also Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1381, 1384–85 (Fed. Cir. 2019) (*Trading Techs. II*) (holding that claims "focused on providing information to traders in a way that helps them process information more quickly" did not constitute a patent-eligible improvement to computer functionality).

In sum, "software can make non-abstract improvements to computer technology just as hardware improvements can." *Enfish*, 822 F.3d at 1335. But to be directed to a patent-eligible improvement to computer functionality, the claims must be directed to an improvement to the functionality of the computer or network platform itself. *See, e.g., id.* 1336–39; *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257–59 (Fed. Cir. 2014). Thus, this inquiry "often turns on whether the claims focus on 'the specific asserted improvement in computer capabilities ... or, instead, on a process that qualifies as an "abstract idea" for which computers are invoked merely as a tool.' " *Finjan*, 879 F.3d at 1303 (quoting *Enfish*, 822 F.3d at 1335–36).

Against this background, we agree with the Board that the claims here are not directed to a patent-eligible improvement to computer functionality. The claims of the '090 and '494 patents do not enable computers to operate more quickly or efficiently, nor do they solve any technological problem. They merely recite reserving memory to ensure storage space is available for at least some advertising data. The specification is silent as to any specific structural or inventive improvements in computer functionality related to this claimed system. *See, e.g.*, '090 patent at 30:57–67, 3:47–50. The only improvements identified in the specification are generic speed and efficiency improvements inherent in applying the use of a computer to any task. Therefore, the claimed invention is at most an improvement to the abstract concept of targeted advertising wherein a computer is merely used as a tool. This is not an improvement in the functioning of the computer itself.

II. *Alice* Step Two

At *Alice* step two, we "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 218, 134 S.Ct. 2347, (quoting *Mayo*, 566 U.S. at 78–79, 132 S.Ct. 1289). Step two "looks more precisely at what the claim elements add" to determine if "they identify an inventive concept in the application of the ineligible matter to which ... the claim is directed." *SAP*, 898 F.3d at 1167.

At step two, the Board held that the elements of the claims, considered individually and as an ordered combination, fail to recite an inventive concept. We agree. Aside from the abstract idea of delivering targeted advertising, the claims recite only generic computer components, including a programmable receiver unit, a storage device, a remote server and a processor. *See, e.g.*, '090 patent at Claim 1. The specification acknowledges that the storage device "may be any storage device for audio/video information known in the art" and the receiver unit may include "any digital or analog signal receiver and/or transmitter capable of accepting a signal transmitting any kind of digital or broadcast information." *Id.* at 15:4–6, 24:26–34. Such generic and functional hardware is insufficient to render eligible claims directed to an abstract idea. *Alice*, 573 U.S. at 226, 134 S.Ct. 2347.

**\*5** Customedia argues that the claims are eligible under *Alice* step two because the use of a programmable receiver

to dedicate a section of storage for storing only "specifically identified advertising data" was innovative over prior art approaches. However, the invocation of "already-available computers that are not themselves plausibly asserted to be an advance ... amounts to a recitation of what is well-understood, routine, and conventional." *SAP*, 898 F.3d at 1170. The '090 and '494 patent claims' invocation of a conventional receiver is insufficient to supply the required inventive concept. Thus, we conclude the Board did not err in holding the claims of the '090 and '494 patents ineligible under § 101.

CONCLUSION

We have considered Customedia's remaining arguments and find them unpersuasive. For the foregoing reasons, we conclude that claims 1–6, 8, 17, and 23 of the '090 patent and claims 1–4, 6–7, 16–19, 23–24, 26–28, 32–36, and 41 of the '494 patent are ineligible under § 101 and therefore affirm the Board's decisions.

**AFFIRMED**

**All Citations**

--- F.3d ----, 2020 WL 1069742

**Footnotes**

1   Customedia does not appeal the Board's determination that claim 7 of the '090 patent is ineligible under § 101. Customedia also does not appeal the Board's findings that claim 7 of the '090 patent was unpatentable under §§ 102 and 112.

2   DISH's cross-appeal was voluntarily dismissed on February 6, 2019. *Customedia Techs., LLC v. DISH Network Corp., DISH Network LLC*, Appeal No. 18-2309, D.I. 4.

3   In its final written decision, the Board stated that the "reserved advertising data storage section" limitation does "not require an advertising data storage section that actively precludes or excludes anything other than the specifically identified advertising data" or "any specific structure, such as separate portions that are allocated to a user or a data supplier." J.A. 7–8, 48. Customedia challenges this construction on appeal, arguing that the programmable local receiver unit is structurally configured, via a processor and software, to control and limit access to the advertising data storage section such that it stores only advertising data. Appellant's Br. 13–25, Nos. 18-2239, -2309; Appellant's Reply Br. 6–7, 16–17, No. 18-2239. Because Customedia's proposed construction does not change the eligibility of the claims under § 101, we do not reach the merits of its claim construction arguments.

**End of Document**                                © 2020 Thomson Reuters. No claim to original U.S. Government Works.