IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

INTERACTIVE GAMES LLC,                )
                                      )
                    Plaintiff,        )
                                      )
        v.                            )        C.A. No. 19-1105 (RGA)
                                      )
DRAFTKINGS, INC.,                     )        **REDACTED –**
                                      )        **PUBLIC VERSION**
                    Defendant.        )


**DEFENDANT'S OPENING BRIEF IN SUPPORT
OF ITS MOTION FOR ATTORNEYS' FEES AND COSTS**


                                      MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                                      Rodger D. Smith (#3778)
                                      Lucinda C. Cucuzzella (#3491)
OF COUNSEL:                           1201 N. Market Street
                                      P.O. Box 1347
G. Hopkins Guy III                    Wilmington, DE 19801
BAKER BOTTS L.L.P.                     (302) 658-9200
1001 Page Mill Road                   rsmith@morrisnichols.com
Building One, Suite 200               ccucuzzella@morrisnichols.com
Palo Alto, CA 94304-1007

Jamie R. Lynn                         *Attorneys for Defendant DraftKings, Inc.*
BAKER BOTTS L.L.P.
700 K Street NW
Washington, DC 20001

Michael E. Knierim
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112-4498

Clarke W. Stavinoha
BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 900
Dallas, TX 75201-2980

Original filing date: May 7, 2024
Redacted filing date: May 10, 2024

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................................... 1

II.   BACKGROUND ............................................................................................................. 2

      A.    The Nevada Case ................................................................................................. 2

      B.    The Delaware Case .............................................................................................. 4

      C.    Interactive Games and CG Technology's History as an Operating Entity ............. 6

III.  LEGAL STANDARD ..................................................................................................... 6

IV.   ARGUMENT .................................................................................................................. 7

      A.    DraftKings is the Prevailing Party ....................................................................... 7

      B.    This Case Is Exceptional ..................................................................................... 8

            1.    IG's Claims Were Objectively Unreasonable and Frivolous          8

            2.    IG Litigated in an Unreasonable Manner and Such Behavior must be
                  Deterred                                                          11

V.    DraftKings' Estimated Fees Under Rule 54 ................................................................... 15

VI.   CONCLUSION ............................................................................................................... 16

TABLE OF AUTHORITIES

Page(s)

CASES

*Advanced Video Technologies LLC v. HTC Corp.*,
  2015 WL 7621483 (S.D.N.Y., Aug. 28, 2015) .............................................................12, 14

*B.E. Tech., L.L.C. v. Facebook, Inc.*,
  940 F.3d 675 (Fed. Cir. 2019).................................................................................................8

*CG Tech. Dev., LLC v. DraftKings, Inc.*,
  No. 1:17-01040 (D. Del.)........................................................................................................4

*CG Tech. Development, LLC v. DraftKings, Inc.*,
  No. 2:16-cv-00781 (D. Nev.)...............................................................................................2, 3

*CRST Van Expedited, Inc. v. Equal Emp. Opportunity Comm'n.*,
  578 U.S. 419 (Fed. Cir. 2016)................................................................................................8

*DraftKings Inc. v. Interactive Games, LLC*,
  IPR2020-01107, Paper 10 (PTAB Jan. 6, 2021).............................................................10, 11

*Dragon Intell. Prop., LLC v. DISH Network LLC*,
  956 F.3d 1358 (Fed. Cir. 2020)...............................................................................................8

*Dragon Intellectual Property LLC v. DISH Network L.L.C.*,
  No. 2022-1621 (Fed. Cir. 2022).............................................................................................15

*Finnavations LLC v. Payoneer, Inc.*,
  Nos. 1:18-00445-RGA, 2019 WL 1236358 (D. Del. Mar. 18, 2019)......................................7

*Hilburn v. Bayonne Parking Authority*,
  562 F. App'x 82 (3d Cir. 2014) ...............................................................................................7

*Interactive Games LLC v. DraftKings, Inc.*,
  No. 1:19-01105 (D. Del. June 14, 2019) .................................................................................5

*Lumen View Tech., LLC. v. Findthebest.com, Inc.*,
  63 F. Supp. 3d 321 (S.D.N.Y. Oct. 23, 2014), .....................................................................11

*Magnetar Technologies Corp., v. Six Flags Theme Parks, Inc.*,
  2017 WL 962760 (D. Del. Mar. 13, 2017) .......................................................................10, 14

*Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*,
  No. 07-127-LPS-MPT, 2015 WL 4455606 (D. Del. July 21, 2015) ......................8, 10, 12, 13

*Mathis v. Spears*,
    857 F.2d 749 (Fed. Cir. 1988)................................................................................11, 14

*Octane Fitness LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545 (2014)........................................................................6, 7, 11, 12

*Raniere v. Microsoft Corp.*,
    887 F.3d 1298 (Fed. Cir. 2018)................................................................................7

*SFA Sys., LLC v. Newegg Inc.*,
    793 F.3d 1344 (Fed. Cir. 2015)................................................................................13

*Stephens v. Tech Int'l., Inc.*,
    393 F.3d 1269 (Fed. Cir. 2004)................................................................................7, 10

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
    726 F.3d 1306 (Fed. Cir. 2013)................................................................................7

*ThermoLife Int'l, LLC v. Myogenix Corp.*,
    2017 WL 4792426 (S.D. Cal. Oct. 24, 2017) ........................................................13

## STATUTES

35 U.S.C. § 101................................................................................3, 5, 6, 14, 15

35 U.S.C. § 102................................................................................4

35 U.S.C. § 285................................................................................1, 2, 6, 8, 13, 15

## OTHER AUTHORITIES

Fed. R. Civ. P. 54(d)(2)(B)(iii) ................................................................................15

## I.    INTRODUCTION

Prevailing party DraftKings seeks fees under 35 U.S.C. § 285 because it was forced to litigate this obviously meritless case.  This represents only the most recent case in a pattern of frivolous filings by Interactive Games asserting invalid patents against DraftKings.  Between two cases, DraftKings has succeeded in invalidating 13 out of 14 patents asserted against it.  And with respect to the 14th patent, Interactive Games has surrendered and voluntarily dismissed the case, but without prejudice.  These repeated victories over apparently invalid patents did not come without a cost, and DraftKings should not be required to bear those costs alone.  Interactive Games and its affiliates have continually sued DraftKings for patent infringement to force DraftKings to license its entire patent portfolio (with as many as "two thousand patent assets"), despite the lack of infringement of any valid claim.  Interactive Games should not be permitted to do so without compensating DraftKings for the damage it has caused.

For eight years DraftKings has litigated two baseless patent infringement actions from Interactive Games. DraftKings now requests the reimbursement of its legal costs for the entirety of only the last case. In 2016, Interactive Games filed its first lawsuit against DraftKings (along with many others in the industry) in Nevada, accusing DraftKings of infringing ten patents. Despite the volume, *all* of those patents were invalidated by the end of the case either in view of prior art or as patent ineligible subject matter.  The 2016 case lasted almost four years and cost DraftKings an extraordinary amount of costs and fees to defend itself against these ten invalid patents.

Presumably, given its large portfolio, Interactive Games had chosen its strongest patents to assert in the first case and, thus, invalidating all ten would fully put the dispute to rest.  Wrong. After losing on all ten previous claims of infringement, Interactive Games filed another frivolous lawsuit against DraftKings in the District of Delaware, asserting four more patents related to

general steps using geolocation to present games, monitor those games, and/or facilitate wagers relating to those games. This second wave of patents was similar to the patents that were invalidated in the first case and, thus, there was a strong chance that these four new patents would be found invalid as well.

To no surprise, three of the four patents in the present case were invalidated without question upon *inter partes* review ("IPR"). This was yet another waste of DraftKings'—and the Court's—resources that were expended on claims that were clearly never going to be successful. The fourth patent reissued after an *ex parte* reexamination on April 12, 2024, but inexplicably, just three days before the fourth patent was reissued, Interactive Games filed its Notice of Dismissal ***without prejudice***. If Interactive Games were going to simply dismiss its suit, it could have done so years ago. Moreover, given the litigious nature of Interactive Games, its lack of any operating business, and its penchant for filing suits in different venues, there is a concerning risk that Interactive Games will simply take the sole-surviving patent from this case, and file a *third* lawsuit against DraftKings, perhaps in some other seemingly favorable venue.

DraftKings respectfully requests that this Court put a stop to Interactive Games' antics by declaring this case exceptional under 35 U.S.C. § 285 and entering an award of attorneys' fees in DraftKings' favor.

## II.   BACKGROUND

### A.   The Nevada Case

Plaintiff Interactive Games LLC ("Interactive Games" or "IG") specific conduct began in 2014 with a "notice letter" to DraftKings touting the "over two thousand patent assets" that Cantor Fitzgerald, L.P. held. Ex. A. That letter listed 13 patents but promised that it was "part of a much larger portfolio" that contained "open applications and continuations" that Cantor "will continue to prosecute … with the intention to receive additional claims." *Id*. Others in the industry received

that same letter.  Ex. B (collection of notice letters).  Two years later, IG, along with two of its affiliates—Interactive Games Limited and CG Technology Development, LLC—filed a complaint accusing DraftKings of infringing eight different patents.[1]  *See CG Tech. Development, LLC v. DraftKings, Inc.*, No. 2:16-cv-00781, D.I. 1  (D. Nev.) ("*IG v. DK I*").  IG later amended its complaint to include two more patents.[2]  *Id.*, D.I. 29. The suit against DraftKings was the first salvo in a wide-ranging patent assertion campaign that IG and its affiliates initiated against the mobile gaming industry.  In addition to DraftKings, IG and its affiliates filed suit against FanDuel, 888 Holdings, Big Fish Games, Double Down Interactive, Zynga, and Bwin.Party Digital Entertainment.[3]

In its own case, DraftKings filed a Motion to Dismiss the Amended Complaint because the asserted patents claimed unpatentable subject matter under 35 U.S.C. § 101.  *IG v. DK I*, ECF. No. 37.  DraftKings subsequently filed a Motion to Stay pending a ruling on the Motion to Dismiss. *Id.*, ECF No. 44.  The Court granted the stay because it recognized that if the motion was granted "it would be dispositive of the entire case" and "it appear[ed] that the motion [was] likely to prevail."  *IG v. DK I*, ECF No. 59 at 2.  The Court was right. The Court later granted DraftKings' Motion to Dismiss and found that seven of the ten patents encompassed unpatentable subject matter.  *IG v. DK I*, ECF No. 69 at 11.  Following dismissal of these seven patents, the case was

---

[1]     The asserted patents in the original complaint were U.S. Patent Nos. RE39,818; 6,899,628; 9,111,417; 8,641,511; 8,342,924; 7,029,394; 6,884,166; and 7,534,169.  *IG v. DK I*, D.I. 1 at 2.

[2]     The two new patents were U.S. Patent Nos. 9,355,518 and 9,306,952.

[3]     *See CG Tech. Dev., LLC, et al. v. FanDuel, Inc*., No. 2:16-cv-00801 (D. Nev., Apr. 8, 2016); *CG Tech. Dev., LLC, et al. v. 888 Holdings PLC*, No. 2:16-cv-00856 (D. Nev., Apr. 14, 2016); *CG Tech. Dev. LLC, et al. v. Big Fish Games, Inc.*, No. 2:16-cv-00857 (D. Nev., Apr. 14, 2016); *CG Tech. Dev., LLC, et al. v. Double Down Interactive, LLC*, No. 2:16-cv-00858 ( D. Nev., Apr. 14, 2016); *CG Tech. Development, LLC et al v. Zynga, Inc.*, No. 2:16-cv-00859 (D. Nev., Apr. 14, 2016); and *CG Tech. Development, LLC et al v. Bwin.Party Digit. Ent. PLC, et al.*, No. 2:16-cv-00871 (D. Nev, Apr. 15, 2016).

transferred to the District of Delaware.  Ex. C; *see also CG Tech. Dev., LLC v. DraftKings, Inc.*, No. 1:17-cv-01040 (D. Del.).

A group of the companies that had been targeted by IG and its affiliates then filed *inter partes* review petitions for the remaining three patents, during which a stay of the district court litigation was subsequently entered.[4]  *See also Id.*, ECF No. 69 at 111. By December 10, 2018, the Patent Trial and Appeal Board ("PTAB") had issued final written decisions finding the challenged claims of the remaining three patents invalid under either 35 U.S.C. § 102 or 103, and the Federal Circuit upheld those findings on appeal.[5]  *Id.*

DraftKings and IG (with its affiliates) then stipulated to a dismissal of the first case with prejudice.  Importantly, however, the parties expressly stipulated that DraftKings could cite to or otherwise use any filing from the first case in any future litigation with IG.  *IG v. DK I*, ECF No. 131 at 1.  And DraftKings agreed to bear its costs for *only* the first case.  *Id.*, ECF No. 131 at 2. DraftKings was clear at that time that it viewed the serially filed lawsuits as exceptional conduct for which it would seek reimbursement of its fees.

### B.    The Delaware Case

Even after it was clear that all of the previously asserted patents were either unpatentable (*see IG v. DK I*, ECF No. 69, Order (Dec. 12, 2016)) or invalid (*see* IPR2017-01532, Paper 32, Final Written Decision (Dec. 10, 2018)) IG filed this second suit against DraftKings on

---

[4]      *See FanDuel Inc. et al v. CG Tech. Dev., LLC*, IPR2017-00902, Paper 1 (PTAB Mar. 13, 2017); *see also FanDuel Inc. et al v. Interactive Games LLC*, IPR2017-01333, Paper 1 (PTAB May 1, 2017); *FanDuel Inc. et al v. Interactive Games LLC*, IPR2017-01532, Paper 1 (PTAB June 8, 2017).

[5]      *See* IPR2017-00902, Paper 45 at 89; IPR 2017-01333, Paper 42 at 53; IPR2017-01532, Paper 32 at 46; *see also CG Tech. Dev., LLC v. FanDuel, Inc.*, No.: 19-1261, ECF No. 57, Judgment (Fed. Cir. Dec. 17, 2019); *Interactive Games LLC v. FanDuel, Inc.*, No.: 19-1523, ECF No. 57, Judgment  (Fed. Cir. Feb 6, 2020).

June 14, 2019. *See Interactive Games LLC v. DraftKings, Inc.*, No. 1:19-01105 (D. Del. June 14, 2019). In this second case, IG asserted another four patents directed towards remote wagering on mobile devices.[6] Much like some of the patents in the first litigation, these patents were directed to detecting the location of a mobile device and making determinations as to whether to allow gaming or not.

DraftKings first filed a motion to dismiss because, as in the first case, the claims of all four patents were directed to unpatentable subject matter under 35 U.S.C. § 101. D.I. 10. That motion was fully briefed. D.I. 10, 11, 13 & 14. In addition, DraftKings petitioned the PTAB for *inter partes* review ("IPR") of all four patents. The case was then stayed pending the resolution of the IPRs, with the section 101 motion being left for another day. *See* D.I. 24; D.I. 25. As expected, the PTAB found that all challenged claims of U.S. Patent Nos. 8,956,231, 8,616,967, and 9,430,901 were unpatentable and therefore cancelled. *See* D.I. 32. IG appealed the final written decisions of the PTAB (ultimately dismissing one of the appeals) and, on June 9, 2023, the Federal Circuit issued *per curiam* affirmances, without formal opinions. *See* D.I. 36.

As to the last remaining patent, on November 4, 2022, DraftKings filed a request for *ex parte* re-examination of U.S. Patent No. 8,974,302 (the "'302 Patent"), which was instituted by the PTO because the request raised a substantial new question of patentability. *See* D.I. 36 at 1 n. 1. Although the '302 Patent ultimately emerged from reexamination on April 12, 2024 (Ex. D), after IG was informed of the PTO's notice of intent to issue a reexamination certification, IG dismissed its suit on April 9, 2024. D.I. 40. Notably, IG dismissed the suit *without prejudice*. *Id*. The effect of which is that DraftKings was not permitted to renew its § 101 motion to get final

---

[6]    The second suit asserted U.S. Patent Nos. 8,956,231; 8,974,302; 8,616,967; and 9,430,901. *See* D.I. 1.

resolution as to the unpatentability of the '302 Patent.  Instead, IG has left the '302 Patent to be reasserted at a later date.

### C.    Interactive Games and CG Technology's History as an Operating Entity

Interactive Games brought the initial 2016 lawsuit with two related entities—CG Technology Development, LLC and Interactive Games Limited.  Each of these entities owned a subset of the asserted patents and were interconnected in the same "Cantor" corporate family of entities.[7]  In that family, CG Technology L.P. f/k/a Cantor Gaming ("CG") was the operating entity providing sportsbook services in Nevada.  Starting in 2013, CG was beset by a series of criminal investigations that crippled its operations and ultimately forced CG to cease operations.  *See* Exs. E-K.  After these investigations and a string of multi-million-dollar fines, all of the operational assets, but apparently not the patents, were sold to William Hill in November 2019. Ex. L.  CG then became a non-practicing patent assertion entity presumably because its only remaining asset was its patent portfolio.

## III.    LEGAL STANDARD

Section 285 of the Patent Act permits a court to award attorneys' fees to the prevailing party in exceptional cases. 35 U.S.C. § 285. "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their

---

[7] CG Technology Development LLC is owned by CG Technology L.P. f/k/a Cantor Gaming, Interactive Games Limited is owned by Cantor Index Limited, and Interactive Games LLC is owned by CFPH, LLC (Cantor Fitzgerald Patent Holdings). *See IG v. DK I*, ECF No. 1 at 2; Ex. M; Ex. N.

discretion, considering the totality of the circumstances." *Id.* (footnote omitted). A party's conduct need not be sanctionable to qualify as exceptional. *Id.* at 555.

When assessing whether a case is exceptional, "district courts [can] consider a nonexclusive list of factors, including frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6 (quotation marks and citation omitted). "A frivolous infringement suit is one which the patentee knew or, on reasonable investigation, should have known was baseless." *Stephens v. Tech Int'l., Inc.*, 393 F.3d 1269, 1273–74 (Fed. Cir. 2004) (quotation marks and citation omitted). A party must assess the merits of their case prior to suit and "continually assess the soundness of pending infringement claims, especially after an adverse claim construction." *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013); *see also Finnavations LLC v. Payoneer, Inc.*, Nos. 1:18-00445-RGA, 2019 WL 1236358, at *2 (D. Del. Mar. 18, 2019). Thus, "the pertinent inquiry is whether [the plaintiff] knew or should have known that it could not successfully assert the [asserted patents] against [the defendant] but pursued its infringement claim anyway." *Stephens*, 393 F.3d at 1274. As for the Court's inherent power, in the Third Circuit, "[i]mposition of sanctions … are warranted when a party has 'acted in bad faith, vexatiously, wantonly or for oppressive reasons.'" *Hilburn v. Bayonne Parking Authority*, 562 F. App'x 82, 86 (3d Cir. 2014) (citation omitted).

## IV.    ARGUMENT

### A.    DraftKings is the Prevailing Party

DraftKings is the prevailing party in this case (and indeed was the prevailing party in the first case). A party is the prevailing party if it "effects or rebuffs a plaintiff's attempt to effect a 'material alteration in the legal relationship between the parties.'" *Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1306 (Fed. Cir. 2018) (quoting *CRST Van Expedited, Inc. v. Equal Emp. Opportunity*

*Comm'n.*, 578 U.S. 419, 420 (Fed. Cir. 2016)).  IG sought damages of an undisclosed amount and did not obtain any award of damages as of the dismissal. D.I. 1 at 51.  DraftKings also successfully invalidated the asserted claims from three of the four Asserted Patents in concurrent IPR proceedings. Therefore, it is the prevailing party.  *See generally* D.I. 37; *see also Dragon Intell. Prop., LLC v. DISH Network LLC*, 956 F.3d 1358, 1361-62 (Fed. Cir. 2020) (holding that successfully invalidating asserted claims in a parallel *inter partes* review proceeding constitutes prevailing party status).  After the IPR proceedings, IG surrendered by voluntarily dismissing its claims without prejudice, which further evinces DraftKings' prevailing party status.  *See B.E. Tech., L.L.C. v. Facebook, Inc.*, 940 F.3d 675, 678-79 (Fed. Cir. 2019) (defendant can be deemed prevailing party even if the case is dismissed on procedural grounds rather than the merits).  IG has obtained nothing from its Complaint.

### B.    This Case Is Exceptional

IG filed two frivolous lawsuits against DraftKings, both of which failed due to the invalidity and/or unpatentability of the asserted patents.  IG's strategic targeting of DraftKings to force a portfolio license, and the objective unreasonableness in its allegations of infringement and validity warrants an award of fees under 35 U.S.C. § 285, and alternatively, under the Court's inherent power.

### 1.    IG's Claims Were Objectively Unreasonable and Frivolous

IG's claims were unmistakably unlikely to be successful and were therefore objectively unreasonable.  *See Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, No. 07-127-LPS-MPT, 2015 WL 4455606, at *8 (D. Del. July 21, 2015) (a claim is objectively unreasonable if it proffers arguments so inadequate that success likely will not occur under any circumstance).  There were multiple indications that this group of patents was invalid since the filing of the first lawsuit on

April 7, 2016, until the dismissal of the second suit on April 9, 2024 and, thus IG should have known that its claims were objectively unreasonable and frivolous.

First, IG asserted similar patents directed to the same subject matter in this lawsuit as the patents that were found invalid from the first lawsuit.  For example, U.S. Patent No. 9,355,518 (the "'518 Patent") in the first case claims features such as an "electronic device [that] comprises [a] ***sensor for detecting location***," which "***obtains the location data***" and "communicates the location data via the communications network" and then "***based on determining the existence of the user in the particular location, initiat[es] … a gaming session***."  Ex. N at 29.  Other claims in that patent recite "determining … that the user is ***located within a particular location in which the user is permitted*** to engage in gaming activities provided by the electronic gaming system" and "***based on determining the user is located in the particular location, initiating… a gaming session***." *Id*. at 30.  In the second litigation, every claim recites similar features.  For example:

- U.S. Patent No. 8,616,967, claim 1: "***determine that a gaming device is located within an approved gaming area … permit the user to engage in the at least one wager-based gaming activity*** via the gaming device ***based at least in part on determining that the gaming device is located within the approved gaming area***"

- U.S. Patent No. 9,430,901, claim 1: "***determining***, by the computing device, ***a first location of a mobile device*** by comparing the calculated sets of signal characteristics with a first set of signal characteristics measured between the signal detection devices and the mobile device; [and] ***based on the first location, enabling***, by the computing device, ***a set of wagering activities through the mobile device that are allowed at the first location*** if any are allowed at the first location;"

- U.S. Patent No. 8,956,231, claim 1: "***determine that the device is associated with a first location in which gaming activity is allowed***; [and] ***allow gaming activity based on*** the determination that the device is authorized, the determination that the user is authorized, and ***the determination that the device is associated with the first location***"

- U.S. Patent No. 8,974,302, claim 1: "repeatedly: ***determine whether the mobile device is within or without a geographical area in which the user is allowed to engage in gaming activity*** on the mobile device; [and] ***allow or disallow the user's gaming activity based at least in part*** on the determination that the mobile device is authorized, the determination that the user is authorized, and ***the determination***

9

> *that the mobile device is located within or without (respectively) the gaming-allowed geographical area*."

All of the patents in the first lawsuit were invalidated or found unpatentable. Yet still, even having the benefit of a previous judgment and the PTAB's invalidity finding (which was upheld on appeal) to assess the merit and strength behind its claims, IG brought and maintained this second case asserting substantially similar and equally weak patents. In *Magnetar Technologies Corp.*, the court only found that an ultimate ruling of invalidity of the asserted claims was not necessarily indicative of frivolous claims because it occurred "*after* seven years of litigation, following extensive discovery, depositions, claim construction, and expert testimony." *Magnetar Techs.*, 2015 WL 4455606, at *6 (emphasis added). That is not the case here.

Here, unlike in *Magnetar*, IG already knew that its claims in the second suit were weak and likely invalid because of the precedent set by its unsuccessful first case, where all ten asserted patents were found invalid. Presumably IG had chosen its strongest ten patents for the first suit, and it should have known that simply picking four similar and weaker patents for the second suit would do nothing but waste DraftKings' resources and the Court's time. IG had every reason to know that it could not successfully assert its second set of four patents, but it did so anyway; that is exceptional. *Stephens*, 393 F.3d at 1274 (stating "the pertinent inquiry is whether [the plaintiff] knew or should have known that it could not successfully assert the [asserted patents] against [the defendant] but pursued its infringement claim anyway.").

IG's second opportunity to reevaluate its position was after the Institution Decisions were published for each of the IPR's necessitated in the second suit. The Institution Decisions foreshadowed that all claims were likely to be invalidated, and thus IG's insistence on maintaining

the District Court litigation was objectively unreasonable.[8]  *See, e.g.*, *DraftKings Inc. v. Interactive Games, LLC*, IPR2020-01107, Paper 10 at 33, 34 (PTAB Jan. 6, 2021) (the PTAB stating "[w]e do not find Patent Owner's arguments to be persuasive[;]" "we do not find persuasive Patent Owner's argument;" "[Patent Owner's argument] is not persuasive on the present record[]").

Finally, it was objectively unreasonable for IG to not voluntarily dismiss its claim after the Final Written Decisions were published by the PTAB for the Asserted Patents in this case. DraftKings achieved an overwhelming success and invalidated *all* of the challenged claims.  *See* D.I. 31.  Not a single claim survived the validity challenges for three of the IPRs.  *Id*.  If IG did not believe that it could proceed with the surviving '302 Patent alone, it would have been prudent and reasonable for IG to drop its claim in the District Court at that point.  Instead, it chose to continue wasting DraftKings' resources by appealing the PTAB's decisions.  *See also Mathis v. Spears*, 857 F.2d 749, 754 (Fed. Cir. 1988) (finding subjecting defendant to unwarranted suit and unwarranted appeals warrants attorneys' fees).  Even there, the Federal Circuit upheld the PTAB's decisions with *per curiam* opinions.  Because IG had ample opportunity to reevaluate the merits of its claims and likelihood of success at multiple points throughout the case and chose the most unreasonable and litigious path forward, DraftKings is entitled to attorneys' fees.

### 2.    IG Litigated in an Unreasonable Manner and Such Behavior must be Deterred

Not only does this case "stand[] out from others with respect to the substantive strength of [IG's] litigating position," as discussed above, but it also stands out for "the unreasonable manner in which the case was litigated."  *Octane Fitness*, 572 U.S. at 554.  IG's behavior of repetitively filing unsuccessful suits on 14 patents as part of a strategy to extract a portfolio license is the type

---

[8]    The PTAB's historical record is instructive.  Of the 7,585 claims that the PTAB has reviewed and entered a Final Written Decision discussing, 5,894 claims—77.7%—were found unpatentable. *See* Ex. O at 13.

of behavior that should be deterred and warrants attorneys' fees. *See Lumen View Tech., LLC. v. Findthebest.com, Inc.*, 63 F. Supp. 3d 321, 326 (S.D.N.Y. Oct. 23, 2014), vacated and remanded on other grounds by 811 F.3d 479 (Fed. Cir. 2016) (finding "predatory strategy" aimed at extracting a nuisance settlement should be deterred); *see also Advanced Video Technologies LLC v. HTC Corp.*, 2015 WL 7621483, at *14 (S.D.N.Y., Aug. 28, 2015) (same).

As an initial matter, IG is a non-practicing patent assertion entity. Although IG was part of a business that appeared to be operating and competing in the industry when the first suit was filed in 2016, by November 2019—just months after IG filed the second suit against DraftKings— the operating business had been sold to William Hill. *See* Ex. L; *see also supra* II.C. But even when IG and its affiliates first sued DraftKings in 2016, the operating entity—CG—was in the middle of a criminal investigation by the DOJ. *See* Ex. H. That investigation and subsequent investigations and fines by Nevada regulators ultimately culminated in the sale of CG's operating business to William Hill. *See* Ex. L. Now, apparently left with only the patent assets, IG's business is suing companies like DraftKings to attempt to force a portfolio license by repeatedly filing meritless suits.[9]

It is in the context of IG's status as a non-practicing patent assertion entity that its history of filing frivolous patent litigations must be viewed. IG began its patent assertion campaign with a threatening letter in 2014, touting the "over two thousand patent assets" held by IG and its affiliates and the intent to keep growing the patent portfolio. Ex. A. The threat was followed up in 2016 when IG first sued DraftKings in Nevada for infringing ten patents. *Supra* II.A. The cost to defend against a ten-patent infringement suit is, of course, tremendous. That cost, however, is

---

[9]    *See Magnetar Tech.,* 2015 WL 4455606, at *7 (stating courts are more likely to question the motives of non-practicing entities).

part of the strategy to make defending against IG's allegations the path of **most** resistance.  IG's "motivation," which *Octane* lists as a factor to be considered,[10] was revealed in the 2014 letter sent to DraftKings—to force DraftKings to enter into a broad portfolio license as opposed to actually resolving the merits of the suit.

The same threat made against DraftKings was also made widely against others.  Ex. B. And within days of suing DraftKings, IG sued myriad other industry participants (including FanDuel, Zynga, 888 Holdings, Double Down Interactive, Big Fish Games, Bwin.Party) for infringing the same patents.  *Supra* II.A.  This sort of serial-filing behavior is also indicative of an improper motive.[11]  As discussed above, IG and its affiliates were roundly defeated; all ten patents asserted against DraftKings were found invalid or unpatentable.  *Id*.  In suing many companies, and filing serial suits against DraftKings, IG was following the playbook of a non-practicing patent assertion entity.  *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1350 (Fed. Cir. 2015) (stating that "pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims, is relevant to a district court's exceptional case determination under § 285").

If IG's campaign had ended after its defeat in the first lawsuit, there may well be no exceptionality.  But that is not the case, because instead of heeding the lesson learned from the

---

[10]    *Octane Fitness*, 572 U.S. at 554 n. 6 ("[D]istrict courts could consider a 'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.') (citation omitted).

[11] *Magnetar Techs.*, 2015 WL 4455606, at *7, report and recommendation adopted, No. 07-127-LPS, 2015 WL 5768385 (D. Del. Sept. 30, 2015) ("inference of impropriety is stronger if the non-practicing entity initiates several patent infringement suits within a short period of time.") (footnote and citations omitted); *see also ThermoLife Int'l, LLC v. Myogenix Corp.*, 2017 WL 4792426, at *4 (S.D. Cal. Oct. 24, 2017) (serial filing is a pattern of action that "strongly suggests Plaintiffs brought suit against defendants without carefully reviewing their claims as a calculated risk that might yield nuisance-value settlements.").

first suits filed in Nevada, IG doubled down.  Even *after* the defeat of its top ten patents, IG went back and chose the next four patents from its "larger portfolio" and tried again because its motivation was not to vindicate its patent rights and infringement.  *Supra* II.B.

IG's motivation in filing all of these patent suits was to force a portfolio license, and even the manner in which IG dismissed the current suit permits it to continue the improper use of the court system.  After the '302 Patent emerged from reexamination, IG has one previously-asserted patent that was not found invalid, which, if IG believed was infringed, IG could have pursued in this second case.  But instead of contacting DraftKings to discuss dismissal or otherwise dismissing its action *with* prejudice, such as one would do if they believed that the patent was either not infringed or invalid, IG dismissed *without prejudice*.  D.I. 40.  This action prevents DraftKings from renewing its § 101 motion to obtain final resolution as to the unpatentability of the '302 Patent and leaves IG with the optionality to reassert it.  *See Advanced Video Technologies LLC*, 2015 WL 7621483 at *14 (finding predatory behavior of an entity that engages in serial filings is likely to proceed unchecked therefore deterrence favors an award of fees against such entities).  The '302 Patent remains outstanding and, given IG's previous behavior, IG's strategy may be to simply refile a claim of infringement based on the surviving '302 Patent against DraftKings in another jurisdiction.  If IG were to do such a thing, it would be yet additional exceptional litigation conduct that should not be countenanced or permitted.

* * * * *

Plaintiffs should be deterred from bringing claims where "the evidence clearly demonstrates the invalidity of the asserted patent," such as previous adverse rulings on similar patents, as IG did.  *Magnetar Technologies Corp.*, *v. Six Flags Theme Parks, Inc.*, 2017 WL 962760, at *14 (D. Del. Mar. 13, 2017).  Additionally, after resounding defeat in the first set of

14

cases against DraftKings and other companies in the same industry, IG improperly brought, and continued, its second litigation and forced DraftKings to defend itself, even when the outcome was apparent. For that, DraftKings should be compensated. *See Mathis*, 857 F.2d at 754 (finding unwarranted appeals should be deterred). IG's pattern of filing multiple and serial lawsuits as part of a portfolio monetization scheme, regardless of the long track record of failure, should be deterred, and therefore attorneys' fees awarded.

## V.    DraftKings' Estimated Fees Under Rule 54

IG brought this case for improper reasons and should have known that its claims were objectively baseless prior to filing the second complaint on June 14, 2019. Because IG should not have brought this case, DraftKings seeks attorneys' fees for all of the District Court litigation, as well as the IPR proceedings and subsequent appeal of the IPR proceedings.[12] Consistent with Federal Rule of Civil Procedure 54, DraftKings provides this "fair estimate" of the amount sought. *See* Fed. R. Civ. P. 54(d)(2)(B)(iii). DraftKings estimates its fee request for this matter to be a total of $██████████ incurred after June 14, 2019, for at least the following[13]:

- Motion to Dismiss for Failure to State a Claim Pursuant to 35 U.S.C. § 101 (D.I.10)

- Reply for Motion to Dismiss (D.I.14)

- Notice of Subsequent Authority (D.I.19)

- Various Joint Letters to the Court

---

[12]    The recoverability of IPR fees under 35 U.S.C. § 285 is currently subject to Federal Circuit review in *Dragon Intellectual Property LLC v. DISH Network L.L.C.*, No. 2022-1621 (Fed. Cir. 2022).

[13]    This total represents the approximate fees charged to DraftKings by Baker Botts L.L.P. from June 14, 2019, to the filing of this motion. DraftKings reserves the right to seek additional, not yet incurred costs, including the costs associated with this motion.

- Preparation of the four IPR petitions and all briefing for IPR2020-01107, IPR2020-01108, IPR2020-01109, and IPR2020-01110.

- Preparation of all briefing and oral argument for appeal of the above *inter partes* proceedings.

Of this total, approximately $████ is related to various tasks regarding the District Court litigation and negotiations with IG; approximately $████ is related to the filing and preparation of the IPRs; and approximately $████ is related to the briefing and preparation for oral argument for the appeal of the IPRs.

## VI.    CONCLUSION

DraftKings respectfully requests that the Court award DraftKings its fees.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Lucinda C. Cucuzzella*
_____
Rodger D. Smith II (#3778)
Lucinda C. Cucuzzella (#3491)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@morrisnichols.com
ccucuzzella@morrisnichols.com

OF COUNSEL:

G. Hopkins Guy III
BAKER BOTTS L.L.P.
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA  94304-1007
(650) 739-7500

Jamie R. Lynn
BAKER BOTTS L.L.P.
700 K Street NW
Washington, DC  20001
(202) 639-7786

Michael E. Knierim
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY  10112-4498
(212) 408-2500

*Attorneys for Defendant DraftKings, Inc.*

Clarke W. Stavinoha
BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 900
Dallas, TX  75201-2980
(214) 953-6500

May 7, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on May 7, 2024, upon the following in the manner indicated:

Daniel M. Silver                                              *VIA ELECTRONIC MAIL*
Alexandra M. Joyce
MCCARTER & ENGLISH, LLP
Renaissance Centre
405 North King Street, 8th Floor
Wilmington, DE  19801
*Attorneys for Plaintiff Interactive Games LLC*

Robert F. Shaffer                                            *VIA ELECTRONIC MAIL*
James R. Barney
Anthony D. Del Monaco
Scott A. Allen
Abdul Ghani Hamadi
FINNEGAN, HENDERSON, FARABOW, GARRETT
   & DUNNER, LLP
901 New York Avenue, NW
Washington, DC  20001-4413
*Attorneys for Plaintiff Interactive Games LLC*

                                    */s/ Lucinda C. Cucuzzella*
                                    _____
                                    Lucinda C. Cucuzzella (#3491)